UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE TRUSTEES OF THE NEW YORK STATE NURSES ASSOCIATION PENSION PLAN,<br><br>Petitioners,<br><br>v.<br><br>WHITE OAK GLOBAL ADVISORS, LLC,<br><br>Respondent. | Civil Action No. 21 Civ. \_\_\_\_<br><br>**PETITION TO CONFIRM ARBITRATION AWARD AND FOR ENTRY OF JUDGMENT** |

Petitioners, the Trustees of the New York State Nurses Association Pension Plan (the "Plan"), by their undersigned counsel, allege as follows:

## NATURE OF THE ACTION

1. This is an action, pursuant to the Federal Arbitration Act, 9 U.S.C. § 9, to confirm the Final Award rendered on August 4, 2021, including the Partial Final Award rendered on November 30, 2020 and incorporated into the Final Award, in an arbitration between Petitioners and Respondent styled, *The Trustees of the New York State Nurses Association Pension Plan v. White Oak Global Advisors, LLC*, AAA Case No. 01-18-0002-9281.

2. The arbitrator found that one of the Plan's investment managers, White Oak Global Advisors, LLC, breached its fiduciary duties to the Plan and engaged in several acts of self-dealing in violation of the law, and ordered the return of the Plan's assets, disgorgement of management fees, payment of the Plan's attorneys' fees, and prejudgment interest.

## THE PARTIES

3. Petitioners are the Trustees ("Trustees") of the New York State Nurses Association Pension Plan, who bring this action on behalf of the Plan. The Plan is an employee pension trust administered under the laws of the State of New York with one or more Trustees

1

who reside in New York.

4. Respondent White Oak Global Advisors, LLC ("White Oak") is a limited liability company organized under the laws of Delaware, with its principal place of business in San Francisco, California.

**JURISDICTION AND VENUE**

5. Jurisdiction exists under 28 U.S.C. § 1331 and 9 U.S.C. § 9. The underlying subject matter of the dispute that was arbitrated involves Respondent's violation of its fiduciary duties under federal law, specifically, the Employee Retirement Income Security Act of 1974, ERISA § 2, *et seq.*, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Additionally, the parties' arbitration agreement provides for disputes to be resolved "by arbitration of the American Arbitration Association in the City of New York."

6. This Court has personal jurisdiction over White Oak because White Oak transacts business within the State of New York and maintains an office in New York City, the matter involves agreements between the parties that were negotiated in New York, and White Oak agreed to arbitration in New York City.

7. Venue in this District is proper under 28 U.S.C. § 1391 and 9 U.S.C. § 9 because White Oak resides within the District, White Oak agreed to an arbitration proceeding in this District, and the arbitration awards were made in this District.

**BACKGROUND**

8. In January 2014, the Trustees and White Oak entered into a written investment management agreement ("IMA"), which was extended and renewed in 2016. A copy of the parties' IMA as renewed in January 2016 is attached as Exhibit C to the Phillips Declaration.

9. Under the terms of the IMA, White Oak expressly warranted and agreed that it would serve as a fiduciary and investment manager under ERISA with respect to the Plan assets

that were allocated to White Oak for investment. Phillips Decl. Ex. C at NYSNA00000932.

10. Using the authority delegated to it under the IMA, White Oak invested Plan assets in two proprietary White Oak investment funds. White Oak created, drafted, and designed the terms of the fund and subscription agreements that govern the Plan's investment in those funds, and White Oak signed those agreements on behalf of the Plan.

11. In 2017, issues arose as to White Oak's compliance with its obligations under the IMA and in December 2017, White Oak unilaterally terminated the parties' IMA. The Trustees subsequently discovered that White Oak had breached its ERISA fiduciary obligations to the Plan by giving itself benefits and compensation that were not agreed to by the Trustees under the IMA. Notwithstanding that White Oak terminated the IMA and the Trustees demanded the return of the Plan's money, White Oak continued to hold the Plan's money and collect management fees on that money.

12. On or about July 31, 2018, the Trustees made a demand for arbitration against White Oak pursuant to Section 24 of the IMA, which states in full:

> Any dispute arising under this Agreement shall be resolved by arbitration of the American Arbitration Association in the City of New York. The arbitrator shall be selected by the parties from a panel of persons qualified and experienced with respect to jointly-trusted pension funds and investments on their behalf.

Phillips Decl. Ex. C at NYSNA00000949-50.

13. In their arbitration demand, the Trustees asserted claims for breach of ERISA fiduciary duties owed to the Plan, as well as a contractual claim for breach of the IMA's "most favored nations" provision. In response, White Oak asserted a counterclaim against the Trustees in their personal capacity alleging that, if White Oak breached its fiduciary duties, the Trustees knew about and participated in such breaches.

14. The parties selected Rosemary Townley, Esq. to serve as the arbitrator. A copy

3

of the parties' agreement to the arbitrator is attached as Exhibit D to the Phillips Declaration. The arbitration was conducted under the Commercial Arbitration Rules of the American Arbitration Association ("AAA").

15. The parties engaged in extensive arbitration proceedings leading up to a week-long in-person hearing at the AAA offices in New York, New York in December 2019, followed by post-hearing briefing that completed in June 2020.

16. The arbitrator requested, and the parties agreed, to extend the time to render an award until December 1, 2020. Attached as Exhibits E, F, and G to the Phillips Declaration are copies of the communications documenting the agreed-to extensions.

17. On November 30, 2020, the arbitrator issued a Partial Final Award. A copy of the Partial Final Award is attached as Exhibit A to the Phillips Declaration (cited to hereinafter as "PFA").

18. In the Partial Final Award, the arbitrator determined that White Oak "engaged in numerous prohibited transactions pursuant to ERISA Section 406(b)(1), [2]9 U.S.C. Sec. 1106(b)(1) and as a result received either compensation or benefits beyond that agreed to by the Trustees under the IMA." PFA at 15.

19. The arbitrator awarded the Plan the return of the net asset value ("NAV") of the Plan's assets, disgorgement of profits and fees, and removal of White Oak as investment manager, all of which are authorized under ERISA § 409(a), 29 U.S.C. § 1109(a). *See* PFA at 35-36. The arbitrator also awarded the Plan's attorneys' fees and costs, pursuant to ERISA § 432(g)(1), 29 U.S.C. § 1132(g)(1), and prejudgment interest at the New York statutory rate of 9%. PFA at 36-37.

20. The arbitrator also concluded that White Oak's counterclaim against the Trustees

4

failed because the Trustees of the Plan neither knew of, nor participated in, White Oak's many wrongful acts, *see id.* at 31-32, and denied the Trustees' contractual claim based on breach of the most favored nations provision. *Id.* at 27.

21. By letter of December 30, 2020, White Oak counsel advised the arbitrator that "unless you tell us differently in a written communication, Respondent does not interpret your Partial Final Award to be a Final Award." Phillips Decl. Ex. B (cited to hereinafter as "FA") at 4-5. The arbitrator confirmed by email that the Partial Final Award was not final in nature. *Id.* at 5.

22. The only matter left open after the Partial Final Award, however, was the precise calculation of amounts due under each category of relief awarded. PFA at 35-37.

23. The arbitrator ordered the parties to jointly appoint a third-party accountant to conduct an inquest into the exact quantum owed to the Plan, including the proper amount for disgorgement. *See id.* at 35. White Oak, however, refused to participate in the process ordered by the arbitrator. FA at 7. The Trustees were therefore compelled to retain Cornerstone Research, an independent economic and financial consultancy, to provide an assessment of the amounts owed by White Oak based on the documents available to the Trustees.

24. Accordingly, between January and May 2021, the Trustees submitted financial records, summaries, and briefing for the arbitrator to determine the amounts owed under the various categories of relief awarded in the Partial Final Award, including calculations prepared by Cornerstone Research, the independent expert retained by the Trustees.

25. White Oak submitted numerous responses to the Trustees' submissions, including rebuttal reports from two proffered experts.

26. A one-day remote hearing was held on June 17, 2021 before the arbitrator during

which each party had the opportunity to cross-examine the others' experts. The parties subsequently made their final written submissions to the arbitrator on July 1, 2021. The arbitrator informed the parties that the hearing would close two weeks following receipt of the final submissions.

27.     On or about August 4, 2021, the arbitrator issued a Final Award, which incorporated the findings and remedies from the Partial Final Award. A copy of the Final Award is attached hereto as Exhibit B to the Phillips Declaration.

28.     As in the Partial Final Award, the Final Award ordered White Oak to disgorge "all [Plan] assets," the total value of which the arbitrator determined "is $96,213,778.83." FA at 6, 10, 11. The arbitrator further determined that some, but not all of the Plan assets must be returned in cash. *See* FA at 9-10.

29.     While the Partial Final Award had awarded the Plan a return of all fees collected by White Oak, including (i) $9,493,641.05 in management fees, plus (ii) any performance fees, the arbitrator's Final Award modified this remedy by permitting White Oak to retain performance fees, but still ordered White Oak to disgorge the management fees. *See* FA at 6, 10.

30.     By incorporating the Partial Final Award into the Final Award, the arbitrator reaffirmed that White Oak must be removed as the Plan's fiduciary and investment manager. *See* FA at 10; PFA at 36.

31.     The Final Award also awarded "[a]ttorneys' fees and costs as proposed by the Plan," less a 20% reduction, which amounts to $5,722,249.35. *See* FA at 10.

32.     Finally, the arbitrator awarded "[p]re-judgment interest ... at the New York statutory rate of 9%," applied to the amounts owed except for attorneys' fees and costs, which

amounts to $28,680,539.45 as of August 4, 2021. *See* FA at 11.

33. This Petition for an order confirming the arbitrator's awards is brought within one year of when the Final Award was issued, pursuant to 9 U.S.C. § 9.

34. The arbitration awards have not been vacated, modified, or corrected.

35. The Trustees are entitled to the issuance of an order confirming the Partial Final Award and Final Award.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners respectfully request that this Court grant the following relief:

a. An order confirming the Partial Final Award and Final Award, including the following relief as granted in the arbitrator's awards:

   i. A declaration that White Oak breached its fiduciary duties to the Plan;

   ii. A declaration that the Trustees neither had knowledge of, nor participated in, White Oak's breach of fiduciary duties to the Plan;

   iii. Removal of White Oak as the Plan's fiduciary and investment manager;

   iv. The return of the Plan's assets valued at $96,213,778.83, some but not all of which must be returned in cash;

   v. Disgorgement of $9,493,641.05 in management fees;

   vi. Payment of $5,722,249.35 in attorneys' fees and costs incurred in connection with the arbitration;

   vii. Prejudgment interest in the amount of $28,680,539.45;

b. Entry of a judgment thereon;

c. Post-award, prejudgment interest and post-judgment interest;

d. Reasonable costs and attorneys' fees incurred in this action; and

e. Any other relief that this Court deems just and proper.

New York, New York
Dated: October __, 2021

COVINGTON & BURLING LLP

_____
C. William Phillips

Jonathan M. Sperling
Cléa P.M. Liquard
The New York Times Building
620 Eighth Avenue
New York, NY 10018
212-841-1000
cphillips@cov.com
jsperling@cov.com
cliquard@cov.com

Robert Newman
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
202-662-6000
rnewman@cov.com

*Attorneys for Petitioners Trustees of the New York State Nurses Association Pension Plan*