IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE TRUSTEES OF THE NEW YORK STATE NURSES ASSOCIATION PENSION PLAN,<br><br>      Petitioner,<br><br>v.<br><br>WHITE OAK GLOBAL ADVISORS, LLC,<br><br>      Respondent. | Case No. 1:21-cv-08330-LAK |

### ANSWER TO PETITION TO CONFIRM ARBITRATION AWARD AND FOR ENTRY OF JUDGMENT

Respondent White Oak Global Advisors, LLC ("White Oak"), by its undersigned attorneys, hereby submits the following Answer to the Petition to Confirm Arbitration Award and for Entry of Judgment (the "Petition") of the Petitioner The Trustees of the New York State Nurses Association Pension Plan (the "Plan"). White Oak responds to the allegations as set forth below. All allegations (including allegations in headings, subheadings, footnotes, and exhibits) not specifically admitted below are denied.

### NATURE OF THE ACTION

1.      This is an action, pursuant to the Federal Arbitration Act, 9 U.S.C. § 9, to confirm the Final Award rendered on August 4, 2021, including the Partial Final Award rendered on November 30, 2020 and incorporated into the Final Award, in an arbitration between Petitioners and Respondent styled, *The Trustees of the New York State Nurses Association Pension Plan v. White Oak Global Advisors, LLC,* AAA Case No. 01-18-0002-9281.

**ANSWER:** White Oak admits that the Plan purports to bring an action pursuant to the Federal Arbitration Act, 9 U.S.C. § 9, to confirm an arbitration award entered on August 4, 2021 (the "Award"), but denies that the Award should be confirmed for the reasons stated in the opposition that White Oak filed on October 20, 2021. White Oak further denies this Paragraph to the extent that it states that "the Partial Final Award rendered on November 30, 2020 and

1

incorporated into the Final Award." The Award states that it "modified" the Partial Final Award "to reflect the evidence revealed throughout the briefing and the experts presented" after the Partial Final Award was issued, including by stating that "[a]ll claims not expressly granted herein are DENIED." White Oak denies any remaining allegations in Paragraph 1.

2. The arbitrator found that one of the Plan's investment managers, White Oak Global Advisors, LLC, breached its fiduciary duties to the Plan and engaged in several acts of self-dealing in violation of the law, and ordered the return of the Plan's assets, disgorgement of management fees, payment of the Plan's attorneys' fees, and prejudgment interest.

**ANSWER:** White Oak denies the allegations in Paragraph 2.

## THE PARTIES

3. Petitioners are the Trustees ("Trustees") of the New York State Nurses Association Pension Plan, who bring this action on behalf of the Plan. The Plan is an employee pension trust administered under the laws of the State of New York with one or more Trustees who reside in New York.

**ANSWER:** White Oak lacks knowledge sufficient to admit or deny whether one or more of the Trustees reside in New York, and therefore denies that allegation. White Oak admits the Trustees purport to bring this action on behalf of the Plan and that the Plan is an employee pension trust administered under the laws of the State of New York. White Oak denies any remaining allegations in Paragraph 3.

4. Respondent White Oak Global Advisors, LLC ("White Oak") is a limited liability company organized under the laws of Delaware, with its principal place of business in San Francisco, California.

**ANSWER:** White Oak admits the allegations in Paragraph 4.

## JURISDICTION AND VENUE

5. Jurisdiction exists under 28 U.S.C. § 1331 and 9 U.S.C. § 9. The underlying subject matter of the dispute that was arbitrated involves Respondent's violation of its fiduciary duties under federal law, specifically, the Employee Retirement Income Security Act of 1974, ERISA § 2, *et seq.*, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Additionally, the parties' arbitration agreement provides for disputes to be resolved "by arbitration of the American Arbitration Association in the City of New York."

**ANSWER:** White Oak admits that jurisdiction exists under 28 U.S.C. § 1331 and 9 U.S.C. § 9. White Oak denies the second sentence of Paragraph 5 that it violated its fiduciary duties under federal law or ERISA. White Oak admits that the parties entered into an Investment Management Agreement that contains an arbitration provision providing for disputes arising under that agreement to be resolved "by arbitration of the American Arbitration Association in the City of New York." White Oak denies any remaining allegations in Paragraph 5.

6. This Court has personal jurisdiction over White Oak because White Oak transacts business within the State of New York and maintains an office in New York City, the matter involves agreements between the parties that were negotiated in New York, and White Oak agreed to arbitration in New York City.

**ANSWER:** Paragraph 6 sets forth legal conclusions, as to which no response is required. To the extent that an answer is required, White Oak admits that this Court has personal jurisdiction over White Oak.

7. Venue in this District is proper under 28 U.S.C. § 1391 and 9 U.S.C. § 9 because White Oak resides within the District, White Oak agreed to an arbitration proceeding in this District, and the arbitration awards were made in this District.

**ANSWER:** Paragraph 7 sets forth legal conclusions, as to which no response is required. To the extent that an answer is required, White Oak admits that venue in this District is proper.

## BACKGROUND

8. In January 2014, the Trustees and White Oak entered into a written investment management agreement ("IMA"), which was extended and renewed in 2016. A copy of the parties' IMA as renewed in January 2016 is attached as Exhibit C to the Phillips Declaration.

**ANSWER:** White Oak admits the allegations in Paragraph 8.

9. Under the terms of the IMA, White Oak expressly warranted and agreed that it would serve as a fiduciary and investment manager under ERISA with respect to the Plan assets that were allocated to White Oak for investment. Phillips Decl. Ex. C at NYSNA00000932.

**ANSWER:** Paragraph 9 sets forth legal conclusions, as to which no response is required. The IMA speaks for itself and White Oak refers the Court to the terms of the IMA.

10. Using the authority delegated to it under the IMA, White Oak invested Plan assets in two proprietary White Oak investment funds. White Oak created, drafted, and designed the terms of the fund and subscription agreements that govern the Plan's investment in those funds, and White Oak signed those agreements on behalf of the Plan.

**ANSWER:** White Oak denies the allegations in Paragraph 10.

11. In 2017, issues arose as to White Oak's compliance with its obligations under the IMA and in December 2017, White Oak unilaterally terminated the parties' IMA. The Trustees subsequently discovered that White Oak had breached its ERISA fiduciary obligations to the Plan by giving itself benefits and compensation that were not agreed to by the Trustees under the IMA. Notwithstanding that White Oak terminated the IMA and the Trustees demanded the return of the Plan's money, White Oak continued to hold the Plan's money and collect management fees on that money.

**ANSWER:** White Oak denies the allegations in Paragraph 11.

12. On or about July 31, 2018, the Trustees made a demand for arbitration against White Oak pursuant to Section 24 of the IMA, which states in full:

> Any dispute arising under this Agreement shall be resolved by arbitration of the American Arbitration Association in the City of New York. The arbitrator shall be selected by the parties from a panel of persons qualified and experienced with respect to jointly-trusted pension funds and investments on their behalf.

Phillips Decl. Ex. C at NYSNA00000949-50.

**ANSWER:** White Oak admits the allegations in Paragraph 12, but denies that the Plan's arbitration demand had any merit or that White Oak has any liability to the Plan.

13. In their arbitration demand, the Trustees asserted claims for breach of ERISA fiduciary duties owed to the Plan, as well as a contractual claim for breach of the IMA's "most favored nations" provision. In response, White Oak asserted a counterclaim against the Trustees in their personal capacity alleging that, if White Oak breached its fiduciary duties, the Trustees knew about and participated in such breaches.

**ANSWER:** White Oak admits the allegations in Paragraph 13, but denies that the Plan's arbitration demand had any merit or that White Oak breached any ERISA fiduciary duties to the Plan or the IMA.

14. The parties selected Rosemary Townley, Esq. to serve as the arbitrator. A copy of the parties' agreement to the arbitrator is attached as Exhibit D to the Phillips Declaration. The

arbitration was conducted under the Commercial Arbitration Rules of the American Arbitration Association ("AAA").

**ANSWER:** White Oak admits that Rosemary Townley, Esq. was the "highest mutually ranked arbitrator" selected by the parties and was therefore selected by the AAA to serve as the arbitrator. White Oak admits that the arbitration was conducted under the Commercial Arbitration Rules of the AAA. White Oak denies the remaining allegations of Paragraph 14.

15. The parties engaged in extensive arbitration proceedings leading up to a week-long in-person hearing at the AAA offices in New York, New York in December 2019, followed by post-hearing briefing that completed in June 2020.

**ANSWER:** White Oak admits that the parties engaged in extensive arbitration proceedings leading up to a week-long in-person hearing at the AAA offices in New York, New York in December 2019. White Oak denies the remaining allegations of Paragraph 15.

16. The arbitrator requested, and the parties agreed, to extend the time to render an award until December 1, 2020. Attached as Exhibits E, F, and G to the Phillips Declaration are copies of the communications documenting the agreed-to extensions.

**ANSWER:** White Oak admits the allegations in Paragraph 16.

17. On November 30, 2020, the arbitrator issued a Partial Final Award. A copy of the Partial Final Award is attached as Exhibit A to the Phillips Declaration (cited to hereinafter as "PFA").

**ANSWER:** White Oak admits the allegations in Paragraph 17.

18. In the Partial Final Award, the arbitrator determined that White Oak "engaged in numerous prohibited transactions pursuant to ERISA Section 406(b)(l), [2]9 [sic] U.S.C. Sec. 1106(b)(l) and as a result received either compensation or benefits beyond that agreed to by the Trustees under the IMA." PFA at 15.

**ANSWER:** The Partial Final Award speaks for itself and White Oak refers the Court to the Partial Final Award. White Oak denies that the Partial Final Award is the operative arbitration award. The Award states that it "modified" the Partial Final Award "to reflect the evidence revealed throughout the briefing and the experts presented" after the Partial Final

Award was issued, including by stating that "[a]ll claims not expressly granted herein are DENIED."

19. The arbitrator awarded the Plan the return of the net asset value ("NAV") of the Plan's assets, disgorgement of profits and fees, and removal of White Oak as investment manager, all of which are authorized under ERISA § 409(a), 29 U.S.C. § 1109(a). *See* PFA at 35-36. The arbitrator also awarded the Plan's attorneys' fees and costs, pursuant to ERISA § 432(g)(l), 29 U.S.C. § 1132(g)(l), and prejudgment interest at the New York statutory rate of 9%. PFA at 36-37.

**ANSWER:** White Oak denies the allegations in Paragraph 19.

20. The arbitrator also concluded that White Oak's counterclaim against the Trustees failed because the Trustees of the Plan neither knew of, not participated in, White Oak's many wrongful acts, *see id.* at 31-32, and denied the Trustees' contractual claim based on breach of the most favored nations provisions. *Id.* at 27.

**ANSWER:** White Oak admits that the Arbitrator denied the Plan's contractual claim relating to the most favored nations provision and denies the remaining allegations in Paragraph 20.

21. By letter of December 30, 2020, White Oak counsel advised the arbitrator that "unless you tell us differently in a written communication, Respondent does not interpret your Partial Final Award to be a Final Award." Phillips Decl. Ex. B (cited to hereinafter as "FA") at 4-5. The arbitrator confirmed by email that the Partial Final Award was not final in nature. *Id.* at 5.

**ANSWER:** White Oak admits the allegations in Paragraph 21.

22. The only matter left open after the Partial Final Award, however, was the precise calculation of amounts due under each category of relief awarded. PF A at 35-37.

**ANSWER:** White Oak denies the allegations in Paragraph 22.

23. The arbitrator ordered the parties to jointly appoint a third-party accountant to conduct an inquest into the exact quantum owed to the Plan, including the proper amount for disgorgement. *See id.* at 35. White Oak, however, refused to participate in the process ordered by the arbitrator. FA at 7. The Trustees were therefore compelled to retain Cornerstone Research, an independent economic and financial consultancy, to provide an assessment of the amounts owed by White Oak based on the documents available to the Trustees.

**ANSWER:** White Oak denies the allegations in Paragraph 23.

24. Accordingly, between January and May 2021, the Trustees submitted financial records, summaries, and briefing for the arbitrator to determine the amounts owed under the

various categories of relief awarded in the Partial Final Award, including calculations prepared by Cornerstone Research, the independent expert retained by the Trustees.

**ANSWER:** White Oak denies the allegations in Paragraph 24.

25. White Oak submitted numerous responses to the Trustees' submissions, including rebuttal reports from two proffered experts.

**ANSWER:** White Oak admits the allegations in Paragraph 25.

26. A one-day remote hearing was held on June 17, 2021 before the arbitrator during which each party had the opportunity to cross-examine the others' experts. The parties subsequently made their final written submissions to the arbitrator on July 1, 2021. The arbitrator informed the parties that the hearing would close two weeks following receipt of the final submissions.

**ANSWER:** White Oak admits the allegations in Paragraph 26.

27. On or about August 4, 2021, the arbitrator issued a Final Award, which incorporated the findings and remedies from the Partial Final Award. A copy of the Final Award is attached hereto as Exhibit B to the Phillips Declaration.

**ANSWER:** The Award speaks for itself and White Oak refers the Court to the Award. White Oak denies the allegations in the first sentence of Paragraph 27. The Award states that it "modified" the Partial Final Award "to reflect the evidence revealed throughout the briefing and the experts presented" after the Partial Final Award was issued, including by stating that "[a]ll claims not expressly granted herein are DENIED." White Oak admits that a copy of the Award is attached as Exhibit B to the Phillips Declaration. White Oak denies any remaining allegations in Paragraph 27.

28. As in the Partial Final Award, the Final Award ordered White Oak to disgorge "all [Plan] assets," the total value of which the arbitrator determined "is $96,213,778.83." FA at 6, 10, 11. The arbitrator further determined that some, but not all of the Plan assets must be returned in cash. *See* FA at 9-10.

**ANSWER:** White Oak denies the allegations in Paragraph 28.

29. While the Partial Final Award had awarded the Plan a return of all fees collected by White Oak, including (i) $9,493,641.05 in management fees, plus (ii) any performance fees, the arbitrator's Final Award modified this remedy by permitting White Oak to retain performance fees, but still ordered White Oak to disgorge the management fees. *See* FA at 6,

7

10.

**ANSWER:** White Oak denies the allegations in Paragraph 29.

30. By incorporating the Partial Final Award into the Final Award, the arbitrator reaffirmed that White Oak must be removed as the Plan's fiduciary and investment manager. See FA at 10; PFA at 36.

**ANSWER:** White Oak denies the allegations in Paragraph 30.

31. The Final Award also awarded "[a]ttorneys' fees and costs as proposed by the Plan," less a 20% reduction, which amounts to $5,722,249.35. See FA at 10.

**ANSWER:** White Oak admits that the Award purports to award "attorneys' fees and costs as proposed by the Plan . . . reduced by 20% since the Plan did not prevail on all claims . . ." but denies that the Award contains an amount of attorneys' fees and costs awarded. White Oak denies any remaining allegations in Paragraph 31.

32. Finally, the arbitrator awarded "[p]re-judgment interest ... at the New York statutory rate of 9%," applied to the amounts owed except for attorneys' fees and costs, which amounts to $28,680,539.45 as of August 4, 2021. See FA at 11.

**ANSWER:** White Oak denies the allegations in Paragraph 32.

33. This Petition for an order confirming the arbitrator's awards is brought within one year of when the Final Award was issued, pursuant to 9 U.S.C. § 9.

**ANSWER:** White Oak admits that the Plan's petition to confirm is brought within one year of the date when the Award was issued, but denies that the Award should be confirmed. White Oak denies any remaining allegations in Paragraph 33.

34. The arbitration awards have not been vacated, modified, or corrected.

**ANSWER:** White Oak admits that the Award has not yet been vacated, modified, or corrected. White Oak has filed a Petition to Vacate, in Part, an Arbitration Award and an Opposition to Petitioner's Petition to Confirm Arbitration Award. White Oak denies any remaining allegations in Paragraph 34.

35. The Trustees are entitled to the issuance of an order confirming the Partial Final

Award and Final Award.

**ANSWER:** White Oak denies the allegations in Paragraph 35.

To the extent a response is required with respect to the text of the Petition following "Prayer for Relief" on page 7, White Oak denies all such allegations and denies that the Plan is entitled to any relief.

## WHITE OAK'S PRAYER FOR RELIEF

White Oak respectfully requests:

1. That judgment be entered in favor of White Oak, including denying the Plan's Petition to Confirm and any relief sought therein;

2. That the Court grant White Oak's Petition to Vacate, in Part, an Arbitration Award for the reasons stated in that Petition and in White Oak's Memorandum of Law in Support of its Petition to Vacate, in Part, an Arbitration Award; and

3. That the Court grant any other relief that it deems appropriate.

Dated: October 25, 2021

Respectfully Submitted,

SIDLEY AUSTIN LLP

By: */s/ James Heyworth*

James Heyworth
787 Seventh Avenue
New York, New York 10019
Tel.: (212) 839-5300
jheyworth@sidley.com

and

Thomas K. Cauley, Jr. (*pro hac vice* application forthcoming)
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
*Attorneys for Respondent White Oak Global*

*Advisors, LLC*

Case 1:21-cv-08330-LAK-RWL   Document 22   Filed 10/25/21   Page 10 of 10