UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE TRUSTEES OF THE NEW YORK
STATE NURSES ASSOCIATION PENSION
PLAN,

                Petitioners,

   v.

WHITE OAK GLOBAL ADVISORS, LLC,

                Respondent.

Civil Action No. 21–cv–08330

---

**PETITIONERS' SUPPLEMENTAL MEMORANDUM OF LAW**

COVINGTON & BURLING LLP
C. William Phillips
Jonathan M. Sperling
Cléa P.M. Liquard
The New York Times Building
620 Eighth Avenue
New York, New York 10018
212-841-1000
cphillips@cov.com
jsperling@cov.com
cliquard@cov.com

Robert Newman
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
202-662-6000
rnewman@cov.com

*Attorneys for Petitioners Trustees of the New York State Nurses Association Pension Plan*

The Plan respectfully submits this Supplemental Memorandum of Law to respond to the three questions raised in the Court's February 10, 2022 Order.

**1. Is there a "final" award before the Court?**

**Yes.** Under Second Circuit precedent, an arbitration award is "final" when the award is "intended by the arbitrators to be their complete determination of all claims submitted to them." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 51 (2d Cir. 2014) (internal citation and quotation omitted). "[O]nce arbitrators have finally decided the submitted issues, they are, in common-law parlance, '*functus officio*,' meaning that their authority over those questions is ended." *Trade & Transp., Inc. v. Nat. Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991). By contrast, an award is *not* final where the arbitrator's ruling was clearly intended to be interim or partial, with subsequent arbitration proceedings contemplated. Thus, for example in *Michaels v. Mariforum Shipping, S.A.*, an award was not "final" because it "d[id] not purport to be final but [was] merely a first step in deciding all claims submitted to arbitration"; the award was titled "Decision & Interim Award," determined liability as to only some of the counterclaims and none of the affirmative claims, did not address damages, and "further arbitration hearings with regard to those issues" were conducted. 624 F.2d 411, 412-13 (2d Cir. 1980).

Here, the arbitrator's intent to render a final award is exhibited on the face of the award: The August 4, 2021 ruling bears the title "Final Award on Merits/Damages/Attorneys' Fees and Costs," and the arbitrator refers throughout the document to the "instant Final Award," and "this Final Award." Dkt. 21-2 at 2, 11, 12.[1] The Final Award addressed all claims and counterclaims raised by the parties, ordered specific categories of relief, and does not purport to retain

---

[1] Pincites to documents on the docket refer to the ECF-generated pagination.

jurisdiction over any of the matters submitted for arbitration.  *Id.* at 11-12.  The Final Award also assessed attorneys' fees, prejudgment interest, and fees due to the American Arbitration Association—relief that would typically be awarded at the conclusion of proceedings.  *Id.*  In those key respects, the Final Award contrasts with the arbitrator's Partial Final Award, where the arbitrator made apparent that the ruling was intended to be interlocutory and that she "retained" jurisdiction over the matter to determine the amounts owed by White Oak.  Dkt. 21-1 at 38.  Accordingly, nothing in the Final Award indicates that the arbitrator here intended to leave any issue for further resolution in the arbitration proceeding.  *See Kalyanaram*, 742 F.3d at 51 (award was final where it "bore the heading 'Final Award,' while the subsequent orders were only referred to as 'Interim Order' or 'Supplemental Award'"); *Sperry Int'l Trade, Inc. v. Gov't of Isr.*, 532 F. Supp. 901, 909 (S.D.N.Y. 1982) (award was "final" where the award "was neither labeled nor propounded as an 'interim one'"), *aff'd* 689 F.2d 301 (2d Cir. 1982).  *See also McKinney Restoration, Co. v. Illinois Dist. Council No. 1 of Int'l Union of Bricklayers and Allied Craftworkers, AFL-CIO*, 392 F.3d 867, 872 (7th Cir. 2004) (award had "none of th[e] markers of a nonfinal order"; nothing indicated that arbitrators "believed that any issues remained to be decided," the "award determined liability and imposed a remedy," and arbitrators "did not retain jurisdiction").

       That conclusion is underscored by the fact that both parties have treated the Final Award as "final" and have acted consistently with that position.  In contrast to the numerous party submissions following the arbitrator's Partial Final Award, neither party sought reconsideration or further proceedings before the arbitrator after the Final Award was rendered.  Both parties filed petitions seeking judicial action with respect to the Final Award, relief that can only be considered on the basis of a final award.  *See Michaels*, 624 F.2d at 414-15.  And neither party

has challenged the finality of the Final Award; to the contrary, the first sentence of Respondent's brief opposing the Plan's Petition to Confirm states, "On August 4, 2021, the Arbitrator issued her final award..." Dkt. 12 at 7. The parties' conduct is particularly relevant because arbitration, and the scope of what the parties submit for arbitral resolution, is a matter of agreement. *See Trade & Transp.*, 931 F.2d at 195 ("submission by the parties determines the scope of the arbitrators' authority").[2]

The finality of the award is not undermined by the absence of precise dollar amounts for some of the categories of relief awarded. An award remains "final" even where details such as calculation of amounts or interest owed remain to be determined. *See Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) And Its Local 537*, 47 F.3d 14, 16 (2d Cir. 1995) ("We agree with the Seventh Circuit that the reservation of jurisdiction over a detail like overseeing the precise amount of back pay owed does not affect the finality of an arbitrator's award."); *Kalyanaram*, 742 F.3d at 51 (subsequent awards did not render "Final Award" nonfinal, because "subsequent awards merely effectuated the Final Award provisions concerning employment references").

Thus, for example, in *R & Q Reinsurance Co. v. Utica Mutual Insurance Co.*, the district court rejected an argument that an award was "not final because it failed to specify the exact amount" owed to the prevailing party. 18 F. Supp. 3d 389, 393 (S.D.N.Y. 2014). The court observed that the arbitral panel did not have records before it to resolve the dispute at a "mathematical[] level" and therefore "understandably left to the parties the task of applying its

---

[2] *Cf. In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 132 (2d Cir. 2011) ("limitations and exclusions" on scope of arbitration "need not be specified by the initial agreement to arbitrate"); *Baker & Taylor, Inc. v. AlphaCraze.Com Corp.*, 602 F.3d 486, 491 (2d Cir. 2010) ("We know of no authority holding that two parties can be forced to arbitrate against their present wishes, even if they originally signed a contract agreeing to arbitrate...").

categorical rulings, both retrospectively ... and prospectively." *Id.* at 393, 395.  The court also noted that the defendant's "conduct following the arbitral Award reinforced its finality"; the defendant "did not ask the panel to remain constituted ... nor did it ask this Court to stay the dissolution of the [arbitral] panel," and "did not suggest to this Court the prospect of a remand to the panel until its surreply brief." *Id.* at 395.

In short, the arbitrator's written Final Award expresses an explicit intent finally to determine the issues before her.  The arbitrator is thus *functus officio* with regard to the issues determined.  *See Trade & Transp.*, 931 F.2d at 195.

**2.  Assuming that (1) there is [a final award], (2) it orders disgorgement of the Plan assets' NAV as measured on August 4, 2021, and (3) fails to specify the NAV as of that date, does the Federal Arbitration Act permit the Court to determine the proper NAV?**

**Yes.**  As the Second Circuit and numerous other courts have held, a district court is empowered to perform ministerial computation of amounts contemplated in an arbitration award.

For example, in *Robert Lewis Rosen Associates, Ltd. v. Webb*, the Second Circuit concluded that it was "permissible that Judge Baer performed the essentially ministerial function of ordering an undisputed amount of damages, when such award was specifically contemplated by the underlying arbitration."  473 F.3d 498, 506 (2d Cir. 2007) (emphasis omitted).  In that case, the arbitrator's final award granted an agency payments in connection with four contracts that were to be renewed, but did not specify the amounts owed.  *Id.* at 501.  The district court confirmed the award and, in a supplemental judgment, awarded the agency a sum certain in connection with the contract renewals.  *Id.* at 503.  The Second Circuit affirmed the ruling, holding that "[w]hile the general rule is that a district court may not go beyond the scope of the arbitrator's award and calculate damages in the first instance," the calculation there was permissible because it involved the straightforward application of a fixed percentage to the contracts.  *Id.* at 506.  The Second Circuit observed that the amount ordered by the district court

"was the amount requested by [the agency] in its motion," and that although the "arbitrator did not reduce this portion of his award to a sum certain," the arbitrator's "'failure' to do so is understandable ... given that the portion of the award was contingent upon future renewals that had yet to mature." *Id.* at 505 n.14.

District courts in this Circuit have likewise concluded that "[s]imply because the award does not quantify the money owed to a party does not necessarily mean that it is ambiguous or that a remand is warranted." *Gerlind Global Reins. Corp. v. Yasuda Fire & Marine Ins. Co., Ltd.*, 1999 WL 553767, at *2 (S.D.N.Y. July 29, 1999). Notwithstanding the parties' differing interpretations of the award, the district court in *Gerlind* concluded that the arbitrator's award unambiguously set out a formula for calculating the amounts due and ordered the parties to "perform[] the relevant calculations under the Award." *Id.* at **3-4. The court also set out a timeline for the parties to produce documentation sufficient to calculate the damages and any offsets. *Id.* at **4-5.

Courts outside this Circuit have also affirmed a district court's authority to "confirm an award by crafting specific relief consistent with the intent of the arbitrators." *RGA Reins. Co. v. Ulico Cas. Co.*, 355 F.3d 1136, 1139 (8th Cir. 2004) (internal quotation omitted). In *RGA*, for example, arbitrators awarded a sum certain to a reinsured, and determined that the reinsurer was entitled to a credit for any prior excess payments, but did not specify the amount of the credit. *Id.* at 1138. On a motion to confirm the award, the district court concluded that the portion of the award ordering the credit "was readily capable of ministerial computation by the court, and was therefore consistent with a confirmation proceeding under the Federal Arbitration Act." *Id.* The district court found the reinsurer was entitled to a credit of more than $4.8 million, relying "on the affidavit and accounting analysis submitted" by the reinsurer, which the reinsured "failed to

rebut." *Id.* The Eighth Circuit affirmed the ruling, holding that "the district court was within its authority to award an amount certain for credits due to RGA that were contemplated (but not specifically calculated) in the arbitration award." *Id.* at 1140.

Similarly, in *Flender Corp. v. Techna-Quip Co.*, the Seventh Circuit upheld a district court's order confirming an arbitration award and its calculation of damages. 953 F.2d 273, 280 (7th Cir. 1992). In *Flender*, the arbitrator's award ordered the respondent to pay commissions on the claimant's sales; the district court confirmed the award and ordered the respondent "to produce documents from which commissions could be calculated." *Id.* at 276. The Court of Appeals upheld the judgment, concluding that, "[a]lthough the arbitrator did not quantify the amount payable to [the claimant]," the task left for the district court was "only the ministerial computation of the amount owed," and "[b]ecause this computation was easily ascertainable ... the arbitrator's award was final and definite." *Id.* at 280.

As these authorities demonstrate, the FAA permits the Court to determine the NAV of Plan assets to be disgorged as measured on August 4, 2021, because that amount can easily be ascertained from the Capital Account Statements issued by White Oak for the Pinnacle and Summit fund investments. It is undisputed that the "capital balance" as reported in the Capital Account Statements is White Oak's reported NAV for the investments. Indeed, both parties have filed papers identifying the NAV of the investments at various dates using the amounts reported in White Oak's Capital Account Statements. Thus, for example, White Oak's expert stated in his declaration that "[t]he Plan's investments in the Funds as of December 31, 2020 have a total NAV of $85,266,364," and in footnotes indicated that the Pinnacle investment had a NAV "at 12/31/20 of $50,114,070" and the Summit NAV as of that date was $35,152,294. Dkt. 11-9 at 12-13, 10 n.24, n.26. Those figures are taken from the Statements of Capital Account For The

Quarter Ended December 31, 2020. *See* Dkt. 21-11 at 36 (Pinnacle Capital Account Statement for Dec. 31, 2020 showing $50,114,070.01 as capital balance); Dkt. 21-11 at 66 (Summit Capital Account Statement for Dec. 31, 2020 showing $35,152,293.92 as capital balance). *See also* Dkt. 40 ¶ 8 (White Oak declarant discussing the NAV reported "[a]ccording to account statements"). Likewise, the Plan's expert looked to the capital balance reflected on the Capital Account Statements to identify the NAV of the Plan's investments. *See, e.g.*, Dkt. 21-10 at 7 n.3 ("The net asset value is reported in the Capital Account Statements as the 'Capital Balance at the End of the Period After Incentive Allocation.'"). Thus, as in *Webb*, *Gerlind*, and other like cases, the Court is permitted to "perform[] the essentially ministerial function" of determining the NAV of the Plan's assets based on those undisputed documents, which both parties have relied upon to identify the NAV. *Webb*, 473 F.3d at 506.³

Assuming, as the Court has asked us to do, that the arbitrator awarded disgorgement of the NAV of Plan assets "as measured on August 4, 2021," the Court can look to the capital balance reported on the Statements of Capital Account For The Quarter Ended June 30, 2021 to

---

³ Moreover, to the extent the Court finds that the Final Award ordered disgorgement of the NAV "measured on August 4, 2021," the arbitrator could not have made such a determination because no evidence was before the arbitrator that would allow her to determine the NAV reported as of that date. The final submission of documentary evidence and written expert declarations to the arbitrator was made on May 19, 2021. *See* Dkt. 21 ¶¶ 21-29. Thus, as in *Webb* and *Flender*, the Court here is empowered to determine the NAV as of August 4, 2021, because that amount is determined by information that was not available at the time of the arbitrator's decision. *See Webb*, 473 F.3d at 505 n.14 (arbitrator's "'failure' to [award sum certain] is understandable ... given that the portion of the award was contingent upon future renewals that had yet to mature"); *Flender*, 953 F.2d at 280 n.11 (term of contract had not run at time of final award, thus "the entire amount due under the award could not have been computed by the arbitrator"); *cf. R & Q Reins.*, 18 F. Supp. 3d at 395 (arbitrator left to parties the task of calculating "at a dollars-and-cents level, the monies ... owed" both "retrospectively" and "prospectively").

determine the NAV.  June 30, 2021 is the date closest to August 4, 2021 on which the NAV of the Plan's assets in the Summit and Pinnacle funds was reported.[4]

**3. May the Court order a clarification remand to the Arbitrator:**

**Case law provides that the Court "may," but that the Court should not do so here.** Although a district court "has the power to remand an award for clarification of the meaning or effect of an award," an award should be confirmed without remand "where the true intent of the arbitrator is apparent." *Gerlind*, 1999 WL 553767, at **1-2 (internal quotations and citations omitted).  *Accord Fischer v. CGA Computer Assocs., Inc.*, 612 F. Supp. 1038, 1041 (S.D.N.Y. 1985).  *See also Gen. Re Life Corp. v. Lincoln Nat'l Life Ins. Co.*, 909 F.3d 544, 549 (2d Cir. 2018) (explaining that remand for clarification is appropriate only when the award is "ambiguous").  "Remand should be granted sparingly because of the likelihood that the arbitrator will believe that a remand is equivalent to retrial with an expectation of an opposite result the second time around." *Est. of Scherban v. Lynch*, 2021 WL 2581278, at *12 (S.D.N.Y. June 23, 2021) (internal quotations and citations omitted); *accord Gerlind*, 1999 WL 553767, at *2.  Remand is also disfavored because of the risk of "'frustrat[ing] the basic purposes of arbitration: to resolve disputes speedily and to avoid the expense and delay of expensive court proceedings.'"  *Fischer*, 612 F. Supp. at 1041 (quoting *Fed. Com. & Navigation Co. v. Kanematsu-Gosho, Ltd.*, 457 F.2d 387, 389 (2d Cir. 1972)).

Here, the arbitrator's intent is apparent on the face of the award with respect to both of the two issues identified by the Court:

---

[4] It is undisputed that White Oak calculated and reported the NAV of the Plan's investments in the Pinnacle and Summit funds only on a quarterly basis.  *See* Dkt. 40 ¶ 8.  Accordingly, the NAV can only be ascertained as of the quarter ending on a date closest to August 4, 2021.

**a. To determine the Plan's NAV on August 4, 2021?**

For the reasons given in response to Question 2, determination of the "NAV on August 4, 2021" is a matter of ministerial calculation that is easily performed by this Court. *See Webb*, 473 F.3d at 506.

**b. To specify which assets are to be disgorged in kind and the dollar amount of cash disgorgement?**

The arbitrator granted White Oak's request to permit White Oak to determine the extent to which the Plan's assets would be disgorged in kind rather than in cash—subject to two key requirements:  The assets disgorged must equal the NAV and White Oak must be removed as investment manager.  The Final Order is clear in this regard and no remand is therefore warranted.  Whether White Oak has *complied*—*i.e.*, whether (a) the assets disgorged by White Oak in fact total the NAV, and (b) whether White Oak's selection of in kind asset transfers has, in fact, removed White Oak as the Plan's fiduciary, or whether White Oak continues to have control of the assets—is disputed by the parties and therefore properly the subject of a subsequent and separate enforcement proceeding once the Final Award is confirmed.  *See Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) ("At the confirmation stage, the court is not required to consider the subsequent question of compliance."); *Schusterman v. Mazzone*, 2019 WL 2547142, at *4 (S.D.N.Y. June 19, 2019) ("issues of compliance and confirmation are distinct from each other").

Moreover, remand would indeed "frustrat[e] the basic purposes of arbitration" by further delaying this matter. *Fischer*, 612 F. Supp. at 1041.  The Plan brought the arbitration three-and-a-half years ago seeking a return of its assets and the fees it paid to White Oak as well as the removal of White Oak as its fiduciary.  Today, despite the arbitrator's finding that White Oak breached its fiduciary duties and engaged in several acts of self-dealing, White Oak retains

control over Plan assets, has refused to return management fees, and still serves as a fiduciary managing assets set aside for the pensions of New York's nurses.  A remand could prolong by several months or more the enforcement of the arbitrator's order (even the Partial Final Award was not issued until 11 months after conclusion of the hearing).

Under the above case law, the Court therefore "has the power" to remand, but "should" confirm the Final Award without remand.

| | |
|---|---|
| New York, New York<br>Dated:  February 25, 2022 | COVINGTON & BURLING LLP<br><br>  s/  *C. William Phillips*  <br>C. William Phillips<br><br>Jonathan M. Sperling<br>Cléa P.M. Liquard<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018<br>212-841-1000<br>cphillips@cov.com<br>jsperling@cov.com<br>cliquard@cov.com<br><br>Robert Newman<br>One CityCenter<br>850 Tenth Street, NW<br>Washington, DC 20001<br>202-662-6000<br>rnewman@cov.com<br><br>*Attorneys for Petitioners Trustees of the New York State Nurses Association Pension Plan* |