**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| THE TRUSTEES OF THE NEW YORK STATE NURSES ASSOCIATION PENSION PLAN, | ) ) ) ) | |
| Petitioners, | ) ) | Case No. 21-cv-8330 (LAK) |
| v. | ) ) | |
| WHITE OAK GLOBAL ADVISORS, LLC, | ) ) ) | |
| Respondent. | ) | |

**RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION**
**TO PETITIONERS' MOTION TO CORRECT JUDGMENT**

SIDLEY AUSTIN LLP
James Heyworth
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

and

Thomas K. Cauley, Jr. (*pro hac vice*)
Steven E. Sexton (*pro hac vice*)
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Respondent White Oak Global Advisors, LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 6

I.      The Court Already Denied the Trustees' Request for a Judgment Declaring the "Removal of White Oak as Fiduciary and Investment Manager." ................................................................................................ 7

II.     The Judgment Should Not Be Amended to Order Any Disgorgement of Profits. ........................................................................................................ 8

III.    The Court Did Not Confirm Any Prejudgment Interest on the August 4, 2021 NAV of the Plan's Investments. ............................................................ 9

IV.    The Trustees' Request to Amend the Judgment to Include the Amount of the Day One Fee and Attorneys' Fees Should Be Denied. ............................ 12

V.     White Oak Disputes the Trustees' Calculation of Prejudgment Interest on the Day One Fee. .................................................................................... 15

CONCLUSION ................................................................................................................. 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,
    727 F. Supp. 2d 256 (S.D.N.Y. 2010)........................................................................14

*Boyce v. Soundview Tech. Grp., Inc.*,
    No. 03 Civ. 2159(HB), 2005 WL 627780 (S.D.N.Y. Mar. 17, 2005) ....................................15

*Consumer Fin. Prot. Bureau v. Sprint Corp.*,
    320 F.R.D. 358 (S.D.N.Y. 2017) ..................................................................................6, 8, 9

*Dervan v. Gordian Grp. LLC*,
    16-CV-1694 (AJN), 2017 WL 8194494 (S.D.N.Y. Feb. 28, 2017)........................................13

*Henry v. Champlain Enters., Inc.*,
    445 F.3d 610 (2d Cir. 2006)......................................................................................14

*Kriegel v. Donelli*,
    No. 11 Civ. 9160(ER), 2014 WL 2936000 (S.D.N.Y. June 30, 2014) ....................................13

*L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau
Cnty., Inc.*,
    956 F. Supp. 2d 402 (E.D.N.Y. 2013) ...........................................................................15

*Laurent v. PricewaterhouseCoopers LLP*,
    06-CV-2280 (JPO), 2018 WL 1940431 (S.D.N.Y. Apr. 24, 2018) ........................................12

*Levy v. Young Adult Inst., Inc.*,
    13-CV-2861 (JPO), 2017 WL 1929505 (S.D.N.Y. May 9, 2017)..........................................11

*Minpeco, S.A. v. Conticommodity Servs., Inc.*,
    676 F. Supp. 486 (S.D.N.Y. 1987) ..............................................................................14

*Mobile, Ala.-Pensacola Fla. Bldg. & Constr. Trades Council v. Daughtery*,
    684 F. Supp. 270 (S.D. Ala. 1988)................................................................................12

*Paddington Partners v. Bouchard*,
    34 F.3d 1132 (2d Cir. 1994)......................................................................................15

*Peyser v. Searle Blatt & Co.*,
    No. 99 Civ. 10785(WK), 2003 WL 1610772 (S.D.N.Y. Mar. 24, 2003) .................................7

*Seaport Glob. Holdings LLC v. Petaquilla Mins. Ltd.*,
    19 Civ. 9347 (ER), 2020 WL 3428151 (S.D.N.Y. June 23, 2020)..........................................11

*In re Venture Mortg. Fund, L.P.*,
   282 F.3d 185 (2nd Cir. 2002).................................................................................................13

*Walsh v. Vinoskey*,
   19 F.4th 672 (4th Cir. 2021) .................................................................................................15

**Other Authorities**

Fed. R. Civ. P. 60................................................................................................................ *passim*

## INTRODUCTION

Respondent, White Oak Global Advisors, LLC ("White Oak"), submits this memorandum of law in opposition to the motion of Petitioners, the Trustees of the New York State Nurses Association Pension Plan (the "Plan"), to correct the Court's March 17, 2022 judgment (the "Judgment").

As a threshold matter, the  motion by the Plan's Trustees (the "Trustees") to correct the Judgment, Dkt. 60, should be denied because this Court does not have subject matter jurisdiction over this proceeding.  As explained in White Oak's memorandum in support of its motion to vacate the Judgment, Dkt. 64, the parties alleged that this Court had subject matter jurisdiction over their respective petitions to confirm and vacate the arbitration award under the so-called "look through" approach for subject matter jurisdiction, because the underlying arbitration involved questions of federal law.  However, the U.S. Supreme Court recently held in *Badgerow v. Walters* that the "look through" approach is insufficient to establish subject matter jurisdiction to confirm or vacate an arbitration award.  Rather, an independent jurisdictional basis must exist for a federal district court to confirm or vacate an arbitration award.  Because no independent jurisdictional basis exists in this case, the Judgment should be vacated, and the Trustees' motion to correct the Judgment should be denied as moot.

If the Court determines that it does have subject matter jurisdiction over this proceeding, it should nevertheless deny the Trustees' motion to correct the Judgment.  Rule 60(a) only allows a court to "correct a clerical mistake" in a judgment "or a mistake [in a judgment] arising from oversight or omission[.]"  The Trustees erroneously argue that the Judgment should be corrected because the "Judgment entered by the Clerk of the Court does not clearly describe" the relief confirmed by the Court.  Dkt. 62 at 2.  The Judgement *does* clearly and correctly describe the relief that the Court ordered.  There is plainly no "clerical mistake" or "oversight or omission" in

the Judgment.  The Clerk entered judgment exactly as directed by the Court.  The Judgment tracks *verbatim* the language that the Court instructed the Clerk to include in the Judgment, as found on page 29 of the Court's Memorandum Opinion.  Dkt. 59 at 29.  Indeed, the Judgment expressly incorporates the Court's Memorandum Opinion.  Dkt. 60 ("for the reasons stated in the Court's Memorandum and Opinion dated March 17, 2022 . . .").  Thus, the Trustees do not, and cannot, identify any "mistakes" or "omissions" in the Judgment that would provide a proper basis to correct the Judgment under Rule 60(a).  Rather, the Trustees improperly seek to amend the Judgment to add relief that the Arbitrator never granted, and which the Court did not confirm.

First, the Trustees seek to amend the Judgment to order the "removal of White Oak as fiduciary and investment manager."  However, the Court expressly denied the Trustees' request for a declaratory judgment that White Oak be removed as the Plan's fiduciary and investment manager.  In fact, the Court expressly directed the Clerk to enter judgment denying the Trustees' request for a declaratory judgment and the Judgment itself specifically states that the Trustees' request for a declaratory judgment is denied.  The Trustees' renewed request for a declaratory judgment should once again be denied.

Second, the Trustees seek to amend the Judgment to award the "disgorgement of profits." However, the arbitration award never ordered White Oak to disgorge any profits and does not identify any profits to be disgorged.  Indeed, the Trustees have never identified any profits that White Oak received that must be disgorged.  The Trustees' petition to confirm the arbitration award did not even ask this Court to confirm any award of profits – because there was no such award.  The Trustees' request for an award of unspecified profits should also be denied.

Third, while the Arbitrator ordered, and the Court confirmed, that White Oak return to the Trustees or their new investment manager (and the Trustees had no option but to accept), the

net asset value ("NAV") of the Plan's investments with White Oak as of August 4, 2021 (which is the date of the final arbitration award), the Trustees now seek prejudgment interest on that NAV *accruing starting three years earlier – in September 2018*.  The Arbitrator rejected that request, expressly finding that White Oak had tried to return the Plan's assets to the Trustees or a new investment manager in September 2018, but the Trustees refused to give White Oak any directions concerning the Plan's assets.  Consequently, White Oak had no alternative but to maintain the status quo and continue to manage the Plan's assets for the Trustees.  Because the Trustees had refused White Oak's attempts to return the Plan assets to the Trustees (or a new investment manager), the Arbitrator found that White Oak should not be "penalized" for the Trustees' refusal to accept the Plan's assets.  Instead, the Arbitrator ordered White Oak to disgorge the NAV of the Plan's investments as of the date of the final award (August 4, 2021) within 30 days, i.e., by September 3, 2021, which White Oak did.  Because White Oak was not ordered to disgorge the NAV of the Trustees' investment with White Oak until *September 2021*, there is no basis to award prejudgment interest going back three years, to September 2018.  Further, because the Trustees refused to identify a successor investment manager to which the Plan's investments with White Oak could be transferred – and thus the Plan continued to be invested with White Oak – the Plan earned over $6 million in profit as a result of White Oak's successful management of the Plan's assets after September 2018.  Awarding additional tens of millions of dollars in interest on top of the $6 million in profits the Plan received would provide the Plan with a windfall and unfairly penalize White Oak, directly contradicting the arbitration award that the Court confirmed.  The Trustees' request for prejudgment interest starting in September 2018 should be denied.

Fourth, the Trustees seek to amend the Judgment to identify the amounts of attorneys' fees and Day One fee awarded.  However, the Trustees previously requested that the Court simply confirm the arbitration award, which the Court did.[1]  Because the Judgment entered by the Clerk already accurately reflects the confirmation of the arbitration award, the Trustees' request to identify the amount of attorneys' fees and the Day One fee in the Judgment should be denied.  The addition of those amounts to the Judgment would not be to "correct a clerical mistake" or a mistake arising from an "oversight or omission," and therefore would be improper under Rule 60(a).  However, if the Judgment is amended, it should be amended to require the Plan to return the profits it received from the same Day One provision that was found to violate ERISA.  Under the Arbitrator's award and the Court's Memorandum Opinion, the Day One provision under which the Plan paid the Day One fee and received Day One profits is void *ab initio* as violating ERISA.  Thus, it would be inconsistent with the arbitration award to amend the Judgment to provide for disgorgement of the Day One fee without also amending the Judgment to require the Plan to return its Day One profits.  The parties must be returned to their status quo, as if the Day One provision never existed.

The Plan paid the Day One fee pursuant to the Day One provision in the Pinnacle Fund's Limited Partnership Agreement ("LPA").  Ex. A.[2]  The Plan first invested in the Pinnacle Fund in January 2014 – nearly two years after the Pinnacle Fund first began operations in April 2012.

---

[1] During the March 9, 2022 hearing, the Court asked the Trustees' counsel whether the arbitration award required clarification, such that the matter should be remanded to the Arbitrator for such clarification.  Dkt. 57 at 8-9, 27.  The Trustees' counsel argued that remand to the Arbitrator to clarify the arbitration award was not necessary, that the Court should "simply" "confirm the award" as is, and then the Trustees would bring an enforcement proceeding and deal with any ambiguity in the arbitration award at that time.  *Id.* at 7-9, 27-28.  Based on the Trustees' counsel's suggestion that the arbitration award should simply be confirmed, the Court remarked: "that argues, I suppose, for a minimalist approach[.]"  *Id.* at 28.  However, now that the Court has confirmed the arbitration award in part, as requested by the Trustees, the Trustees improperly move to make wholesale changes to the judgment confirming the arbitration award – which changes are not permitted by Rule 60(a).

[2] All exhibits cited herein are attached to the Declaration of Thomas K. Cauley, Jr. filed herewith.

Under the Day One provision in the LPA, White Oak treated the Plan *as though* the Plan had invested in the Pinnacle Fund on the first day that the Pinnacle Fund began operating in April 2012 ("Day One") *both as to profits and management fees*, instead of two years later, when the Plan actually invested in the Pinnacle Fund. Thus, the Plan paid a management fee that compensated White Oak for managing the Pinnacle Fund's loan investments for the period of time that the Pinnacle Fund had been operating before the Plan joined the Pinnacle Fund. In addition, it is undisputed that under the same Day One provision, the Plan also received over $2.6 million in *profits*, as though the Plan had invested in the Pinnacle Fund on Day One.

The Court's Memorandum Opinion states that the Arbitrator found that "causing the Plan to pay [a Day One fee] was a standalone ERISA violation." Dkt. 59 at 23. White Oak "caused" the Plan to pay the Day One fee pursuant to the Pinnacle Fund's Day One provision. Because the Day One provision under which the Plan paid the Day One fee and received Day One profits violated ERISA, the Day One provision is void *ab initio*, and White Oak and the Plan must be restored to status quo as if the Day One provision never existed. This means that "White Oak may not retain any 'Day One' fees," as the Court's Memorandum Opinion states. Dkt. 59 at 23. But it also must mean that the Plan may not retain any Day One profits.

To the extent that the Judgment is amended, amending the Judgment to provide that the Plan is not entitled to retain any Day One profits is also consistent with well-established offset principles. Under settled law concerning offsets, if a party has been both injured and enriched by the actions of another, that party cannot choose to recover for its injuries yet retain its windfall. Thus, White Oak's liability to the Plan based on the Day One provision must be offset by the $2.6 million in profits that the Plan received based on the same Day One provision. Accordingly, to the extent that the Judgment is amended pursuant to Rule 60, White Oak's

liability to the Plan should be offset against the over $2.6 million in profits that the Plan received as a result of the Day One provision that the Arbitrator found violated ERISA.

Finally, the Trustees also seek prejudgment interest on the Day One fee going back to December 2013. However, the Trustees cite no evidence (nor could they) that they in fact paid the Day One fee in December 2013. To the contrary, the evidence shows that the Plan did not pay the Day One fee until some time after receiving a capital call in February 2014. Thus, there is no basis for the Trustees' request for prejudgment interest on the Day One fee starting in December 2013. Further, where, as here, a "finding of fact" is required to determine the date from which prejudgment interest should run, a Rule 60(a) motion is an improper vehicle for setting that date. The Trustees' request relating to setting a date for calculating prejudgment interest should therefore be denied.

## ARGUMENT

In their Rule 60(a) motion, the Trustees improperly seek brand new relief that was not awarded in the arbitration award, and therefore, was necessarily not confirmed by the Court. Rule 60(a) provides that a court "may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). Rule 60(a) does not allow a court to substantively alter a judgment: the "heart of the distinction between an error that is correctable under Rule 60(a) and one that is not is that a correction under Rule 60(a) cannot alter the substantive rights of the parties." *Consumer Fin. Prot. Bureau v. Sprint Corp.*, 320 F.R.D. 358, 363 (S.D.N.Y. 2017). Further, "Rule 60(a) is not meant to provide a way for parties to relitigate matters already decided, to change errors in what a court has deliberately done, or to attempt to establish a right to relief which the court has

not previously recognized." *Peyser v. Searle Blatt & Co.,* No. 99 Civ. 10785(WK), 2003 WL 1610772, at *1 (S.D.N.Y. Mar. 24, 2003).[3]

Here, the Trustees' motion to correct the Judgment improperly seeks to "alter the substantive rights of the parties" and to "establish right[s] to relief which the [C]ourt has not previously recognized." The Trustees request that the Judgment be amended to add the following paragraph:

> Accordingly, the Court confirms the following relief awarded in favor of the Plan: (i) removal of White Oak as fiduciary and investment manager; (ii) disgorgement of profits; (iii) disgorgement of the "Day One" management fees in the amount of $1,929,836.07, plus prejudgment interest at 9% per annum in the amount of $1,319,532.02; (iv) disgorgement of the net asset value of the Plan's assets as of August 4, 2021, with prejudgment interest at 9% per annum running from September 18, 2018 to August 4, 2021; and (v) $5,722,249.35 in attorneys' fees and costs.

Dkt. 62 at 7. The Trustees argue that the above "text makes explicit the relief awarded by the arbitrator and confirmed by the Court." *Id.* However, the Arbitrator never awarded that relief to the Trustees, and the Court never confirmed that relief. The Trustees' motion to "correct" the Judgment is improper and should be denied.

**I.     The Court Already Denied the Trustees' Request for a Judgment Declaring the "Removal of White Oak as Fiduciary and Investment Manager."**

The Trustees' request that the Judgment be amended to order the "removal of White Oak as fiduciary and investment manager," Dkt. 62 at 7, is precisely the judgment that the Trustees requested in their original petition to confirm the arbitration award and that this Court expressly denied. The Court's Memorandum Opinion explains that the Trustees "seek[] a declaratory judgment . . . that White Oak be removed as the Plan's fiduciary and investment manager." Dkt. 59 at 27-28. The Court noted that "White Oak observes correctly that those portions of the FA

---

[3] All internal quotation marks and citations are omitted.

[final arbitration award] and PFA [partial final arbitration award] setting out 'relief' are silent as to any declaratory relief." *Id.* at 28.  The Court then denied the Trustees' request for a declaratory judgment.  *Id.* at 29.  In fact, the Court expressly directed the Clerk to enter judgment denying the Trustees' request for a declaratory judgment and the Judgment itself specifically states that the Trustees' request for a declaratory judgment is denied.  Dkt. 59 at 29; Dkt. 60.  The Trustees' attempt to relitigate this issue by once again seeking a judgment that the Court already expressly denied is improper and should be rejected.[4]  *Consumer Fin. Prot. Bureau*, 320 F.R.D. at 363 ("Rule 60(a) is not meant to provide a way for parties to relitigate matters already decided[.]").

## II.   The Judgment Should Not Be Amended to Order Any Disgorgement of Profits.

The Trustees improperly seek to amend the Judgment to award "disgorgement of profits." Dkt. 62 at 7.  However, neither the Arbitrator's partial final award nor the Arbitrator's final arbitration award identifies any profits to be disgorged. Dkt. 59 at 10.  Indeed, at the arbitration proceeding, the Trustees never established that White Oak received any profits from the Plan's investments with White Oak.  Nor did the Trustees' petition to confirm the arbitration award ask this Court to confirm any award of profits – because there was no such award.  Dkt. 14-1 at 7 (prayer for relief).

The Trustees' submissions to this Court make clear that the Arbitrator did not award any disgorgement of profits to the Plan.  The Trustees argued to this Court that the Arbitrator's reference in the partial final award to disgorging "'profits and any fees' applied to the two types of compensation White Oak accrued for managing the Plan's investments —performance fees

---

[4] The partial final arbitration award stated that "White Oak must be removed as investment manager" and "[t]his shall occur upon the Plan's retention of a replacement investment manager."  Dkt. 59 at 8-9.  The Plan has retained a replacement investment manager – Comvest – and White Oak is no longer the Plan's investment manager.

and management fees, the latter of which includes the $1.9 million 'Day One Fees.'"  Dkt. 35 at

22.  White Oak never collected any performance fees whatsoever, and the Trustees conceded

during the March 9, 2022 hearing that the Arbitrator did *not* order White Oak to disgorge any

performance fees.  Dkt. 57 at 29-30.  The Court's Memorandum Opinion corrected the final

arbitration award to make clear that the Arbitrator ordered that White Oak is entitled to retain all

of the management fees White Oak collected (except for the Day One fee), which management

fees the Arbitrator found were *not* profits to White Oak.  Dkt. 59 at 23; Dkt. 31-1 at 11.  Thus,

because the Trustees concede that the partial final arbitration award's reference to "fees and

profits" solely refers to performance fees (which White Oak never collected), management fees

(which the Court confirmed White Oak is entitled to retain) and the Day One fee (which the

Court confirmed White Oak may not retain), the Arbitrator did not order any disgorgement of

profits to the Plan, and the Court did not confirm any disgorgement of profits.

In short, because the Trustees did not seek to confirm the award of any profits and no

such profits were awarded to the Plan, it is improper for the Trustees to now move under Rule 60

to amend the Judgment to seek such an award of unspecified profits.[5]  *Consumer Fin. Prot.

Bureau*, 320 F.R.D. at 363 ("Rule 60(a) cannot alter the substantive rights of the parties.").  The

Trustees' request to amend the Judgment to order "disgorgement of profits" should be denied.

## III.    The Court Did Not Confirm Any Prejudgment Interest on the August 4, 2021 NAV of the Plan's Investments.

The Court confirmed the arbitration award's order that White Oak disgorge, by

September 3, 2021, the NAV of the Plan's assets as of the date of the final arbitration award

---

[5] While the Court's Memorandum Opinion confirmed the arbitration award "to the extent" that it orders White Oak to disgorge "profits," neither the partial arbitration award nor the  final award identifies any such "profits" to be disgorged.  The relief that was awarded is identified in the final arbitration award, and does not include any disgorgement of "profits." Dkt. 59 at 10.  Indeed, the Trustees' petition to confirm did not even seek to confirm any award of "profits," which is not surprising because no such profits were awarded to the Plan.  Dkt. 14-1 at 7.

(August 4, 2021) – which White Oak did on September 3, 2021.  Dkt. 59 at 15-20.  The Trustees

now improperly seek to amend the Judgment to require White Oak to pay 9% prejudgment

interest on the August 4, 2021 NAV of the Plan's investments accruing three years earlier,

starting in September 2018.  Dkt. 62 at 7.  The Arbitrator expressly rejected that relief, and thus,

that relief was necessarily not confirmed by the Court.  Moreover, the Trustees' proposed

amendment to the Judgment plainly would affect White Oak's substantive rights and is therefore

not appropriate under Rule 60(a).

In the arbitration, the  Trustees sought an all-cash payment based on the value of the

Plan's investments in September 2018, plus 9% prejudgment interest.  Dkt. 31-18 at ¶¶ 7-11, 14.

The Arbitrator expressly rejected the Plan's request for an all-cash payment, and ordered an asset

distribution by September 3, 2021, based on the August 4, 2021 NAV of the Plan's investments,

which was the date of the final arbitration award.  Dkt. 31-1 at 11.  As the Court's Memorandum

Opinion recognizes, the final arbitration award found that White Oak had attempted to return the

Plan's investment in September 2018, but the Trustees would not instruct White Oak where to

send the Plan's investment.  Consequently, the Arbitrator concluded, and the Court

acknowledged in its Memorandum Opinion, White Oak should not be "penalized" for the

Trustees' refusal to provide such instructions – which left White Oak with no alternative but to

continue to manage the Plan's assets for the Trustees:

> White Oak unsuccessfully attempted in writing to return the Funds to the Plan
> after the 6-month holding period [which expired on September 18, 2018]. White
> Oak notified the Plan it would continue investing the money in the same manner
> and for the same charges as before and until such time that the Plan advises White
> Oak [or] its successor investment manager or when it is ready to receive the funds
> itself. White Oak should not be penalized for the Plan's lack of action in notifying
> [White Oak] that it had a new investment manager or some other means of
> handling its funds.

Dkt. 59 at 14; Dkt. 21-1 at 17.

Thus, because the final award ordered White Oak to disgorge – and the Trustees had no option but to accept – the Plan's investments by September 2021, there is no basis to award prejudgment interest going back three years to September 2018.  Indeed, requiring White Oak to pay prejudgment interest for three years prior to the date it was ordered to distribute the Plan's assets would constitute an impermissible penalty, in contravention of the Arbitrator's express finding that "White Oak should not be penalized for the Plan's lack of action [following September 2018] in notifying [White Oak] that it had a new investment manager or some other means of handling its funds."  Dkt. 59 at 14.

Further, "[t]he purpose of prejudgment interest is to fully compensate the plaintiff, by taking into account the time-value of money."  *Seaport Glob. Holdings LLC v. Petaquilla Mins. Ltd.*, 19 Civ. 9347 (ER), 2020 WL 3428151, at *2 (S.D.N.Y. June 23, 2020).  White Oak had no alternative but to continue to manage the Plan's investments after September 2018 because the Trustees never advised White Oak that they had "a new investment manager or some other means of handling its funds," and White Oak's management of Plan assets made substantial profits for the Plan after September 2018.  After September 2018, the Plan received over $6.2 million in profit distributions.  Dkt. 11-7 at 7.  Awarding the Plan prejudgment interest at 9% on top of the millions of dollars in profits the Plan received from remaining invested with White Oak after September 2018 would provide the Plan with an improper windfall.  *See Levy v. Young Adult Inst., Inc.*, 13-CV-2861 (JPO), 2017 WL 1929505, at *3 (S.D.N.Y. May 9, 2017) (holding that the aim of prejudgment interest under ERISA "is to make the plaintiffs whole, but not to give them a windfall").

In short, the Trustees' request that the Court amend the Judgment to award the Plan tens of millions of dollars in prejudgment interest on the value of its investment as of August 4, 2021

going back to September 2018 should be denied because such relief was not awarded in the

partial or final arbitration awards or confirmed by the Court.  Thus, the Trustees' request for

prejudgment interest does not seek to correct an error in the Judgment, and is not an appropriate

request under Rule 60(a).

## IV.     The Trustees' Request to Amend the Judgment to Include the Amount of the Day One Fee and Attorneys' Fees Should Be Denied.

The Trustees seek to amend the Judgment to identify the amounts of attorneys' fees and

Day One fee awarded.  However, the Trustees previously requested the Court to simply confirm

the arbitration award, *see* n.1 *supra*, which the Court did.  Because the Judgment entered by the

Clerk already accurately reflects the confirmation of the arbitration award, the Trustees' Rule

60(a) motion should be denied.  *Laurent v. PricewaterhouseCoopers LLP*, 06-CV-2280 (JPO),

2018 WL 1940431, at *1 (S.D.N.Y. Apr. 24, 2018) ("[T]o the extent that Plaintiffs rely on Rule

60(a), their failure to identify any clerical error in the Court's prior decisions is fatal to their

motion.").

Again, as stated, the Judgment should not be amended because the Judgment entered by

the Clerk already accurately reflects the Court's Memorandum Opinion confirming the

arbitration award.  However, to the extent that the Judgment is amended, it should be amended to

make clear that while White Oak is not entitled to retain the Day One fee, the Plan is also not

entitled to retain the Day One profits.  In confirming the arbitration award, the Court's

Memorandum Opinion states that the "Arbitrator determined that causing the Plan to pay [a Day

One fee] was a standalone ERISA violation."  Dkt. 59 at 23.  White Oak "caused" the Plan to

pay the Day One fee pursuant to the Day One provision in the Pinnacle Fund's LPA.  If a

contractual provision violates a statute (here, ERISA), that provision is void *ab initio* and the

status quo is restored before that provision took effect.  *Mobile, Ala.-Pensacola Fla. Bldg. &*

*Constr. Trades Council v. Daughtery*, 684 F. Supp. 270, 279 (S.D. Ala. 1988) ("If a provision

violates ERISA, then the provision is void."); *In re Venture Mortg. Fund, L.P.*, 282 F.3d 185,

187 (2nd Cir. 2002) ("It has not been contested . . . that a transaction that violates New York's

criminal usury statute is void *ab initio*"); *Dervan v. Gordian Grp. LLC*, 16-CV-1694 (AJN),

2017 WL 8194494, at *8 (S.D.N.Y. Feb. 28, 2017) ("It is well settled that a contract which

violates a prohibitory statute or which cannot be performed without violation of that statute is an

unlawful undertaking and is illegal, void, and unenforceable."); *Kriegel v. Donelli*, No. 11 Civ.

9160(ER), 2014 WL 2936000, at *15 (S.D.N.Y. June 30, 2014) (explaining that where a contract

is void from its inception, the parties are "restore[d] . . . to [the] status quo.").

      The Plan paid the Day One fee pursuant to the Day One provision in the Pinnacle Fund's

LPA.  Ex. A.  Although the Plan first invested in the Pinnacle Fund in January 2014 (Ex. B) –

nearly two years after the Pinnacle Fund first began raising investor money in April 2012 (Ex. C)

– the Plan was treated as if it had invested in the Pinnacle Fund on its first day of inception

("Day One") – both with respect to management fees and profits.  That meant that the Plan paid

a management fee to White Oak for managing the Pinnacle Fund's loan investments for the

period of time that the Pinnacle Fund had been operating before the Plan joined the Pinnacle

Fund, *and* it also meant that the Plan received the profits that those loan investments generated

during the period of time that the Pinnacle Fund had been operating before the Plan joined the

Pinnacle Fund.  Dkt. 31-14 at 8-9.

      It is undisputed that as a result of the Day One provision the Plan paid a Day One fee and

it also received a Day One *profit of over $2.6 million*.  Dkt. 12 at 30 n.12; Dkt. 31-9 at 5

(establishing that the Plan received a benefit from the Day One provision in the amount of

$2,633,067).  The Court confirmed the Arbitrator's finding that the Day One provision under

which White Oak collected the Day One fee and the Plan received a Day One profit violated

ERISA.  Thus, the Day One provision is void *ab initio*, and White Oak and the Plan must be

returned to the status quo as if the Day One provision never existed.  This means that "White

Oak may not retain any 'Day One' fees," as the Court's Memorandum Opinion states.  Dkt. 59 at

23.  But it also means that the Plan may not retain any Day One profits.

      If the Judgment is to be amended (which White Oak does not believe is appropriate), it

should be amended to take into account Day One profits for the additional reason that it would

give effect to offset principles.  Under long-settled offset principles, where a party has been

"both injured and enriched" by the actions of another, that party "cannot choose to recover for

his injuries yet retain his windfall."  *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 676 F. Supp.

486, 488 (S.D.N.Y. 1987) (collecting cases); *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co.

Americas*, 727 F. Supp. 2d 256, 287, 290-92 (S.D.N.Y. 2010) ("Bondholders are not entitled to

retain earnings derived as a result of Aristocrat's breach because such gains, when added to the

damages Bondholders are to receive as a result of Aristocrat's breach, would put Bondholders in

a better position than they would have been absent Aristocrat's breach.").  Courts have reasoned

that under offset principles, a plaintiff's damages should be offset by the plaintiff's benefits to

put the plaintiff in the same position it would have been in "but for" defendant's violation of the

law.  Under offset principles,

> an award of damages should put a plaintiff forward into the
> position it would have been 'but for' the defendant's violation of
> the law.  Under this theory, the ultimate relief awarded must take
> into account any benefits which would not have been received by
> plaintiff 'but for' the defendant's [misconduct] . . .

*Minpeco, S.A.*, 676 F. Supp. at 489.  *See also Henry v. Champlain Enters., Inc*., 445 F.3d 610,

624 (2d Cir. 2006) (explaining that the "aim of ERISA is to make the plaintiffs whole, but not to

give them a windfall" and remanding for a determination of whether the damages awarded

exceeded the plaintiff's actual economic loss after accounting for plaintiff's gains); *Walsh v. Vinoskey*, 19 F.4th 672, 683 (4th Cir. 2021) (offsetting damages awarded to an ERISA plaintiff against its gains from a debt write off to avoid giving the ERISA plaintiff a windfall).

Here, "but for" White Oak's violation of ERISA in including the Day One provision in the Pinnacle Fund's LPA, the Plan would not have paid the Day One fee, but it also would not have received the $2.6 million in Day One profits. Therefore, to avoid giving the Plan a windfall from a contractual provision that violated ERISA, if the Judgment is amended it should take into account the $2.6 million profit the Plan would not have received "but for" White Oak's inclusion of the Day One provision in the Pinnacle Fund's LPA. Thus, to the extent that the Judgment is amended, the Judgment should provide that White Oak's liability to the Plan is offset by the $2,633,067 Day One profits that the Plan received.

## V.   White Oak Disputes the Trustees' Calculation of Prejudgment Interest on the Day One Fee.

The Court confirmed the Arbitrator's award of 9% prejudgment interest on the Day One fee. Dkt. 59 at 27. However, neither the Arbitrator nor the Court determined the date on which prejudgment interest began to accrue. Where a "finding of fact" is required to determine the date from which prejudgment interest should run, a Rule 60(a) motion is an improper vehicle for setting that date. *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1141 (2d Cir. 1994) ("The absence of an award of pre-decision interest in the original Judgments was not a clerical error within the terms of Rule 60(a), because it could not be corrected without a finding of fact regarding the dates from which such interest should run."); *Boyce v. Soundview Tech. Grp., Inc.*, No. 03 Civ. 2159(HB), 2005 WL 627780, at *2 (S.D.N.Y. Mar. 17, 2005) ("[I]f a finding of fact is required in order to determine the dates from which the interest should run," this circumstance "preclude[s] a Rule 60(a) correction to include prejudgment interest."); *L.I. Head Start Child*

15

*Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 956 F. Supp. 2d 402, 415 (E.D.N.Y. 2013) (same).  Here, White Oak disputes the date the Trustees claim prejudgment interest should run, and therefore additional factual findings must be made to determine the appropriate date prejudgment interest began to accrue on the Day One fee.

The Trustees seek prejudgment interest on the Day One fee starting on December 31, 2013.  However, there is no support in the record that the Trustees actually paid the Day One fee on December 31, 2013.[6]  To the extent there is any evidence in the record on this point, that evidence suggests that the Plan paid the Day One fee sometime after receiving a capital call in February 2014.  Exs. D, E, F.  Because further fact-finding is required to establish the date on which the Day One fee was paid, the Trustees' Rule 60 motion to correct the Judgment to specify an amount of prejudgment interest owed on the Day One fee should be denied.

## CONCLUSION

For the reasons outlined in White Oak's motion to vacate the Judgment, the Trustees' motion to correct the Judgment should be denied because this Court lacks subject matter jurisdiction over this proceeding.  If the Court determines that it does have subject matter jurisdiction over this proceeding, the Trustees' motion to correct the Judgment should nevertheless be denied both because the Trustees have not presented a valid basis under Rule 60 to amend the Judgment and because the proposed amendments are inconsistent with the final arbitration award and the Court's Memorandum Opinion.

---

[6] The Trustees' two record cites do not support their assertion that the Plan paid the Day One fee on December 31, 2013.  In the first cite, Dkt. 30-2 at 6, the Trustees' expert witness improperly "assumed" during the arbitration that the fee was paid on December 31, 2013.  The document at Dkt. 21-11 at 2 shows that the Day One fee was allocated for accounting purposes to the fourth quarter of 2013, but that document does not establish that the fee was actually paid in that quarter – which it was not.

Dated: May 6, 2022               Respectfully Submitted,

By: /s/ Thomas K. Cauley, Jr.

SIDLEY AUSTIN LLP
James Heyworth
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

and

Thomas K. Cauley, Jr. (*pro hac vice*)
Steven E. Sexton (*pro hac vice*)
One South Dearborn St.
Chicago, IL 60603
(312) 853-7000

*Attorneys for Respondent White Oak Global Advisors, LLC*

17