UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE TRUSTEES OF THE NEW YORK
STATE NURSES ASSOCIATION PENSION
PLAN,

               Petitioners,

    v.

WHITE OAK GLOBAL ADVISORS, LLC,

               Respondent.

Civil Action No. 21–cv–08330

---

**MEMORANDUM OF LAW IN OPPOSITION TO
WHITE OAK GLOBAL ADVISORS, LLC'S MOTION TO VACATE THE MARCH 17,
2022 JUDGMENT FOR LACK OF SUBJECT MATTER JURISDICTION**

COVINGTON & BURLING LLP
C. William Phillips
Jonathan M. Sperling
Cléa P.M. Liquard
The New York Times Building
620 Eighth Avenue
New York, New York 10018
212-841-1000
cphillips@cov.com
jsperling@cov.com
cliquard@cov.com

Robert Newman
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
202-662-6000
rnewman@cov.com

*Attorneys for Petitioners Trustees of the New
York State Nurses Association Pension Plan*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ................................................................................................... 2

ARGUMENT ....................................................................................................... 3

I.   This Court Has Federal Question Jurisdiction Under the Supreme Court's
     Decision in *Badgerow*. ............................................................................ 3

II.  Because the Arbitration Agreement is Governed by Federal Law, this Action
     Arises Under Federal Law and this Court has Subject Matter Jurisdiction. ...................... 6

III. Subject Matter Jurisdiction Independently Exists Because White Oak's Petition to
     Vacate Necessarily Depends on the Resolution of Federal Law. ................................... 11

     A.   White Oak's Petition satisfies the *Greenberg* rule. ........................................ 14

     B.   Because the Court has jurisdiction over White Oak's Petition, the
          Judgment should not be vacated. .......................................................... 16

     C.   *Greenberg* is consistent with *Badgerow*. ................................................. 20

CONCLUSION ..................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila*,
    542 U.S. 200, 124 S. Ct. 2488 (2004) ........................................................................7

*Aramony v. United Way of Am.*,
    254 F.3d 403 (2d Cir. 2001) ........................................................................................7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    222 F.R.D. 79 (S.D.N.Y. 2004) ................................................................................20

*Badgerow v. Walters*,
    596 U.S. --, 142 S. Ct. 1310 (2022) .................................................................. *passim*

*Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. Madison Hotel, Inc.*,
    97 F.3d 1479 (D.C. Cir. 1996) ..................................................................................10

*Bd. of Trs. of Sheet Metal Workers Local Union No. 137 Ins. Annuity v. Vic
Constr. Corp.*,
    825 F. Supp. 463 (E.D.N.Y. 1993) ...........................................................................10

*Bird v. Shearson Lehman/Am. Express, Inc.*,
    926 F.2d 116 (2d Cir. 1991) ........................................................................................9

*Bogar v. Ameriprise Fin. Servs., Inc.*,
    No. 16-cv-7199, 2017 WL 1745566 (S.D.N.Y. May 4, 2017) ...........................17, 18

*Byrnes v. Faulkner, Dawkins & Sullivan*,
    362 F. Supp. 864 (S.D.N.Y. 1973) ...........................................................................19

*Cardinale v. 267 Sixth St. LLC*,
    No. 13 Civ. 4845, 2014 WL 4799691 (S.D.N.Y. Sept. 26, 2014) ............................14

*Chemung Canal Tr. Co. v. Sovran Bank/Md.*,
    939 F.2d 12 (2d Cir. 1991) ..........................................................................................7

*Cleveland v. Oracle Corp.*,
    No. 06-7826, 2007 WL 915414 (N.D. Cal. Mar. 23, 2007) .........................................9

*Corporacion Venezolana de Fomento v. Vintero Sales Corp.*,
    477 F. Supp. 615 (S.D.N.Y. 1979) ...........................................................................18

*Curley v. Brignoli, Curley & Roberts Assocs.*,
    915 F.2d 81 (2d Cir. 1990) ..........................................................................................3

*Doscher v. Sea Port Grp. Secs., LLC*,
  832 F.3d 372 (2d Cir. 2016) ..................................................................... 9, 20, 21

*Erbe v. Billeter*,
  No. 06-113, 2007 WL 2905890 (W.D. Pa. Sept. 28, 2007) ..................................................... 10

*First Cap. Real Est. Invs., LLC v. SDDCO Brokerage Advisors, LLC*,
  355 F. Supp. 3d 188, 196 (S.D.N.Y. 2019) ....................................................... 17, 18

*Greenberg v. Bear, Stearns & Co.*,
  220 F.3d 22 (2d Cir. 2000) ............................................................................... *passim*

*Hagan v. Katz Commc'ns, Inc.*,
  200 F. Supp. 3d 435, 443 (S.D.N.Y. 2016) ............................................................ 16

*Huffer v. Herman*,
  168 F. Supp. 2d 815 (S.D. Ohio 2001) ................................................................. 10

*Illinois v. City of Milwaukee*,
  406 U.S. 91, 92 S.Ct. 1385 (1972) ......................................................................... 6

*John Birch Soc'y v. Nat'l Broad. Co.*,
  377 F.2d 194 (2d Cir. 1967) ................................................................................. 11

*John Boettcher Sewer & Excavating Co. v. Midwest Operating Eng'rs Welfare Fund*,
  803 F. Supp. 1420 (N.D. Ind. 1992) ..................................................................... 10

*Kelly v. Deutsche Bank Secs. Corp.*,
  No. 09-cv-5378, 2010 WL 2292388 (E.D.N.Y. June 3, 2010) ................................. 10

*Krishna v. Colgate Palmolive Co.*,
  7 F.3d 11 (2d Cir. 1993) ........................................................................................ 6, 7

*Louisville & Nashville R.R. Co. v. Motley*,
  211 U.S. 149, 29 S. Ct. 42 (1908) ......................................................................... 16

*Lowen v. Tower Asset Mgmt., Inc.*,
  829 F.2d 1209 (2d Cir. 1987) .................................................................................. 8

*Markowski v. Atzmon*,
  No. 92-2865, 1994 WL 162407 (D.D.C. Apr. 19, 1994) ........................................ 17

*McLaughlin v. Miss. Power Co.*,
  376 F.3d 344 (5th Cir. 2004) ........................................................................... 16, 19

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*,
  578 U.S. 374, 136 S. Ct. 1562 (2016) ............................................................ 3, 5, 22

*Metro. Life Ins. Co. v. Bigelow,*
     283 F.3d 436 (2d Cir. 2002) ............................................................................7, 8

*Niagara Mohawk Power Corp. v. Tonawanda Bank of Seneca Indians,*
     94 F.3d 747 (2d Cir. 1996) ............................................................................16, 17

*Ninety-Five Madison Co. v. Vitra Int'l AG,*
     837 F. App'x 823 (2d Cir. 2020) ........................................................................11

*Olympia Hotels Corp. v. Johnson Wax Dev. Corp.,*
     908 F.2d 1363 (7th Cir. 1990) .......................................................................16, 19

*Sanluis Devs., LLC v. CCP Sanluis, LLC,*
     556 F. Supp. 2d 329 (S.D.N.Y. 2008) ............................................................17, 18

*Shell v. Amalgamated Cotton Garment,*
     871 F. Supp. 1173 (D. Minn. 1994) ...................................................................10

*Smith v. Bd. of Dirs. of Triad Mfg. Inc.,*
     13 F.4th 613 (7th Cir. 2021) ................................................................................9

*Tutor Perini Bldg. Corp. v. N.Y.C. Dist. Council of Complaint Carpenters Benefit
     Funds,*
     No. 18-CV-6899, 2019 WL 4805856 (S.D.N.Y. Sept. 30, 2019)............................6

**Statutes**

28 U.S.C. § 1331 ......................................................................................... *passim*

28 U.S.C. § 1367 ...................................................................................................18

28 U.S.C. § 1653 .............................................................................................11, 19

29 U.S.C. § 1144(a) ...............................................................................................7

29 U.S.C. § 1451(c) ...............................................................................................8

ADEA ..................................................................................................................16

ERISA ...................................................................................................... *passim*

ERISA Sections 3(38) and 3(21)(A) ......................................................................8

ERISA Section 406(b)(1)........................................................................................2

FAA.........................................................................................................4, 9, 17, 20

**Other Authorities**

6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and
    Procedure § 1414 (3d ed. 2022) ........................................................................17, 19

## PRELIMINARY STATEMENT

White Oak's motion to vacate this Court's March 17, 2022 Judgment is one more attempt to evade the consequences of the arbitrator's award finding that "White Oak breached its fiduciary duties" and "engaged in self-dealing" in violation of ERISA.

This Court has always had jurisdiction over this matter, and nothing in the recent decision by the U.S. Supreme Court in *Badgerow v. Walters*, 596 U.S. --, 142 S. Ct. 1310 (2022), alters that conclusion.  That decision held that subject matter jurisdiction over petitions to vacate and to confirm arbitration awards cannot be predicated on whether there is federal jurisdiction over the underlying dispute, but re-affirms longstanding principles that federal courts have jurisdiction under 28 U.S.C. § 1331 where the cause of action on the face of the pleading is governed by federal law, *or* where resolution of the dispute necessarily requires resolution of a federal question.

Here, both independent grounds for federal question jurisdiction are satisfied.  First, the Plan's Petition to Confirm the Arbitration Award presents a federal question on its face because the parties' contract for ERISA fiduciary services, which contains the arbitration agreement under which the Petition arises, is governed by the federal statutory and common law of ERISA.  Second, White Oak's cross-Petition to Vacate the Arbitration Award on grounds of "manifest disregard" of federal law necessarily requires resolution of a federal question, and thus likewise arises under federal law.  Under Second Circuit precedent, this Court may retain jurisdiction over White Oak's Petition irrespective of whether there is an independent basis of jurisdiction over the Plan's Petition and by doing so, the Court would adjudicate the same issues raised in the Plan's Petition.

Consequently, this Court has subject matter jurisdiction over this action and its March 17, 2022 Judgment should not be vacated.

# BACKGROUND

The Trustees of the New York State Nurses Association Pension Plan ("the Plan") filed a Petition to Confirm the Arbitration Award on October 6, 2021.  In the Petition and accompanying Memorandum of Law, the Plan identified a basis for subject matter jurisdiction under then-controlling Second Circuit precedent.  That precedent permitted a federal court to "look through" the Petition to Confirm to evaluate subject matter jurisdiction on the basis of the underlying substantive controversy.  *See* Dkt. 18 at 17 (citing *Landau v. Eisenberg*, 922 F.3d 495, 497-98 (2d Cir. 2019)).  Because the underlying action here arose under ERISA, a federal law, this Court had jurisdiction under 28 U.S.C. § 1331.  *Id.*

On October 20, 2021, White Oak filed a Petition to Vacate the Arbitration Award.  Dkts. 10, 12.  White Oak's Petition to Vacate opposed confirmation of the arbitration award on the purported grounds that the award "contains no findings of any ERISA violations," that the "Plan did not prevail on its ERISA claims," that the arbitrator violated "clear and settled ERISA law" when awarding attorneys' fees, the Plan did not show that "its requested attorneys' fees and costs were reasonable and recoverable under ERISA," and that the award of fees and prejudgment interest was "in manifest disregard of the law."  Dkt. 12 at 13-14, 32, 41.

On March 17, 2022, this Court issued a Memorandum Opinion denying White Oak's Petition in all respects, except "to the very limited extent" of modifying the award to substitute "management" for "performance" fees.  Dkt. 59 at 29.  As the necessary corollary of that ruling, the Court also granted in all respects, the Plan's Petition to Confirm, subject to the limited modification.  *Id.*  In its Opinion, the Court found that, "[i]n no uncertain terms, the award declares that White Oak breached its fiduciary duties under the IMA and ERISA, committed clear violations of ERISA Section 406(b)(1), and engaged in numerous prohibited transactions in

its fiduciary capacity."  Dkt. 59 at 28 (internal quotations and alterations omitted).  Judgment

was entered the same day.  Dkt. 60.

On March 31, 2022, the U.S. Supreme Court issued a decision in *Badgerow*, in which it

rejected the "look through" approach adopted by the Second Circuit for determining jurisdiction

over petitions to confirm or vacate awards brought under the Federal Arbitration Act.  142 S. Ct.

at 1318.  Following the *Badgerow* decision, White Oak filed the instant motion to vacate this

Court's March 17, 2022 Judgment.

## ARGUMENT

I.    **This Court Has Federal Question Jurisdiction Under the Supreme Court's Decision
      in *Badgerow*.**

Federal courts have subject matter jurisdiction over suits "arising under" federal law.  28

U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising

under the Constitution, laws, or treaties of the United States.").  Suits arise under federal law

when the pleading reveals that either:  (i) "federal law creates the cause of action" asserted or

(ii) the "ultimate disposition of the matter by the federal court necessarily depends on resolution

of a substantial question of federal law."  *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 25, 26

(2d Cir. 2000) (internal quotations omitted); *accord Merrill Lynch, Pierce, Fenner & Smith Inc.

v. Manning*, 578 U.S. 374, 383, 136 S. Ct. 1562, 1569-70 (2016) (Section 1331 "satisfied in

either of two circumstances": "when federal law creates the cause of action asserted," or when a

state law claim "necessarily raises a stated federal issue, actually disputed and substantial which

a federal forum may entertain without disturbing any congressionally approved balance of

federal and state power") (internal quotations and alterations omitted).  It is sufficient for the

pleading to present facts establishing subject matter jurisdiction, even if the legal theory for

jurisdiction is not articulated.  *See, e.g.*, *Curley v. Brignoli, Curley & Roberts Assocs.*, 915 F.2d

81, 84 (2d Cir. 1990) (courts "must liberally construe [a] complaint to determine whether the facts set forth justify taking jurisdiction on grounds other than those most artistically pleaded" and "may look to unpleaded bases of federal subject matter jurisdiction").

It has long been settled that the FAA's "authorization of a petition does not itself create jurisdiction," rather a "federal court must have ... an independent jurisdictional basis to resolve the matter." *Badgerow*, 142 S. Ct. at 1314 (internal quotations omitted); *accord Greenberg*, 220 F.3d at 25.  The question presented in *Badgerow* was:  Must the "independent basis" of jurisdiction be assessed on the face of the petition to confirm or vacate the award, or can jurisdiction be evaluated on the basis of the underlying dispute?  *Badgerow*, 142 S. Ct. at 1316. The Court answered that the appropriate test must evaluate the former, not the latter.

*Badgerow* involved a former employee who sought to vacate an arbitration award rendered in favor of her employer on grounds that "fraud had tainted the arbitration proceeding." *Id.* at 1314.  The employer cross-petitioned to confirm the award and removed the action to federal court contending that, because the underlying dispute involved alleged violations of federal law, the district court should "look through" the petitions and evaluate whether there is federal question jurisdiction based on the underlying action.  *Id.* at 1314-15.  The district court and Fifth Circuit agreed.  *Id.* at 1315.  In its March 31, 2022 decision, the Supreme Court reversed the lower courts, explaining that federal courts must look at the "application itself," and "follow the normal rules" to determine whether there is subject matter jurisdiction over the petitions.  *Id.* at 1322.

Applying the "normal rules," the Court evaluated whether there was federal question jurisdiction under 28 U.S.C. § 1331 on the facts presented in *Badgerow*.  The Court concluded that jurisdiction did not exist because the parties' "applications raise[d] no federal issue."  *Id.* at

1316.  The Court observed that, even though the underlying dispute arose in part under federal

law, "the underlying dispute is not now at issue"; rather, the parties' petitions "concern[ed] the

contractual rights provided in the arbitration agreement" contained in the employment contract,

which contracts are "generally governed by state law."  *Id.* at 1321.  As the Court put it:  An

arbitration "award is no more than a contractual resolution of the parties' dispute—a way of

settling legal claims."  *Id.* at 1316-17.  And, as the Court noted in dicta, "quarrels about legal

settlements—even settlements of federal claims—typically involve only state law, like

disagreements about other contracts."  *Id.* at 1317.

Thus, because the agreement at issue in *Badgerow* was presumably governed by state

law, and because neither parties' petition put at issue the federal law that was the basis of the

underlying dispute, the district court did not have federal question jurisdiction under Section

1331.  In other words, federal law neither "create[d] the cause of action" to enforce or challenge

the arbitration award, nor did disposition of the petitions "depend[] on resolution" of a question

of federal law.  *Greenberg*, 220 F.3d at 25; *Manning*, 578 U.S. at 383, 136 S. Ct. at 1569-70.

On the facts of this case, however, the requirements of Section 1331 are squarely met

under *Badgerow* and the longstanding law of this Circuit.  First, and atypically, the contract

under which the Petition arises and which contains the parties' arbitration agreement—the

investment management agreement ("IMA")—is governed by the federal statutory and common

law of ERISA.  Second, White Oak challenged the arbitration award on grounds that the

arbitrator manifestly disregarded federal law; as a result, disposition of White Oak's Petition

depended on resolution of issues of federal law, and this Court may therefore retain jurisdiction

over White Oak's Petition even if there were no independent basis for jurisdiction over the

Plan's Petition.  Each ground is a separate and independently sufficient basis for this Court's

subject matter jurisdiction under Section 1331 over this action.  Accordingly, this Court's March 17, 2022 Judgment should not be vacated.

## II.    Because the Arbitration Agreement is Governed by Federal Law, this Action Arises Under Federal Law and this Court has Subject Matter Jurisdiction.

Under the reasoning articulated by the Supreme Court in *Badgerow*, jurisdiction exists under Section 1331 over petitions to confirm or vacate arbitration awards where the parties' arbitration agreement is governed by federal law.  *Badgerow*, 142 S. Ct. at 1316.  As the Supreme Court explained, arbitration awards are a contractual settlement of the parties' dispute, akin to other settlement agreements; actions to confirm or vacate arbitration awards, therefore, involve disputes over the "legal settlement" agreement itself.  *Id.* at 1317.  While many such agreements may be governed by state law, and thus disputes over the settlement would not give rise to a federal question, *Badgerow*'s reasoning makes clear that if the agreement is governed by federal law, the dispute presents a federal question on its face.  *Id.*

Applying that reasoning here, the Plan's Petition squarely invokes federal question jurisdiction under Section 1331 because the parties' IMA, including its arbitration clause, is governed by the federal statutory and common law of ERISA.  Under *Badgerow*, this Court therefore has jurisdiction over disputes with respect to the arbitration agreement, including the Plan's Petition to Confirm the Arbitration Award.

It is firmly settled that matters relating to ERISA employee benefit plans are governed by federal statutory law, and that where no statutory provision governs, courts are to apply federal common law.[1]  *See Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 13 (2d Cir. 1993)  ("The

---

[1] There is no question that "§ 1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin."  *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391 (1972).  *See also Tutor Perini Bldg. Corp. v. N.Y.C. Dist. Council of Complaint Carpenters Benefit Funds*, No. 18-CV-6899, 2019 WL 4805856, at *2 (S.D.N.Y.

comprehensive provisions of ERISA regulate 'employee benefit plan[s]'"); *Aramony v. United Way of Am.*, 254 F.3d 403, 411 (2d Cir. 2001) ("Interpretation of the terms of an ERISA pension plan is governed by the federal common law of rights and obligations under ERISA-regulated plans.") (internal quotations omitted); *Chemung Canal Tr. Co. v. Sovran Bank/Md.*, 939 F.2d 12, 16 (2d Cir. 1991) ("The Supreme Court has left no doubt that courts are to develop a federal common law of rights and obligations under ERISA-regulated plans.... We thus hold that the federal courts have been authorized to develop a federal common law under ERISA....") (internal quotations omitted).

The expansive reach of federal common law over ERISA-related matters "follows" from ERISA's broad express preemption provision, *Krishna*, 7 F.3d at 13-14, which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan," 29 U.S.C. § 1144(a) (emphasis added). A state law "relates to an ERISA plan" if it simply "has a connection with or reference to such a plan,'" a determination that is made by looking "to 'the objectives' of ERISA and 'to the nature of the effect of the state law on ERISA plans.'" *Metro. Life Ins. Co. v. Bigelow*, 283 F.3d 436, 440 (2d Cir. 2002) (quoting *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147, 121 S. Ct. 1322, 1327 (2001)). These "expansive pre-emption provisions ... are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209, 124 S. Ct. 2488, 2495 (2004) (internal citations and quotations omitted).

---

Sept. 30, 2019) ("It is beyond dispute that if federal common law governs a case, that case presents a federal question within the subject matter jurisdiction of the federal courts, just as if the case were governed by a federal statute.") (quoting *Woodward Governor Co. v. Curtiss-Wright Flight Sys., Inc.*, 164 F.3d 123, 126 (2d Cir. 1999)).

Under this controlling precedent, the parties' IMA, including the arbitration clause, is plainly governed by the federal statutory and common law of ERISA.  As the Plan's Petition states on its face, the fiduciary duties and obligations contracted for under the IMA were expressly undertaken pursuant to ERISA.  Dkt. 14-1 ¶ 9 (under the IMA "White Oak expressly warranted and agreed that it would serve as a fiduciary and investment manager under ERISA with respect to the Plan assets that were allocated to White Oak for investment").  The Plan's Memorandum of Law explained that, "under the IMA," "White Oak 'expressly acknowledge[d], represente[d], warrante[d], and agree[d]' that it 'is an "investment manager" and "fiduciary" with respect to the Plan's assets, as those terms are defined in Sections 3(38) and 3(21)(A) of ERISA respectively," and that "White Oak agreed 'to manage the Investment Account Assets in accordance with and subject to ... compliance with ERISA and other applicable law.'"  Dkt. 18 at 6-7 (quoting Dkt. 30.1 (IMA)).  These fiduciary obligations formed the "crucible of congressional concern" when ERISA was drafted.  *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987) (internal quotations omitted).  Indeed, this Court observed in connection with the parties' IMA that the "principal function" of ERISA is "protecting contractually defined benefits."  Dkt. 59 at 18 n.64 (quoting *U.S. Airways v. McCutchen*, 569 U.S. 88, 98-101, 133 S. Ct. 1537, 1546-48 (2013)).

Likewise, the arbitration clause in the parties' IMA, though not governed by an express ERISA statutory provision, is governed by federal common law because it forms part of the same fiduciary and contractual obligations undertaken to the Plan and "has a connection with or reference" to the Plan.  *Bigelow*, 283 F.3d at 440  (internal quotations omitted).  That conclusion is consistent with and supported by the objectives of ERISA, including Congress' express intent that virtually all claims under ERISA be adjudicated *exclusively* in federal courts.  *See* 29 U.S.C.

§ 1451(c) ("The district courts of the United States shall have exclusive jurisdiction of an action under this section without regard to the amount in controversy, except that State courts of competent jurisdiction shall have concurrent jurisdiction over an action brought by a plan fiduciary to collect withdrawal liability.").  Indeed, in a decision pre-dating the Second Circuit's adoption of the "look through" approach,[2] the Second Circuit concluded that ERISA claims are arbitrable in part on the basis that "an arbitration determination is subject to review by the federal courts through a motion to enforce or to vacate the award."  *Bird v. Shearson Lehman/Am. Express, Inc.*, 926 F.2d 116, 122 (2d Cir. 1991).  A ruling that would prevent an ERISA benefit plan from enforcing its contractual rights in federal court would therefore run counter to the intent of Congress and Second Circuit reasoning.

Applying these principles, courts have held that federal common law governs arbitration agreements involving an ERISA-governed benefit plan.  *See Smith v. Bd. of Dirs. of Triad Mfg. Inc.*, 13 F.4th 613, 618 (7th Cir. 2021) (interpretation and enforceability of arbitration clause in ERISA plan "controlled by federal common law"); *Cleveland v. Oracle Corp.*, No. 06-7826, 2007 WL 915414, at *2, *8 n.6 (N.D. Cal. Mar. 23, 2007) (applying federal common law to assess enforcement of arbitration clause).

Similarly, courts have widely held that non-arbitration settlement agreements relating to ERISA plans are also governed by federal common law.  These cases are particularly relevant because, as the Supreme Court instructed in its recent decision, arbitration agreements are another form of settlement agreement, and the Supreme Court expressly drew parallels between disputes relating to arbitration awards and "quarrels about legal settlements" outside the

---

[2] *See Doscher v. Sea Port Grp. Secs., LLC*, 832 F.3d 372 (2d Cir. 2016) (adopting "look through" approach for petitions to vacate an arbitration award under the FAA).

arbitration context. *Badgerow*, 142 S. Ct. at 1317. For that reason, the Court of Appeals for the District of Columbia's decision in *Madison Hotel* is particularly instructive, in which it held that "the long line of cases addressing preemption in the ERISA context makes clear that there generally is federal jurisdiction over litigation of agreements settling ERISA claims." *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. Madison Hotel, Inc.*, 97 F.3d 1479, 1484 (D.C. Cir. 1996). Moreover, numerous other courts have concluded that federal common law governs controversies over ERISA-related settlements. *See Kelly v. Deutsche Bank Secs. Corp.*, No. 09-cv-5378, 2010 WL 2292388, at *1 (E.D.N.Y. June 3, 2010) ("the great weight of authority holds that ERISA preempts common law claims to enforce a settlement agreement relating to an ERISA-covered benefit plan"); *Huffer v. Herman*, 168 F. Supp. 2d 815, 823 (S.D. Ohio 2001) ("the Court notes that because this case arises under federal law, federal common law principles, rather than Ohio law, will determine whether a valid settlement agreement [of ERISA claims] exists"); *Bd. of Trs. of Sheet Metal Workers Local Union No. 137 Ins. Annuity v. Vic Constr. Corp.*, 825 F. Supp. 463, 466 (E.D.N.Y. 1993) ("this court concludes that federal common law should govern the validity of settlement agreements resolving ERISA disputes"); *John Boettcher Sewer & Excavating Co. v. Midwest Operating Eng'rs Welfare Fund*, 803 F. Supp. 1420, 1425 (N.D. Ind. 1992) ("Because no specific ERISA provision governs whether the Funds could properly revoke the settlement agreement, the court must look to federal common law principles to decide the instant matter.").[3]

---

[3] *See also Shell v. Amalgamated Cotton Garment*, 871 F. Supp. 1173, 1180 (D. Minn. 1994) (examining validity of settlement involving ERISA fund under federal common law); *Erbe v. Billeter*, No. 06-113, 2007 WL 2905890, at *9 (W.D. Pa. Sept. 28, 2007) ("In addition, federal common law contract principles have been employed to enforce oral and written settlement agreements that have been negotiated in litigation pending in the federal courts, including cases involving settlement of claims brought under ERISA.").

Accordingly, the Plan's Petition to Confirm the Arbitration Award "concerns [ ]
contractual rights" that are governed by federal law. *Badgerow*, 142 S. Ct. at 1321.  Under the
reasoning of *Badgerow*, the Plan's Petition therefore arises under federal law within the meaning
of Section 1331.

*     *     *

The Plan's Petition quotes from and attaches the governing IMA and examines the
governing ERISA provisions, which were explained in greater detail in the Plan's accompanying
Memorandum of Law, *see* Dkt. 14-1 at 2-3; Dkt. 18 at 6-8.  The Plan's Petition therefore
identifies facts sufficient to support jurisdiction under *Badgerow* as explained above.  To the
extent, however, that the Court believes the face of the Petition does not adequately establish
facts showing that federal law governs the IMA, forming the basis of subject matter jurisdiction,
the Plan respectfully moves under 28 U.S.C. § 1653 to deem its Petition amended or for leave to
file an amended Petition.  *See Ninety-Five Madison Co. v. Vitra Int'l AG*, 837 F. App'x 823, 825
(2d Cir. 2020) ("[T]his statute ... provide[s] the basis for us to deem pleadings amended on
appeal or grant leave to amend on appeal and remand for proceedings on the merits in the district
court."); *John Birch Soc'y v. Nat'l Broad. Co.*, 377 F.2d 194, 198-99 (2d Cir. 1967) ("An
application under § 1653 is ... addressed to the discretion of the court, and usually the section is
to be construed liberally to permit the action to be maintained if it is at all possible to determine
from the record that jurisdiction does in fact exist.").

**III.    Subject Matter Jurisdiction Independently Exists Because White Oak's Petition to
Vacate Necessarily Depends on the Resolution of Federal Law.**

Under Second Circuit law, White Oak's Petition raised a federal question on its face by
contending that the arbitration award should be vacated on grounds that the arbitrator
purportedly "manifestly disregarded" the federal law of ERISA.  Therefore, this Court has an

-11-

independent basis of jurisdiction over White Oak's Petition and, under Second Circuit precedent, may retain jurisdiction over White Oak's Petition regardless of whether there is an independent basis of jurisdiction over the Plan's Petition.  Moreover, because petitions to vacate and petitions to confirm awards raise parallel issues, a determination of one necessarily determines the other. Accordingly, for these separate reasons, the Court's Judgment should not be vacated.

The Second Circuit held more than twenty years ago in *Greenberg* that, "[w]here the petitioner seeks vacatur chiefly on the ground of manifest disregard of federal law, a federal question is plainly presented." *Greenberg*, 220 F.3d at 28.  As the Second Circuit explained, a federal question is raised in those circumstances because "review for manifest disregard of federal law *necessarily* requires the reviewing court to do two things:  first, determine what the federal law is, and second, determine whether the arbitrator's decision manifestly disregarded that law."  *Id.* at 27 (emphasis added).  This process, which is inherent in evaluating any claim of manifest disregard of federal law, "so immerses the federal court in questions of federal law and their proper application that federal question subject matter jurisdiction is present."  *Id.*

Applying that rule here, a "federal question is plainly presented" in this case because the face of White Oak's Petition seeks to vacate the arbitration award on the grounds that the arbitrator supposedly manifestly disregarded ERISA.  *Id.* at 28.  As this Court is aware, White Oak sought to vacate the award rendered in favor of the Plan, arguing that:

- The arbitrator "did not find in the [Final Award] that White Oak breached its fiduciary duties or committed any ERISA violations," Dkt. 59 at 13 (quoting Dkt. 12 at 19);

- Even if the arbitrator did find that White Oak violated ERISA, the violations were "trivial" or merely "procedural," and did not represent "success on the merits" under ERISA, *see* Dkt. 12 at 13 (contending that Plan only achieved "'trivial' victories" of "technical ERISA violations" that are "not sufficient to constitute 'some success on the merits' under ERISA"); *id*. at 33, 34;

-12-

- The arbitrator "accepted White Oak's argument" that management fees cannot be disgorged under ERISA, *id.* at 23 & n.9 (citing ERISA case law); *id.* at 30;

- The arbitrator "did not award any relief to the Plan under ERISA"; instead, the arbitrator ordered contractual relief under the parties' IMA in the form of an in-kind distribution, *id.* at 12, 35; *see also* Dkt. 39 at 9-10;

- The arbitrator "manifestly disregarded" federal law by awarding the Plan attorneys' fees, because (i) "[a]s a matter of clear and settled ERISA law, attorneys' fees and costs are only recoverable if the plaintiff has 'some success' on the merits," and the "Plan did not prevail on its ERISA claims," and (ii) "the Plan failed to establish that its requested attorneys' fees and costs were reasonable and recoverable under ERISA," Dkt. 12 at 13-14; *see also id.* at 15 (contending that award included expert fees that are "not recoverable under ERISA as a matter of law"); *id.* at 38-39 (same) (citing ERISA case law);

- The arbitrator's award of prejudgment interest was "in manifest disregard of the law" because the Plan did not prevail on its ERISA claims, *id.* at 39-41.

To support these arguments, White Oak's Petition rehashed across dozens of pages the arguments it made in the underlying arbitration, citing to ERISA case law, and attaching excerpts of testimony from and exhibits presented at the underlying arbitration hearings.  Dkt. 12 at 11, 16-19, 21, 23-24, 40; Dkts. 11-8 through 11-19.  *See also* Dkt. 35 at 26 (Plan's brief explaining that White Oak's Petition "rehash[es] its old arguments that were not credited by the arbitrator"); *id.* at 27 n.6; *id.* at 8.

As a result of the issues raised in White Oak's Petition, this Court was compelled to consider and address aspects of federal ERISA law as reflected in the Court's Memorandum Opinion.  *See* Mem. Op. at 18-20; *id.* at 24-26 (refusing to vacate award of attorneys' fees, concluding that requirements "under ERISA" were met, citing ERISA case law); *id.* at 27 (refusing to vacate award of "prejudgment interest under ERISA," citing ERISA case law); *id.* at 22 (modifying the award to permit White Oak to retain certain management fees, and citing ERISA case law in support).

Accordingly, because White Oak "complain[ed] principally" that the arbitrator's "award was rendered in manifest disregard of federal law, a substantial federal question is presented and the federal courts have jurisdiction to entertain the petition." *Greenberg*, 220 F.3d at 27. None of White Oak's arguments alter this conclusion.

### A.       White Oak's Petition satisfies the *Greenberg* rule.

White Oak implausibly contends that its Petition to Vacate does not fall within the scope of *Greenberg* because that case articulated "an exacting standard" that White Oak's Petition does not meet and its Petition had "nothing to do with ERISA law." Dkt. 64 at 15, 16. These arguments are demonstrably false.

Under *Greenberg*, the only relevant inquiry is whether White Oak "complain[ed] principally and in good faith that the award was rendered in manifest disregard of federal law." *Greenberg*, 220 F.3d at 27. "[W]here" these criteria are met, "*a substantial* federal question is presented." *Id.* (emphasis added). Seeking to vacate an arbitration award principally on grounds that the arbitrator manifestly disregarded federal law itself establishes that the federal law at issue is substantial: "Where the arbitrators' alleged manifest disregard of federal law forms a key part of the petitioner's complaint about the award, *the federal questions thereby presented are substantial* enough to support federal jurisdiction." *Id.* at 27 (emphasis added). *See also id.* at 28 ("Where the petitioner seeks vacatur chiefly on the ground of manifest disregard of federal law, *a federal question is plainly presented*.") (emphasis added). *See also, e.g.*, *Cardinale v. 267 Sixth St. LLC*, No. 13 Civ. 4845, 2014 WL 4799691, at *4 (S.D.N.Y. Sept. 26, 2014) ("The Court has subject matter jurisdiction because the main thrust of Petitioner's argument for vacatur is that the Arbitrator manifestly disregarded certain Treasury Regulations and the Internal Revenue Code.").

Moreover, even assuming for the sake of argument that a separate assessment is necessary to determine whether the federal law is "substantial," that standard is easily met here. It cannot be credibly disputed that White Oak's Petition complained principally that (a) the award was rendered in manifest disregard of ERISA, (b) the arbitrator's findings that White Oak "engaged in 'numerous' prohibited ERISA transactions" should be overturned, and (c) the remedies awarded to the Plan were not consistent with ERISA. Dkt. 59 at 6 (quoting Dkt. 11-2 at 18). White Oak argues for the first time in its motion to vacate the Judgment that its Petition did not require this Court "to interpret or rule on any question[] of federal law." Dkt. 64 at 16. But this is facially inconsistent with its Petition, which on its face presented numerous questions of federal law for this Court to resolve, including (i) the standard for awarding attorneys' fees under ERISA, (ii) what constitutes "some success on the merits" of an ERISA claim under ERISA case law, (iii) whether the Plan succeeded on the merits of its ERISA claims in the arbitration, (iv) whether an in-kind distribution is consistent with White Oak's obligations under ERISA, (v) whether management fees are properly disgorged under ERISA, (vi) the standard for awarding prejudgment interest under ERISA and (vii) whether the arbitrator awarded interest consistent with that law. Indeed, White Oak's Petition invokes the phrase "manifest disregard" of federal law no less than 11 times, and refers to "ERISA" no fewer than 64 times in its Petition, an average of two references per page.

It is not surprising, then, that in rendering its decision on the Petitions, the Court's Memorandum Opinion makes numerous references to ERISA and analyzes and applies ERISA case law, *see, e.g.*, Dkt. 59 at 18, 20, 24, proving definitively that White Oak's Petition required

the Court to "first, determine what the federal law is, and second, determine whether the arbitrator's decision manifestly disregarded that law," *Greenberg*, 220 F.3d at 27.[4]

**B.      Because the Court has jurisdiction over White Oak's Petition, the Judgment should not be vacated.**

White Oak argues that because this Court's jurisdiction over White Oak's Petition to Vacate does not, on its own, establish that the Plan's original Petition arises under federal law, the Judgment must be vacated.  The law is to the contrary.

It has of course long been the rule that whether an original complaint "arises under" federal law depends on whether the complaint itself pleads a federal question on its face, not on whether a defense or counterclaim raises a federal question.  *See Louisville & Nashville R.R. Co. v. Motley*, 211 U.S. 149, 152, 29 S. Ct. 42, 42 (1908).  But it is equally well settled that, even "[w]here a court dismisses an action for lack of federal subject matter jurisdiction, it may nonetheless adjudicate a counterclaim presenting an independent basis for federal jurisdiction." *Niagara Mohawk Power Corp. v. Tonawanda Bank of Seneca Indians*, 94 F.3d 747, 753 (2d Cir. 1996); *accord McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 355 (5th Cir. 2004) ("If an independent jurisdictional ground exists for a counterclaim, the district court can retain jurisdiction over the counterclaim even if the original claims are dismissed for lack of subject-matter jurisdiction."); *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1365

---

[4] White Oak's passing argument that its Petition does not present a federal question because it did not "move to vacate the arbitrator's findings on any substantive ERISA claim," is both inaccurate and immaterial.  Dkt. 63 at 15.  The basis of White Oak's request to vacate was a wholesale attack on the arbitrator's liability findings against White Oak, including (unsupported) arguments that the arbitrator found only "trivial" and "technical" violations ERISA.  In any event, courts have applied *Greenberg* even where a petitioner challenges an arbitrator's application of procedural federal law.  *See Hagan v. Katz Commc'ns, Inc.*, 200 F. Supp. 3d 435, 443 (S.D.N.Y. 2016) (federal question presented under *Greenberg* rule where petitioner contended that arbitrator manifestly disregarded statute of limitations under Title VII and ADEA and rejecting argument that issue was "too insignificant").

(7th Cir. 1990); *see also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal

Practice and Procedure § 1414 (3d ed. 2022) ("If the counterclaim does present an independent

basis of federal jurisdiction, however, the court may adjudicate it as if it were an original claim

despite the dismissal of plaintiff's claim.") (collecting cases).  Accordingly, under settled Second

Circuit law, because there is an "independent basis for federal jurisdiction" over White Oak's

Petition under *Greenberg*, this Court may retain jurisdiction over and adjudicate White Oak's

Petition.  *Niagara Mohawk Power Corp*, 94 F.3d at 753.

The result in this case is that the Court's Judgment must stand.  As numerous courts have

recognized, a petition to vacate an arbitration award and a petition to confirm "submit identical

issues for judicial determination."  *Sanluis Devs., LLC v. CCP Sanluis, LLC*, 556 F. Supp. 2d

329, 333 (S.D.N.Y. 2008); *see also Markowski v. Atzmon*, No. 92-2865, 1994 WL 162407, at *1

(D.D.C. Apr. 19, 1994) ("A motion for confirmation involves the same substantive consideration

as a motion to vacate.  Indeed, a confirmation can only be denied if an award has been corrected,

vacated, or modified in accordance with the Federal Arbitration Act.").  Because of "the parallel

natures of a motion to vacate and a motion to confirm an arbitration award, denying the former

implies granting the latter."  *Bogar v. Ameriprise Fin. Servs., Inc.*, No. 16-cv-7199, 2017 WL

1745566, at *4 (S.D.N.Y. May 4, 2017); *accord First Cap. Real Est. Invs., LLC v. SDDCO

Brokerage Advisors, LLC*, 355 F. Supp. 3d 188, 196 (S.D.N.Y. 2019).  Courts therefore "treat a

party's opposition to a motion to vacate as a request to confirm the award."  *First Cap. Real Est.*,

355 F. Supp. 3d at 196 (quoting *Sanluis Devs.*, 556 F. Supp. 2d at 333).[5]  And "when a court

---

[5] Indeed, in this action, the Court ordered oral argument on White Oak's Petition to Vacate the
award, *not* on the Plan's Petition to Confirm, and the Court's order is identified on the docket as
related to White Oak's Petition.  Dkt. 49 ("Oral argument regarding the pending motion to vacate
the arbitration award (DI 10) is scheduled...").

denies a motion to vacate an arbitration award, the court's judgment has the effect of collateral estoppel; the parties cannot relitigate the validity of the award." *Sanluis Devs.*, 556 F. Supp. 2d at 333.

Thus—even *if* this Court dismisses the Plan's Petition for lack of subject matter jurisdiction (which it should not for the reasons discussed in Section II above and for the separate reasons discussed below)—the Court can still proceed to adjudicate White Oak's Petition to Vacate, and by doing so would determine the very same set of issues raised in both parties' Petitions.  In that scenario, the Plan's opposition to White Oak's Petition to Vacate, *see* Dkt. 32, would be "treat[ed]" "as a request to confirm the award," and by denying White Oak's Petition to Vacate, the Court would thereby be confirming the award.  *First Cap. Real Est.*, 355 F. Supp. 3d at 196; *Bogar*, 2017 WL 1745566 at *4 ("because the Court is denying Mr. Bogar's motion to vacate the arbitration award, Ameriprise's motion to confirm the award is granted").  Of course, that is precisely what the Court's Judgment already accomplishes.  *See* Dkt. 60 (denying White Oak's motion "in all ... respects," except "to the very limited extent" the award was modified, and in parallel, "grant[ing] in all respects" the Plan's Petition to confirm, subject to the same limited modification).  Accordingly, there is no basis to vacate this Court's Judgment.

Although the outcome would be the same regardless of whether the Court dismissed the Plan's Petition for lack of subject matter jurisdiction, *it need not do so*.  Where an independent basis for jurisdiction over a counterclaim exists, the court may deem the original claims be treated as counterclaims (or permit the original plaintiff to refile its pleading as counterclaims), over which the court exercises supplemental jurisdiction under 28 U.S.C. § 1367.  *See, e.g.*, *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 477 F. Supp. 615, 621 (S.D.N.Y. 1979) (in matter that had been litigated to conclusion, deeming counterclaims to be amended

under 28 U.S.C. § 1653 to assert federal question jurisdiction and treating plaintiff's claims as compulsory counterclaims over which the court exercised jurisdiction), *aff'd in relevant part, rev'd in part*, 629 F.2d 786 (2d Cir. 1980).  Numerous Circuit and district courts have concluded the same.  *See, e.g.*, *McLaughlin*, 376 F.3d at 355 ("[I]f the district court retains jurisdiction over the counterclaim, it may permit the dismissed claims to be asserted as counterclaims to the retained claim."); *Olympia Hotels Corp.*, 908 F.2d at 1365 ("The RICO claims were not frivolous, and therefore they gave the district court federal-question jurisdiction over the counterclaims, and (because these were compulsory counterclaims) ancillary jurisdiction, equivalent to pendent jurisdiction, over the complaint."); *cf. Byrnes v. Faulkner, Dawkins & Sullivan*, 362 F. Supp. 864, 869 (S.D.N.Y. 1973) ("I will, accordingly, dismiss the complaint for lack of federal subject matter jurisdiction and sustain the counterclaim as properly within the subject matter jurisdiction of the Court.  The plaintiff is given leave to answer the counterclaim and to file its own counterclaim.").  *See also* Wright & Miller, Fed. Prac. & Proc. § 1414 ("court may adjudicate [counterclaim] as if it were an original claim despite the dismissal of plaintiff's claim" for lack of subject matter jurisdiction, and "the original plaintiff might then reassert the dismissed claim as a compulsory counterclaim since it then in effect will be a counterclaim and be under the court's supplemental jurisdiction") (collecting cases).

Finally, it bears emphasis that this case presents compelling circumstances for the Court to retain jurisdiction over White Oak's Petition to Vacate.  The parties and this Court have already litigated the cross-petitions to judgment, the parties' petitions present "identical" issues for the Court's resolution, and the disputes regarding the underlying ERISA law are a matter of exclusive federal court jurisdiction.  Were the Judgment vacated, the parties would be required to litigate these issues anew from scratch—and White Oak would be able to continue denying that

it had been found to have breached its duties and to continue to retain control over the Plan's assets, flouting the arbitrator's award. *Cf. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 222 F.R.D. 79, 81 (S.D.N.Y. 2004) (this Court observing that party had "little claim on the favorable exercise of [the Court's] discretion in view of its prior misconduct in this and related actions"). Given these exceptional circumstances, the Court should exercise its authority to retain jurisdiction over White Oak's Petition to Vacate so that the Judgment it has already rendered may stand.

C.   ***Greenberg* is consistent with *Badgerow*.**

In a footnote, White Oak offers more unfounded speculation that "*Badgerow* calls into doubt whether manifest disregard of federal law" remains a basis for invoking federal question jurisdiction under cases like *Greenberg*. Mot. at 15 n.2. Second Circuit law is binding, however, unless an intervening Supreme Court decision breaks the link on which the Second Circuit premised its prior decision or "undermines [an] assumption" of that decision. *Doscher v. Sea Port Grp. Secs., LLC*, 832 F.3d 372, 378 (2d Cir. 2016). Nothing in the Supreme Court's recent decision "undermines" the reasoning of *Greenberg*; on the contrary, *Greenberg* and *Badgerow* are entirely consistent and both support the Court's exercise of jurisdiction over this action.

First, while White Oak points out that *Badgerow* held that federal question jurisdiction exists only if the petition presents a federal question "beyond Section 9 or 10" of the FAA, that is precisely the rule applied in *Greenberg*. Just as in *Badgerow*, the Second Circuit reiterated the longstanding rule that "federal question jurisdiction does not arise simply because a petitioner brings a claim under § 10 of the FAA." *Greenberg*, 220 F.3d at 25. The *Greenberg* court went

-20-

on to explain that an independent basis for jurisdiction *does* "lie where the petitioner seeks to vacate the award primarily on the ground of manifest disregard of the federal law." *Id.*[6]

Second, White Oak frets that "litigants could assert manifest disregard of federal law as an end-run around" the rule against the "look through" approach, Dkt. 64 at 15 n.2, but of course *Greenberg* announced the manifest disregard basis of federal jurisdiction at the same time that it rejected the "look through" approach. *Greenberg*, 220 F.3d at 26-27. *Badgerow* therefore plainly has not "undermine[d] [an] assumption" upon which *Greenberg* was decided. *Doscher*, 832 F.3d at 378. Nor can Second Circuit law be ignored on the basis of speculative policy arguments. In any event, the requirement that the petitioner complain "principally and in good faith" of manifest disregard of federal law is well suited to weeding out frivolous challenges to arbitration awards. *Greenberg*, 220 F.3d at 27.

Third, White Oak hypothesizes that the Second Circuit's manifest disregard rule for federal jurisdiction would result in more challenges to arbitration awards being heard in federal court, but even assuming that were to come true, there is nothing inconsistent with that outcome and the principles reiterated in *Badgerow*. On the contrary, the *Greenberg* rule applies long-established rules of federal question jurisdiction under Supreme Court precedent. Under those well-settled rules, where a party's pleading necessarily depends on resolution of a question of

---

[6] *Greenberg* also rejected the "look through" approach for evaluating jurisdiction over petitions to vacate an arbitration award. *See Greenberg*, 220 F.3d at 26. Sixteen years after *Greenberg* was decided, the Second Circuit overruled this holding in *Greenberg*, concluding that the Supreme Court's decision in *Vaden* was an intervening decision that undermined the premise of *Greenberg*'s rejection of the "look through" approach. *Doscher*, 832 F.3d at 378-388. As White Oak recognizes, *Doscher* did not overrule the second holding of *Greenberg*—that federal jurisdiction exists where a petition challenges an arbitration award for manifest disregard of federal law. Indeed, the Second Circuit undertook the "manifest disregard" jurisdictional analysis in *Doscher* but concluded that the petition at issue there did not present a claim of manifest disregard of *federal* law and thus federal question jurisdiction did not exist. *Id.* at 377. In any event, *Doscher* was abrogated by *Badgerow*.

federal law, jurisdiction exists under Section 1331. *Greenberg*, 220 F.3d at 26; *see also*

*Manning*, 578 U.S. at 383, 136 S. Ct. at 1569-70.  The Supreme Court's *Badgerow* decision

reiterated those principles, explaining that where a petition to confirm or vacate an award

"alleges that federal law ... entitles the applicant to relief, then § 1331 gives the court federal-

question jurisdiction."  *Badgerow*, 142 S. Ct. at 1316.  Moreover, White Oak's unsubstantiated

"floodgates" concerns do not provide a basis for disregarding controlling Second Circuit

precedent.

*     *     *

More generally, the Supreme Court's reasoning in *Badgerow* is consonant with the

position advocated by the Plan here.  In *Badgerow*, the Supreme Court looked at *both* parties'

petitions and concluded that "their applications raise[d] no federal issue."  *Id.*  That was

necessarily the case there because the parties' contract and arbitration clause was governed by

state law, and the party seeking to vacate the award challenged it only on grounds of procedural

fraud—not on grounds that federal law was manifestly disregarded.  As the Supreme Court

explained, "the underlying [federal law] dispute [was] not ... at issue."  *Id.*  Here of course, the

parties' contract is governed by *federal* law, and looking at the parties' applications, it is obvious

that whether federal law was followed *was* at issue.  Accordingly, this Court has subject matter

jurisdiction over the action and its March 17, 2022 Judgment should not be vacated.

## CONCLUSION

For the foregoing reasons, the Plan respectfully request that this Court deny White Oak's

motion to vacate this Court's March 17, 2022 Judgment.

-22-

New York, New York
Dated: May 6, 2022

COVINGTON & BURLING LLP

_s/ C. William Phillips_
C. William Phillips

Jonathan M. Sperling
Cléa P.M. Liquard
The New York Times Building
620 Eighth Avenue
New York, NY 10018
212-841-1000
cphillips@cov.com
jsperling@cov.com
cliquard@cov.com

Robert Newman
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
202-662-6000
rnewman@cov.com

*Attorneys for Petitioners Trustees of the New
York State Nurses Association Pension Plan*