IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| THE TRUSTEES OF THE NEW YORK STATE NURSES ASSOCIATION PENSION PLAN, | ) ) ) ) ) | |
| Petitioners, | ) ) | Case No. 21-cv-8330 (LAK) |
| v. | ) ) | |
| WHITE OAK GLOBAL ADVISORS, LLC, | ) ) | |
| Respondent. | ) | |

**RESPONDENT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO VACATE THE JUDGMENT**

SIDLEY AUSTIN LLP
James Heyworth
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

and

Thomas K. Cauley, Jr. (*pro hac vice*)
Steven E. Sexton (*pro hac vice*)
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Respondent White Oak Global Advisors, LLC*

Following *Badgerow*, the Trustees[1] now argue that federal question jurisdiction over their Petition to Confirm exists because (1) the parties' arbitration provision in the Investment Management Agreement ("IMA") is governed by federal law, (2) the arbitration award itself requires the application of federal law, and (3) White Oak's Petition to Vacate raises a federal question. Each of these arguments fail.

The IMA's arbitration provision is a standard contract provision that is not preempted by ERISA statutory or common law. That arbitration provision is governed by New York state law, as expressly stated in the IMA. Nor does the arbitration award itself require this Court to apply any federal law. As *Badgerow* explains, arbitration awards are akin to settlement agreements, and disputes about settlement agreements – even settlements involving federal claims – must be brought in state court. Further, White Oak's Petition to Vacate did not raise any question of federal law, much less a substantial federal question, which is necessary to confer federal court jurisdiction over the Petition to Vacate. Regardless, under the Supreme Court's decision in *Vaden*, the subsequently-filed Petition to Vacate – which sought only to vacate the attorneys' fees and prejudgment interest awards – cannot confer jurisdiction over the Petition to Confirm. Because the Petition to Confirm did not seek any relief under federal law, and did not raise any federal questions,[2] this Court does not have federal question jurisdiction over the Petition to Confirm, and this Court's March 17, 2022 judgment (the "Judgment") should be vacated.

## ARGUMENT

In *Badgerow*, the Supreme Court explained that "the enforceability of an arbitral award … is no more than a contractual resolution of the parties' dispute – a way of settling legal

---

[1] Defined terms not otherwise defined have the meanings ascribed to them in White Oak's opening memorandum. Dkt. 64. Also, for case citations, all internal quotations and citations have been omitted and emphasis added.

[2] It is well established that Section 9 of the FAA cannot be the basis for federal question jurisdiction.

1

claims." *Badgerow v. Walters,* 142 S. Ct. 1310, 1316-17 (2022). *Badgerow* further explained that "quarrels about legal settlements – *even settlements of federal claims*" – must be brought in state court. *Id.* Here, the Trustees' Petition to Confirm simply asked this Court to issue "an order confirming the Partial Final Award and Final Award" – which is a contractual resolution of the parties' dispute. Dkt. 14-1 at 7. Indeed, during the March 9, 2022 hearing, the Trustees' counsel urged the Court to "simply" "confirm the award" as is. Dkt. 57 at 7-9, 27-28. As the Court explained in its Memorandum Opinion, "[j]udicial confirmation of an arbitration award is considered a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." Dkt. 59 at 12. Because the Petition to Confirm did not present any federal questions or ask the Court to make any rulings on federal law, as stated in *Badgerow*, the arbitration award in this case "is no more than a contractual resolution of the parties' dispute" and "adjudication of such state-law contractual rights … typically belongs in state courts." *Badgerow,* 142 S. Ct. at 1316-17, 1321-22.

I.  **Not Only Is the Trustees' Argument that this Court Has Jurisdiction Because the IMA Is Governed by Federal Law Another Variation of the Rejected "Look Through" Approach, But the IMA Is *Not* Governed by Federal Law.**

Contrary to the Trustees' argument, *Badgerow* did not "make[] clear that if the agreement is governed by federal law, the dispute presents a federal question on its face." Dkt. 70 at 12. That argument is a variant of the "look through" approach *Badgerow* rejected. Instead, *Badgerow* held that a district court has federal question jurisdiction over a petition to confirm or vacate an arbitration award only if the petition to confirm or vacate *itself* "alleges that federal law (beyond Section 9 or 10 [of the FAA] itself) entitles the applicant to relief[.]" 142 S. Ct. at 1316. Here, because the Petition to Confirm does not allege that any federal law entitles the Trustees to relief, the Trustees' Petition to Confirm must be brought in state court.

In any event, the Trustees cite no support for their argument that the IMA's run-of-the-mill arbitration provision is governed by ERISA law.  Indeed, by the IMA's express terms, the arbitration provision is governed by *New York state law* – not federal law.[3]  Dkt. 31-4 at 42.  The Trustees argue that federal ERISA statutory and common law apply to the entire IMA, including the arbitration provision, based on "ERISA's broad express preemption provision."  Dkt. 70 at 13.  However, ERISA's preemptive reach is not nearly as broad as the Trustees contend, and plainly does not extend to the IMA's arbitration provision.

The Trustees bear the burden of establishing that ERISA preemption applies.  *Marcella v. Cap. Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002) (in "'complete preemption' cases, the burden is on…the party asserting federal jurisdiction").  However, the Trustees have cited no authority establishing that ERISA law applies to an arbitration provision in a contract with a third-party service provider, such as White Oak.

ERISA preemption is designed to provide uniform federal laws to protect participants in employee benefits plans, *not* contracts between pension plans and third parties involved in the administration of the plans, such as the IMA between White Oak and the Trustees.  *See Aetna Health Inc. v. Davila,* 542 U.S. 200, 208 (2004) ("Congress enacted ERISA to protect the interests of participants in employee benefit plans and their beneficiaries.").  ERISA "regulates … the relationship between plan and plan member, between plan and employer, between employer and employee (to the extent an employee benefit plan is involved), and between plan and trustee."  *Gen Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521-22 (9th Cir. 1993).  In *Aetna Life Insurance Co. v. Borges*, 869 F.2d 142, 146 (2d Cir. 1989), the Second Circuit held that the laws that have been preempted by ERISA include: (1) "those that provide an alternative

---

[3] The arbitration provision in the IMA is governed by New York state law, as expressly stated in the IMA.  Dkt. 31-4 at 42 § 22.

cause of action to employees to collect benefits protected by ERISA," (2) those that "refer specifically to ERISA plans and apply solely to them," or (3) those that "interfere with the calculation of benefits owed to an employee."  The IMA falls into none of these categories; it is a contract between the plan operators – the Trustees – and a third party – White Oak – that federal courts have held are governed by state law and not preempted by ERISA.[4]

In *General American*, 984 F.2d at 1521-22, the court explained "ERISA doesn't purport to regulate those relationships where a plan operates just like any other commercial entity[.]" In holding that ERISA did not preempt state contract law in a plan's contracts with a third-party administrator of the plan, such as the IMA, the court in *State St. Bank & Tr. Co. v. Mut. Life Ins. Co.*, 811 F. Supp. 915, 923 n.15 (S.D.N.Y. 1993) held:

> This action is not one by an employee to collect benefits nor does it affect how benefits are to be calculated.  It is merely an action of generally applicable state contract law.  This Court has found that ERISA does not preempt state law contracts that pension plans make with third parties to assist in the administration of the plan.

Indeed, "if state contract law were preempted [for third-party breach of contract claims], a large area of state law which is only tangentially related to pension funds would be federalized." *State St.*, 811 F. Supp. at 923 n.15; *Gen. Amer.*, 984 F.2d at 1521-22 (ERISA does not preempt commercial relationships between a plan and a service provider because "if these relationships were governed by federal law, federal courts would have to invent a federal common law of contracts, torts, property, corporations – something that would run against the grain of our

---

[4] The *Smith* and *Cleveland* cases that the Trustees cite are not to the contrary.  Dkt. 70 at 15.  In those cases, the courts were interpreting plan agreements, and the courts applied ERISA law to protect plan participants against attempts to limit the plan participants' rights to relief under ERISA.  *Cleveland v. Oracle Corp.*, No. C 06-7826, 2007 WL 915414, at *2 (N.D. Cal. Mar. 23, 2007) (applying both federal and California law in interpreting the plan agreement); *Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613, 618 (7th Cir. 2021) ("interpretation of language *in a plan* governed by ERISA is controlled by federal law").  Here, the IMA is distinct from the agreement governing the Plan, and the IMA does not purport to limit Plan participants' ERISA rights.  Thus, the *Smith* and *Cleveland* cases have no applicability to this case.

federal system."). Consequently, the IMA, which is a commercial contract between the Trustees and White Oak to administer the Plan's assets, is *not* preempted by federal law; it – and in particular its arbitration provision – is governed by New York state law, as the IMA expressly states and the Trustees previously argued during the arbitration.[5]

The Trustees' policy argument that it must be granted access to federal court to confirm the arbitration award is directly contrary to the U.S. Supreme Court's recent decision in *Badgerow*. Dkt. 70 at 15. In *Badgerow*, the Supreme Court recognized that "Congress chose to place fewer arbitration disputes in federal court" and "Congress chose to respect the capacity of state courts to properly enforce arbitral awards." 142 S. Ct. at 1321-22. In short, because the Petition to Confirm raises no federal question, there is no federal court jurisdiction.

## II. The Arbitration Award Does Not Provide a Basis for Jurisdiction Over the Petition to Confirm.

The Trustees argue that to the extent *Badgerow* analogized arbitration awards to settlement agreements, courts have found federal question jurisdiction to exist to enforce settlement agreements resolving ERISA claims. However, the case on which the Trustees principally rely where the court found it had federal question jurisdiction to enforce an ERISA settlement agreement, *Madison Hotel*, is clearly distinguishable from this case. In *Madison Hotel,* the settlement agreement between the plan beneficiaries and the plan sponsor – a relationship that *is* subject to preemption by federal ERISA law – expressly cited to and incorporated ERISA requirements, and therefore plainly required the district court to apply ERISA law to enforce the settlement agreement. *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v.*

---

[5] In their arbitration demand, the Trustees specifically quoted the choice of law provision in the IMA in favor of New York state law and alleged that the IMA imposed "*state* contractual obligations to act as a fiduciary" on White Oak. Dkt. at 31-3 at 5, 11. In their post-hearing brief to the arbitrator, the Trustees also cited New York law in interpreting the IMA. Cauley Decl., Ex. A at 56 ("it is settled New York law that statements in a whereas clause…").

*Madison Hotel, Inc.*, 97 F.3d 1479, 1484-85 (D.C. Cir. 1996).[6] *Madison Hotel* made clear that a court has federal question jurisdiction only over settlement agreements that require the "adjudication [of] substantive federal law issues," and *not* over ERISA settlements that simply require the application of state law (like the arbitration award here):

> In this case, unlike *Kokkonen*,[7] enforcement of the settlement agreement itself will require adjudication of substantive federal law issues over which federal courts have exclusive jurisdiction under the ERISA statute. The settlement agreement in *Kokkonen* resolved a dispute that, from the outset of litigation, involved only state law issues. In contrast, and contrary to the district court's determination that the Funds' second suit "amounts to a simple breach of contract action" [] enforcement of the settlement agreement here will almost inevitably require construction and application of specific ERISA provisions which define the scope of the employer's contribution obligations and the Funds' legal entitlements on default.

*Madison Hotel, Inc.*, 97 F.3d at 1484-85.

In contrast, where the Court is not asked to address questions of ERISA law, enforcement of settlement agreements is viewed as a simple contract action that does not give rise to federal court jurisdiction. *Bricklayers & Allied Craftworkers Local 2 v. DiBernardo Tile & Marble Co.*, No. 1:08-CV-00044 (LEK/RFT), 2012 WL 3508931, at *3 (N.D.N.Y. Aug. 14, 2012) ("[E]ven in ERISA cases, courts have found federal jurisdiction lacking where enforcing a settlement

---

[6] The other cases the Trustees cite, Dkt. 70 at 16, also involve application of ERISA law to ERISA settlement agreements, and therefore are not applicable to this case. In *Kelly*, the court found ERISA preempted a claim for breach of a settlement agreement, because "each and every one of [plaintiff's] 'contractual' claims [under the settlement agreement] depends upon the interpretation and/or administration of ERISA regulated plans." *Kelly v. Deutsche Bank Sec. Corp.*, No. 09-CV-5378 (JS) (AKT), 2010 WL 2292388, at *2 (E.D.N.Y. June 3, 2010). The courts relied on ERISA law in *Erbe*, *Huffer*, and *Vic Construction* to determine whether a binding settlement agreement existed, in *Shell* to determine when the settlement agreement became effective, and in *John Boettcher* to determine if the settlement agreement could be revoked. Those cases – all of which involve the application of ERISA law – have no applicability to this case, where the Court was asked simply to confirm an arbitration award, and was not asked to apply ERISA law.

[7] In *Kokkonen*, the Supreme Court held that the federal court did not have jurisdiction over a claim for breach of a settlement agreement that resolved a claim previously brought in federal court, because there were no federal questions presented in the settlement agreement. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) ("The suit involves a claim for breach of a contract [settlement agreement], part of the consideration for which was dismissal of an earlier federal suit. No federal statute makes that connection (if it constitutionally could) the basis for federal-court jurisdiction over the contract dispute.").

agreement requires applying principles of contract law as opposed to interpreting statutory provisions.") (collecting cases); *LaBarbera v. Dasgowd, Inc.*, No. CV-03-1762 (CPS), 2007 WL 1531895, at *2 (E.D.N.Y. May 22, 2007) ("Actions to enforce [ERISA] settlement agreements are, in essence, contract actions which are governed by state law and which do not themselves raise a federal question[.]").

Here, confirming the arbitration award simply involves looking at the language of the arbitration award itself, and does not involve the application of ERISA or any other federal law. Thus, this Court does not have subject matter jurisdiction over the Petition to Confirm.

### III.   The Petition to Vacate Does Not Confer Jurisdiction Over the Petition to Confirm.

The Trustees' argument that the Court has federal question jurisdiction over the Petition to Vacate, and may therefore retain jurisdiction over the Petition to Confirm, is also incorrect. Dkt. 70 at 12. The Petition to Vacate does not present a "substantial" federal question – which is a prerequisite for jurisdiction. Moreover, under Supreme Court precedent, White Oak's subsequently-filed Petition to Vacate cannot confer jurisdiction over the Petition to Confirm.

The Second Circuit specifically held in *Greenberg* that the nature of the federal question in a petition to vacate an arbitration award must be "sufficiently substantial to warrant federal jurisdiction." *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 26 (2nd Cir. 2000). The Second Circuit reasoned that only where "a substantial federal question is presented" by a petition to vacate does federal question jurisdiction exist, because the district court must "immerse[]" itself "in questions of federal law and their proper application[.]" *Id.* at 27. *See also Hagan v. Katz Commc'ns, Inc.,* 200 F. Supp. 3d 435, 443 (S.D.N.Y. 2016) (applying *Greenberg* and finding that petition to vacate that argued manifest disregard of the law required the court to "sufficiently

7

immerse [itself] in questions of federal law and their proper application that federal subject matter jurisdiction is present.").

Here, the Petition to Vacate did not raise *any* question of federal law, much less a substantial question of federal law, and plainly did not require the Court to immerse itself in ERISA law. White Oak moved to vacate the arbitration award solely relating to attorneys' fees and costs and prejudgment interest. White Oak argued, based purely on its reading of the arbitration award, that the Trustees did not have "some success" at the arbitration – which was the undisputed standard relevant to awarding attorneys' fees – such that the Trustees should not receive any attorneys' fees. White Oak also argued that because there were no damages awarded on which to award such prejudgment interest, the arbitrator's prejudgment interest award should be vacated. These arguments did not raise any ERISA-law question for the Court to decide, much less a "substantial" question of federal law sufficient to give rise to federal question jurisdiction over the Petition to Vacate.

The Trustees also argue that if the Court has federal question jurisdiction over the Petition to Vacate – which it does not – the Court "may deem" the Petition to Confirm as a counterclaim over which the Court may exercise supplemental jurisdiction. Dkt. 70 at 24. However, the Supreme Court's *Badgerow* decision is clear that the petition to confirm *itself* must allege a basis for federal jurisdiction – which the Petition to Confirm does not and cannot allege. *Badgerow*, 142 S. Ct. at 1314 ("[A] court may look only to the application actually submitted to it in assessing its jurisdiction" over a petition to confirm an arbitration award). Indeed, the Supreme Court's 2009 decision in *Vaden* makes clear that a subsequently-filed petition to vacate – which is analogous to a counterclaim – cannot confer jurisdiction over a petition to confirm. In *Vaden*, the Supreme Court held that "a federal counterclaim, even when compulsory, does not

8

establish 'arising under' [federal question] jurisdiction." *Vaden v. Discover Bank*, 556 U.S. 49, 60-61 (2009); *Wagner v. Brokers Int'l Fin. Servs., LLC*, No. 1:21-cv-01787, 2022 U.S. Dist. LEXIS 42501, at *10-11 (S.D. Ind. Mar. 9, 2022) (finding no federal jurisdiction where the petition to confirm did not raise a federal question and "[t]he only way any federal issue possibly comes into play in this case would be in evaluating [the subsequently-filed] motion to vacate the arbitration award").[8]  Therefore, even if the Petition to Vacate presented a substantial federal question – which it does not – the Petition to Vacate would be insufficient to confer federal jurisdiction over the Petition to Confirm.[9]

The cases the Trustees cite where the court recognized that a counterclaim could establish federal question jurisdiction over the claims in the original complaint, Dkt. 70 at 22-23, all predate the Supreme Court's 2009 decision in *Vaden*.  Since *Vaden*, federal courts citing *Vaden* have consistently held that a counterclaim *cannot* confer federal jurisdiction.  *Renegade Swish, L.L.C. v. Wright*, 857 F.3d 692, 697 (5th Cir. 2017) ("*Vaden* extinguished any possibility that a counterclaim can establish federal question jurisdiction."); *Pennymac Loan Servs., LLC v. Johnson*, 1:20CV175, 2021 WL 861530, at *3 (M.D.N.C. Mar. 8, 2021) (citing *Vaden* in rejecting jurisdiction based "on the federal issues raised in the counterclaim"); *KeyBank NA v. Katahdin Commc'ns, Inc.*, No. CV–10–141, 2010 WL 2361692, *2-3 (D. Me. June 9, 2010) (same); *Palmer v. Univ. of Med. & Dentistry of N.J.*, 605 F. Supp. 2d 624, 633 (D.N.J. 2009) (same).  Thus, the Trustees' suggestion that the Court exercise jurisdiction over the Petition to

---

[8] *See also Holmes Grp., Inc. v. Vornado Air Circulation Sys. Inc.*, 535 U.S. 826, 832 (2002) (declining "to transform the longstanding well-pleaded-complaint rule into the 'well-pleaded-complaint-or-counterclaim rule'").

[9] If *Badgerow* had been issued before White Oak filed its Petition to Vacate, White Oak would have filed its Petition to Vacate in state court, because it does not present a "substantial" question of federal law.  New York state courts routinely resolve petitions to vacate based on manifest disregard of federal law.  *ACN Digit. Phone Serv., LLC v. Universal Microelectronics Co.*, 115 A.D.3d 602, 603 (N.Y. App. Div. 2014); *Schiferle v. Cap. Fence Co.*, 155 A.D.3d 122, 128 (N.Y. App. Div. 2017).

Vacate – which the Court has already denied in full – and then exercise supplemental jurisdiction over the Petition to Confirm (Dkt. 70 at 24-25) is inappropriate.

The Trustees also argue that this Court "can still proceed to adjudicate White Oak's Petition to Vacate, and by doing so would determine the very same set of issues raised in both parties' Petitions." Dkt. 70 at 24. The Trustee's argument is simply not true. First, the Petition to Vacate has already been fully adjudicated and ruled upon by the Court. Second, while the Petition to Confirm sought to confirm seven different categories of relief, including disgorgement of $9 million in management fees, a return of assets "valued at" $96 million, a declaration that White Oak breached its fiduciary duties and removal of White Oak as the Plan's investment manager, Dkt. 14-1 at 7, the Petition to Vacate was very narrow and limited. White Oak solely moved to vacate the attorneys' fees and prejudgment interest awards. Dkt. 12 at 13-14, 32-34, 36.[10] Resolution of White Oak's limited motion to vacate attorneys' fees and prejudgment interest did not resolve all of the relief sought in the Petition to Confirm – which sought relief well beyond attorneys' fees and prejudgment interest.

## CONCLUSION

For the reasons outlined in White Oak's opening memorandum and this reply, the Judgment should be vacated for lack of subject matter jurisdiction.

Dated: May 20, 2022                                   Respectfully Submitted,

                                                      By: /s/ Thomas K. Cauley, Jr.
                                                      Thomas K. Cauley, Jr.

---

[10] The Trustees misrepresent the relief White Oak requested in its Petition to Vacate, falsely claiming that White Oak sought to "overturn[]" liability findings, asked the Court to resolve "whether the in-kind distribution is consistent with White Oak's obligations under ERISA" and "whether management fees are properly disgorged under ERISA." Dkt. 70 at 21. White Oak solely requested that the Court "vacate the Award's grant of attorneys' fees, costs and, to the extent awarded, prejudgment interest." Dkt. 12 at 41.