UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE TRUSTEES OF THE NEW YORK STATE NURSES ASSOCIATION PENSION PLAN,<br><br>            Petitioners,<br><br>    v.<br><br>WHITE OAK GLOBAL ADVISORS, LLC,<br><br>            Respondent. | Civil Action No. 21–cv–08330 |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO CORRECT JUDGMENT

COVINGTON & BURLING LLP
C. William Phillips
Jonathan M. Sperling
Cléa P.M. Liquard
The New York Times Building
620 Eighth Avenue
New York, New York 10018
212-841-1000
cphillips@cov.com
jsperling@cov.com
cliquard@cov.com

Robert Newman
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
202-662-6000
rnewman@cov.com

*Attorneys for Petitioners Trustees of the New York State Nurses Association Pension Plan*

## PRELIMINARY STATEMENT

Just as White Oak "endeavor[ed] to twist" the arbitrator's written award, Dkt. 59 at 15[1], it now argues that this Court did not mean what it said when it granted the Plan's Petition to Confirm the Award and denied White Oak's Motion to Vacate. White Oak's Opposition to the Plan's request for ministerial corrections to the Judgment effectively seeks wholesale reconsideration of the Court's ruling, rehashing old arguments that have been rejected by the arbitrator and this Court, injecting new arguments for overturning the arbitrator's findings, and ignoring the portions of the Court's written opinion that White Oak refuses to accept. There is no basis for the Court to entertain reargument of issues already squarely heard and decided by both the arbitrator and this Court and arguments newly manufactured after Judgment was entered. In any event, the arguments are devoid of merit on their own terms and are employed solely as a means to flout this Court's Judgment.

It has been more than two months since this Court granted the Plan's Petition to Confirm the Award "in all respects" (subject to "very limited" modification), Dkt. 59 at 29, and more than nine months since the arbitrator rendered her Final Award, *see* Dkt. 21-2, yet White Oak still exercises control over the Plan's money and refuses to pay the attorneys' fees, "Day One" management fees, and interest awarded to the Plan. *See* Phillips Decl., Ex. A. Indeed, White Oak has disputed that these components of the award—which the Court clearly confirmed in its Memorandum Opinion—even form part of the Court's Judgment.

The Court should clarify the Judgment so that it expressly states the components of the arbitrator's award confirmed by the Court in its March 17, 2022 Memorandum Opinion. Doing so will facilitate the Plan's enforcement of the Judgment against White Oak and prevent White

---

[1] Pincites to documents available on the docket refer to the ECF pagination.

Oak from continuing to dispute the scope and meaning of the Judgment.

## ARGUMENT

White Oak mistakenly suggests that relief under Rule 60(a) is limited to correcting "clerical mistake[s]." Dkt. 68 at 5. As the Plan's Memorandum explained, courts have "considerable discretion" under Rule 60(a) to clarify a judgment to "reflect the necessary implications of the original order, to ensure that the court's purpose is fully implemented," and to facilitate "enforcement" of the judgment. Dkt. 62 at 2-3 (citing *Consumer Fin. Prot. Bureau v. Sprint Corp.*, 320 F.R.D. 358, 363 (S.D.N.Y. 2017)). *See also L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 956 F. Supp. 2d 402, 409 (E.D.N.Y. 2013) ("The Second Circuit has taken a broad view of Rule 60(a), allowing modification of a judgment for the purposes of enforcement ... "). That broad discretion extends to correcting a judgment to include the dollar amount of damages and prejudgment interest awarded. *See Dudley ex rel. Est. of Patton v. Penn-Am. Ins. Co.*, 313 F.3d 662, 665 (2d Cir. 2002) (explaining that failure to include the monetary sum in the judgment was a "judicial oversight"). Indeed, as the Second Circuit explained, where, as is the case here, a court grants a party's motion for summary judgment, the court "necessarily" holds that the party is entitled to the damages and interest requested in its pleadings and motion papers. *Id. See also* Dkt. 62 at 3 (discussing case law).

Applied here, those principles counsel in favor of correcting the Judgment to state explicitly the relief awarded by the arbitrator and confirmed by this Court in its Memorandum Opinion, including: (i) the precise amount of attorneys' fees and "Day One" management fees awarded; (ii) disgorgement of profits; (iii) disgorgement of the net asset value of the Plan's assets as of August 4, 2021, along with prejudgment interest measured at 9% per annum from September 18, 2018 to August 4, 2021; (iv) the precise amount of prejudgment interest on the

"Day One" fees; and (v) removal of White Oak as fiduciary and investment manager.  *See* Dkt. 62 at 7 (identifying text to be added to Judgment).  Clarifying the Judgment so that it expressly sets out the dollar figures and elements of the award confirmed by the Court will ensure the Court's ruling is fully implemented and the Judgment enforced.  White Oak's attempts to oppose this ministerial relief in favor of relitigating the case do not warrant consideration.

## I.   White Oak's Refusal to Pay the Awarded Attorneys' Fees and "Day One" Fees Demonstrates Why the Judgment Must Be Clarified to Include These Figures.

The Court confirmed the arbitrator's "award of eighty percent of the Plan's attorneys fees and costs," and concluded that "White Oak may not retain any 'Day One' fees."  Dkt. 59 at 27, 23.  The Plan asks the Court to correct the Judgment so that the exact dollar amount of attorneys' fees and "Day One" fees—$5,722,249.35 and $1,929,836.07 respectively—is identified in the Judgment.  *See* Dkt. 62 at 4-5, 7.  These amounts were never contested by White Oak.  White Oak still does not dispute their accuracy (nor could it), yet it objects to having the figures reflected in the Judgment on the purported ground that "the Judgment entered by the Clerk already accurately reflects the confirmation of the arbitration award."  Dkt. 68 at 8, 16.

Without a doubt, the Court confirmed in its Memorandum Opinion the arbitrator's award in virtually "all respects," including the award of $5,722,249.35 in attorneys' fees and $1,929,836.07 in "Day One" management fees to the Plan.  Dkt. 59 at 29.  And the Judgment fully incorporates by reference the Court's Memorandum Opinion.  Dkt. 60.  But White Oak refuses to acknowledge that ruling, refuses to pay these amounts to the Plan, *see* Phillips Decl., Ex. A, and, as its Opposition demonstrates, plans to continue flouting the Judgment.

Indeed, White Oak's Opposition does not even acknowledge the Court's ruling that "White Oak may not retain any 'Day One' fees," Dkt. 59 at 23, and instead rehashes at length the same frivolous arguments it made before the arbitrator and this Court as to why it should not

have to disgorge the "Day One" fees.  *Compare* Dkt. 68 at 16-19 (WO Opp. contending that

"Day One" fees should be "offset" against the supposed "profits" the Plan earned through the

investment), *with* Dkt. 12 at 30 n.12 (WO Pet'n to Vacate arguing without citation or support

that the arbitrator "did not award the Plan a refund of the $1.9 million 'Day One' management

fee," and that such fee was "offset by an immediate profit"), *and* Dkt. 11-12 at 73-75 (WO Br. to

arbitrator arguing that "if the Day One Investor Fee is found to be invalid ... the Plan should also

return the Day One Investor Profit").  The only difference this round is that White Oak adds the

newly-invented variation that, because White Oak breached its ERISA fiduciary duties by

collecting fees to which it was not entitled, the limited partnership agreement is "void" and

therefore White Oak need not disgorge the fees it improperly collected.  *See* Dkt. 68 at 16-19.[2]

    The Court has already determined after briefing and a hearing that "it is obvious" that

White Oak must disgorge the "Day One" management fees.  Dkt. 59 at 23.  White Oak's post-

Judgment request that the Court reconsider and adopt White Oak's twice-rejected and newly-

conjured arguments thus amounts to a backdoor request for reconsideration.  That would be

improper, however, even had White Oak actually moved for such relief:  Any such motion would

be untimely (*see* Local Civil Rule 6.3), and "[a] motion for reconsideration may not be used to

advance new facts, issues or arguments not previously presented to the Court, nor may it be used

as a vehicle for relitigating issues already decided by the Court."  *Bigu Haider v. Lyft, Inc.*, No.

20-cv-2997 (AJN), 2022 WL 1500673, at *1 (S.D.N.Y. May 11, 2022) (citation omitted).

---

[2] This latest variation is just as flawed as the earlier iterations of the same basic argument.  As discussed above, the fund agreements did not permit White Oak to collect a "Day One" fee from the Plan.  But, even setting that side, White Oak also failed to bring to the Court's attention the fund agreement's severability provision requiring any invalid provision merely to be limited to the extent necessary to comply with the law; it does not permit, as White Oak suggests, complete invalidation of the provision.  *See* Dkt. 11-3 at 196 (White Oak Pinnacle Fund LPA, Section 13.5).

Moreover, it bears mention that White Oak's arguments grossly misrepresent the facts, which the Plan demonstrated in its extensive briefing and hearing before the arbitrator more than two years ago. The only fees agreed to by the Plan are contained in the parties' investment management agreement ("IMA"), which the arbitrator definitively determined, and this Court confirmed, does not allow White Oak to charge a retroactive "Day One" fee. *See* Dkt. 59 at 23. The fact that White Oak claims to have charged "Day One" fees under the Pinnacle Fund's limited partnership agreement ("LPA") is, therefore, immaterial, because the Plan did not agree to the fee structure in the LPA. Even putting that aside, as established before the arbitrator, the Pinnacle Fund LPAs *also* prohibited White Oak from collecting "Day One" fees from the Plan.[3] In short, *no* agreement—neither the IMA, nor the fund LPAs—permitted White Oak to collect retroactive management fees. White Oak nevertheless took more than $1.9 million in Plan money on Day One of the Plan's investment and to this day refuses to return it, notwithstanding

---

[3] In its capacity as an ERISA fiduciary, White Oak signed the Plan onto a limited partnership agreement for the White Oak Pinnacle Feeder Fund I, L.P. (the "Feeder Fund"). The Pinnacle Feeder Fund in turn became a limited partner in the White Oak Pinnacle Fund, L.P. (the "Master Fund"). White Oak points to the terms of the Master Fund LPA, which did contain a "Day One" investing provision, but fails to disclose to the Court that (i) the fee provision in the Master Fund LPA allowed for waiver of management fees, *see* Dkt. 11-3 at 165 (Master Fund LPA, Section 3.3(d)), and (ii) the fees were in fact waived because the *Feeder* Fund LPA states expressly that White Oak was *prohibited* from collecting management fees under the Pinnacle *Master* Fund, *see id.* at 122 (Feeder Fund LPA, Section 3.3(a)).

The Feeder Fund LPA did not provide for any retroactive or "Day One" fees, and expressly provided that the Plan would pay fees only "at the [*Feeder Fund*] Partnership level" and that "[*n*]*o Management Fee will be paid* to the Manager *at the Master Fund level*." *Id.* (emphasis added). Indeed, White Oak's managing partner Barbara McKee agreed that "[t]he only management fee to be paid to the manager was to be [paid] at the *feeder fund level*." Phillips Decl., Ex. B, Tr. 1259:18-21 (emphasis added). Consistent with the IMA, the Feeder Fund LPA states that "the Manager shall receive ... a Management fee" "[*d*]*uring the Investment Period*," which is defined in the Feeder Fund LPA as the period between January 28, 2014 (when the Feeder Fund LPA became effective upon White Oak's execution of the Subscription Documents, *see* Phillips Decl., Ex. C at WO009413) and December 31, 2015—a period that does not extend retroactively before the IMA was in effect. Dkt. 11-3 at 122 (Feeder Fund LPA, Section 3.3(b)) (emphasis added); *id.* at 152 (Definitions).

having been found in breach of its ERISA fiduciary duties by the arbitrator and now this Court.

Correcting the Judgment so that it includes the specific amount of attorneys' fees ($5,722,249.35) and "Day One" fees ($1,929,836.07) that White Oak must pay the Plan will ensure that the Judgment is fully implemented and will aid the Plan in enforcing it against White Oak. *See Sprint Corp.*, 320 F.R.D. at 363 (noting that Rule 60(a) allows clarification of the judgment for enforcement purposes).

## II.  This Court Has Already Confirmed the Arbitrator's Award of "Profits," Which Should Be Reflected In the Judgment.

Just as White Oak ignores the Court's ruling that it must pay attorneys' fees and disgorge the "Day One" fees, White Oak similarly misrepresents in its brief that "the Arbitrator did not order any disgorgement of profits to the Plan, and the Court did not confirm any disgorgement of profits." Dkt. 68 at 13. The award and this Court's Opinion are self-evidentially to the contrary: The arbitrator's Final Award ordered the "disgorgement of ... 'profits,'" Dkt. 59 at 20-21 (quoting Final Award, Dkt. 21-2 at 7), and this "Court confirm[ed] the award to the extent it order[ed] White Oak to disgorge 'profits,'" *id.* at 23 (quoting Partial Final Award, Dkt. 21-1 at 38).

White Oak again bypasses the plain import of the Court's ruling and instead regurgitates old arguments as to why it should not have to disgorge profits, including the far-fetched claim that it did not retain any profit from managing the Plan's money. Dkt. 68 at 12-13. The Court should not entertain reargument on issues that have already been fully determined and, in any event, White Oak's arguments fare no better the third time around. As this Court aptly observed to White Oak counsel: "Your client is not an eleemosynary institution." Dkt. 57, Tr. 25:19-20. White Oak clearly earned a profit off the Plan's money, and any such profits (other than management fees, which the award permits White Oak to retain) must be disgorged to the Plan.

Dkt. 59 at 23.  That includes the "carried interest" White Oak accrued and deducted from the

reported net asset value of the Plan's investment, which the Court determined "represent[s]

'profits' to White Oak."  *Id.* at 21-22.[4]  White Oak again insists that it did not collect

performance fees, but the Court already properly dismissed that argument.  *Id.* at 21 n.77.  Other

profits that White Oak earned through use of the Plan's money will be determined through

judgment enforcement proceedings, as contemplated by the Court.  *Id.* at 28-29 ("Should a

genuine dispute arise as to the parties' rights upon enforcement of the judgment, the Court will

address it in due course.").

       In sum, as reflected in the Court's Memorandum Opinion, the Court confirmed the

arbitrator's award ordering White Oak to disgorge "profits."  The Judgment should be corrected

to expressly state that ruling.

**III.    White Oak Never Disputed the Plan's Calculation of Interest Before the Arbitrator
          or this Court, and Cannot Do So Now.**

       White Oak purports to "dispute" the date from which prejudgment interest is calculated

on the "Day One" management fees, but White Oak did not contest the Plan's calculation of

interest at any point during the years' worth of briefing before the arbitrator and this Court, and

its request to reopen the issue after Judgment was entered should be dismissed out of hand.  "[A]

party dissatisfied with the Court's ruling" cannot request reconsideration "to advance new

theories that the movant failed to advance in connection with the underlying motion, nor to

---

[4] White Oak misleads when it suggests that the Plan "conceded during the March 9, 2022 hearing that the Arbitrator did not order White Oak to disgorge any performance fees."  Dkt. 68 at 13 (citing Dkt. 57, Tr. at 29-30).  On the contrary, the Plan argued in its briefs and at the hearing that the arbitrator's statement in the Final Award that "performance fees shall be retained by White Oak" should be interpreted as written—that is, White Oak is permitted to retain performance fees.  The Court, of course, has since modified the Final Award to substitute "management" for "performance" fees, and concluded that "the [Final Award's] description of the fees that White Oak may retain cannot plausibly refer to the IMA's 'carried interest' provision [i.e., performance fees]."  Dkt. 59 at 21-23, 29.

secure a rehearing on the merits with regard to issues already decided." *Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002).

The Plan submitted prejudgment interest calculations to the arbitrator on March 15, 2021, and May 19, 2021, which identified the date from which interest was calculated. *See* Dkt. 21-10 at 6-7; Dkt. 21-12 at 6-7; Dkt. 30-2. As reflected in those records, interest was calculated on the "Day One" management fees as of December 31, 2013, which was the date White Oak invested the Plan in its Pinnacle Fund and when the "Day One" fee was reported. *See* Dkt. 30-2 at 6 (calculating interest as of December 31, 2013); Dkt. 21-11 at 2 (Statement of Capital Account for the Quarter Ended December 31, 3013, reflecting more than $1.9 million in management fees paid). During the arbitration proceeding, White Oak urged the arbitrator to deny the Plan's request for interest on the "Day One" fees, contending that it would be "unfair," but it never contested the accuracy of the calculation or the date from which interest was calculated. *See* Dkt. 11-12 at 78. The arbitrator rejected White Oak's arguments and, based on the calculations submitted by the Plan, reaffirmed the award of interest in the Final Award. *See* Dkt. 21-2 at 11-12. In its briefing to confirm the award of prejudgment interest, the Plan relied on the same "documents that were before the arbitrator," Dkt. 18 at 24, and conspicuously noted that "White Oak does not dispute" the Plan's calculation of interest, Dkt. 35 at 40. White Oak never contested that statement nor identified any "dispute" over the calculation of interest in its more than 45 pages of briefing to the Court. Accordingly, there is no "finding of fact" for the Court to make. Dkt. 68 at 19. The Plan's calculation of prejudgment interest on the "Day One" management fees was awarded by the arbitrator and confirmed by this Court.

White Oak's attempt to manufacture a dispute after Judgment is entered is a transparent effort to disregard the Court's ruling. The Court should correct the Judgment to specifically

reflect the award of $1,319,532.02 in prejudgment interest awarded on the "Day One" management fees.

**IV.    This Court Has Already Rejected White Oak's Arguments that Prejudgment Interest Should Not be Awarded on the Net Asset Value of Plan Assets.**

The Plan asks the Court to clarify the Judgment to make explicit the award of prejudgment interest on Plan assets running from September 18, 2018 (the date on which the IMA terminated) to August 4, 2021, which is the period over which the Plan requested prejudgment interest from the arbitrator. *See* Dkt. 62 at 6-7; Dkt. 21-10 at 7; Dkt. 30-2 at 3.  The arbitrator's Final Award ordered White Oak to "disgorge the NAV of the Plan ... *including interest*." Dkt. 59 at 10 (quoting Final Award, Dkt. 21-2 at 11) (emphasis added).  Although White Oak petitioned to vacate the award of interest, the Court definitively rejected the request, holding that "[t]he award is confirmed as to prejudgment interest." *Id.* at 27.

As before, White Oak simply ignores what it does not want to hear, contending that "the Court did not confirm any prejudgment interest" on the Plan's assets, and repeating the same failed arguments it made before the arbitrator and the Court as to why interest should not be awarded.  Dkt. 68 at 13-16.  Indeed, White Oak's Opposition virtually cuts-and-pastes passages from briefs it submitted to the arbitrator arguing that awarding prejudgment interest on Plan assets as of September 2018 would "be punitive and unfair" and constitute a "windfall." Dkt. 11-12 at 77; *accord* Dkt. 68 at 15.  When those flawed arguments were dismissed by the arbitrator, White Oak repackaged them in its briefs to this Court as grounds for vacating the award, with the added absurd argument that "the Arbitrator did not award prejudgment interest on the disgorgement of 'Plan assets and management fees.'"  Dkt. 12 at 40 (arguing that interest as of September 2018 would constitute a "penalty" and that the Plan has "benefited"); Dkt. 39 at 13 (same).  Just like the arbitrator before it, the Court rejected White Oak's arguments and

confirmed the award of prejudgment interest on Plan assets.  Dkt. 59 at 27 ("an award of

prejudgment interest is not, as White Oak suggests, a 'penalty'").

      White Oak's invitation to revisit that ruling is improper and should be disregarded.  To

facilitate enforcement of the Court's Judgment, and to stop White Oak from endlessly relitigating

the issues, the Court's Judgment should be clarified to reflect the award of prejudgment interest

at 9% per annum on the net asset value of the Plan's assets as of August 4, 2021, running from

September 18, 2018, to August 4, 2021.

**V.    The Award Compelling White Oak's Removal, Confirmed by the Court, Should be Expressly Reflected in the Judgment.**

      White Oak's removal as fiduciary and investment manager was ordered by the arbitrator

and confirmed by this Court.  Dkt. 59 at 28-29.  The Plan asks the Court to correct the Judgment

to expressly identify this component of the arbitrator's award, along with the other components

of relief confirmed by the Court.  Contrary to White Oak's suggestion, nothing about such a

correction implies that the Court would be issuing a "declaratory judgment."  Dkt. 68 at 11-12.

Clarifying the Judgment in this manner will aid the Plan in executing and enforcing the

Judgment against White Oak.  The fact that White Oak opposes this ministerial clarification,

when there is no dispute that White Oak's removal has been ordered, is itself evidence of why

the clarification is needed.

## CONCLUSION

      White Oak's continued insistence that the Judgment does not mean what it says is, itself,

the strongest argument in favor of granting the Plan's request to clarify the Judgment.  For the

foregoing reasons, the Plan respectfully requests that its Motion to Correct the Judgment be

granted.

New York, New York
Dated: May 20, 2022

COVINGTON & BURLING LLP

  /s/  C. William Phillips
        C. William Phillips

Jonathan M. Sperling
Cléa P.M. Liquard
The New York Times Building
620 Eighth Avenue
New York, NY 10018
212-841-1000
cphillips@cov.com
jsperling@cov.com
cliquard@cov.com

Robert Newman
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
202-662-6000
rnewman@cov.com

*Attorneys for Petitioners Trustees of the New
York State Nurses Association Pension Plan*