UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE TRUSTEES OF THE NEW YORK STATE
NURSES ASSOCIATION PENSION PLAN,

                            Petitioners,

            -against-                                          21-cv-8330 (LAK)


WHITE OAK GLOBAL ADVISORS, LLC,

                            Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __06/20/2022__

**MEMORANDUM OPINION**


                    Appearances:


                            C. William Phillips
                            Clea Liquard
                            Jonathan Michael Sperling
                            COVINGTON & BURLING LLP
                            *Attorneys for Petitioner*


                            Thomas K. Cauley
                            James Ormerod Heyworth
                            Steven E. Sexton
                            SIDLEY AUSTIN, LLP
                            *Attorneys for Respondent*


LEWIS A. KAPLAN, *District Judge.*

            On March 17, 2022, this Court granted the Trustees of the New York State Nurses

Association Pension Plan (the "Plan")'s petition to confirm    and denied respondent White Oak

Global Advisors, LLC ("White Oak")'s corresponding motion to vacate    an arbitration award that

"[i]n no uncertain terms . . . declare[d] that White Oak breached its fiduciary duties under . . . [the

2

Employee Retirement Security Income Act of 1974 ("ERISA")], committed clear violations of ERISA Section 406(b)(1), and engaged in numerous prohibited transactions in its fiduciary capacity."[1]  It entered judgment the same day.[2]

White Oak now moves to vacate the judgment for lack of subject matter jurisdiction in light of *Badgerow v. Walters*, a recent U.S. Supreme Court decision that rejected the "look through" approach to subject matter jurisdiction on applications under Sections 9 and 10 of the Federal Arbitration Act ("FAA").[3]

*Legal Standard*

A case must be dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it."[4]  Subject matter jurisdiction cannot be waived or forfeited and may be challenged at any time.[5]  The party asserting subject matter jurisdiction has the burden of proving its existence.[6]

Federal question jurisdiction exists over "all civil actions arising under the . . . laws

---

[1]  Dkt. 59 at 28 (internal quotations and alterations omitted).  The Court assumes familiarity with its decision, which is reported at 2022 WL 815273.

[2]  Dkt. 60.

[3]  142 S. Ct. 1310 (2022).

[4]  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000) (citing Fed. R. Civ. P. 12(b)(1)).

[5]  *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434-35 (2011); *United States v. Cotton*, 535 U.S. 625, 630-31 (2002).

[6]  *MLC Fishing, Inc. v. Velez*, 667 F.3d 140, 141 (2d Cir. 2011).

. . . of the United States."[7]  Whether a given action arises under the laws of the United States in turn is governed by the "well-pleaded complaint" rule which, in this context, provides that the initiating pleading must "establish[] that the case 'arises under' federal law."[8]  When an application or complaint "is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions . . . , must entertain the suit."[9]  The two exceptions occur where the alleged claim under the Constitution or federal statute "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction" or where such a claim "is wholly insubstantial and frivolous."[10]

Although Sections 9 and 10 of the FAA authorize parties to petition a federal court to confirm or vacate an arbitral award, respectively, neither provision actually confers subject matter jurisdiction.[11]  Accordingly, such petitions require an "independent jurisdictional basis" to be adjudicated in federal court.[12]

---

[7]

28 U.S.C. § 1331.

[8]

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10 (1983).

[9]

*Carlson v. Principal Fin. Grp.*, 320 F.3d 301, 306 (2d Cir. 2003) (quoting *Bell v. Hood*, 327 U.S. 678, 681–82 (1946)).

[10]

*Id.*

[11]

9 U.S.C. §§ 9, 10.

[12]

*Hall Street Assocs.,L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008); *see Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009).

*The* Badgerow *Decision*

        Approximately two weeks after the Court entered judgment in this case, the U.S. Supreme Court handed down *Badgerow.* *Badgerow* centered on the removability of a state-court application to vacate an employee-initiated arbitration proceeding in which the employee, one Badgerow, asserted both state and federal wrongful termination claims against her employer's principals. After the arbitrator sided with the principals and dismissed Badgerow's claims, Badgerow sued in a state court to vacate the award for fraud. The employer's principals subsequently removed the case to federal court and petitioned for confirmation. Badgerow challenged that removal on the ground that the federal court lacked subject matter jurisdiction over either application.

        The district court determined that it had subject matter jurisdiction by using the "look-through" approach commonly employed in FAA Section 4 cases.[13] Put simply, it found an independent jurisdictional basis to decide the applications by looking to the substance of the claims at issue in the arbitration. Because the underlying dispute would have fallen within the federal court's jurisdiction (had it not been arbitrated out of court as required by Badgerow's employment contract), the court determined that it had jurisdiction to confirm or vacate the arbitral outcome of that dispute. In short, it concluded that federal question jurisdiction applied "[b]ecause the award itself included federal claims."[14] Although it noted that the source of the look-through approach Section 4 of the FAA includes "specific text" that Sections 9 and 10 "do[] not contain," the district

---

[13]    *Badgerow v. Walters*, No. CV 19-10353, 2019 WL 2611127, at *2 (E.D. La. June 26, 2019), *aff'd*, 975 F.3d 469 (5th Cir. 2020), *rev'd and remanded*, 142 S. Ct. 1310 (2022).

[14]    *Id.*

5

court nonetheless held that "consistent jurisdictional principles" ought to govern FAA applications across these various provisions.[15]   The Fifth Circuit affirmed, echoing the district court's reasoning.[16]

The Supreme Court reversed.  Declining to extend Section 4's look-through approach to Section 9 and 10 applications, it held that federal courts must determine whether an independent jurisdictional basis exists to confirm, vacate, or modify an arbitral award under those sections with reference only to "the application actually submitted."[17]   In other words, a district court may not exercise jurisdiction solely because the underlying substantive controversy between the parties would have been maintainable in federal court    for example, by presenting a federal question. *Badgerow* thus made clear that a Section 9 or 10 application must "ground[] jurisdiction on the face of the FAA application itself."[18]   Moreover, it applies here in light of the principle that a new rule of federal law announced by the Supreme Court becomes the "controlling interpretation" and must

---

[15]

*Id*.

Section 4 reads, in relevant part:"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  Sections 9 and 10 lack the "save for such agreement" language.  *See Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 253 (3d Cir. 2016) (noting that "[s]ection 10 lacks the critical "save for such agreement" language that was central to the Supreme Court's *Vaden* opinion" upholding the look-through approach in Section 4 cases) (citing *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009)).

[16]

*Badgerow*, 975 F.3d at 474-75.

[17]

*Badgerow*, 142 S. Ct. at 1314.

[18]

*Id.* at 1320.

"be given full retroactive effect in all cases[, like this one,] still open on direct review[.]"[19]

*The Plan's Section 9 Application*

The Plan argues that federal question jurisdiction exists principally for two reasons: that (1) "the contract under which the Petition arises and which contains the parties' arbitration agreement the investment management agreement ('IMA') is governed by the federal statutory and common law of ERISA," and (2) "White Oak challenged the arbitration award on grounds that the arbitrator manifestly disregarded federal law." The Plan does not contest White Oak's assertion that diversity jurisdiction is unavailable in this case.

As to the first argument, the Court notes that it is immaterial whether any *claims* in the arbitration were, in whole or in part, "governed by federal statutory and common law." *Badgerow* made abundantly clear that federal question jurisdiction does not exist as the district court had put it in that case simply "[b]ecause the award itself included federal claims."[20] The arbitration at issue in *Badgerow* featured substantial federal-law claims, and it was undisputed that the parties' underlying employment dispute could have proceeded in federal court under 28 U.S.C. § 1331 but for the parties' contractual obligation to settle disputes through arbitration. The substance of the claims was immaterial because, as the Supreme Court explained, an arbitration award is really "no more than a contractual resolution of the parties' legal dispute a way of settling legal claims."[21] An agreement to arbitrate is a matter of contract between the parties that concerns

---

[19]    *Harper v. Va. Dep't of Tax'n,* 509 U.S. 86, 97 (1993).

[20]    *Badgerow*, 2019 WL 2611127, at *2.

[21]    *Badgerow*, 142 S. Ct. at 1316-17.

"the way to resolve those disputes    but only those disputes    that the parties have agreed to submit to arbitration."[22]  Accordingly, what is before a court on a Section 9 or 10 application, insofar as subject matter jurisdiction is concerned, is limited to the portion or portions of the contract governing legal settlement.

 In *Badgerow,* this meant that the issue before the district court was "not the legality of Badgerow's firing," but rather the much narrower legal question of "the enforceability of" the contractual mechanism for settling disputes.[23]  Since contractual rights in arbitration agreements are "generally governed by state law"[24]    and because the "adjudication of [] state-law contractual rights . . . typically belongs in state courts"[25]    the Supreme Court concluded that it would "conform to the normal  and sensible  judicial division of labor" to funnel Badgerow's "state-law-based, non-diverse . . . application[]" into state court.

Thus, whether a non-diverse Section 9 or 10 application states a federal question on its face is a question that looks to the governing law of the *contract,* not to the law of the underlying claims.  It is only because the parties' arbitration rights arose in the sort of employment agreement that is generally governed by state law that the Supreme Court considered Badgerow's petition a "*state-law-based*, non-diverse . . . application[]"notwithstanding the substantial federal claims at issue.

---

[22]    *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

[23]    *Badgerow*, 142 S.Ct. at 1314.

[24]    *Id.* at 1321.

[25]    *Id.* at 1321–22.

This case is similar to *Badgerow* in that the Court here is confronted with a dispute over "legal settlement" and "the contractual rights provided in the arbitration agreement." But while *Badgerow* is controls as to the proposition that such questions are "generally governed by state law,"[26] there are certain contractual obligations — like those relating to the resolution of claims under an ERISA Plan — that never are "governed by state law." It is here where this case and *Badgerow* diverge.

*28 U.S.C. § 1331: Arbitration Agreements and ERISA*

The Plan argues that its petition "squarely invokes federal question jurisdiction under Section 1331 because the parties' IMA, including its arbitration clause, is governed by the federal statutory and common law of ERISA."[27]

Congress enacted ERISA's comprehensive statutory scheme with the purpose of protecting "the continued well-being and security of millions of employees and their dependents" by, among other things, curtailing abuse and mismanagement of employee benefit plans.[28] To accomplish that purpose, ERISA created a uniform national law governing employee benefit plans by simultaneously (1) imposing uniform participation, funding, vesting, disclosure, and fiduciary responsibility obligations with respect to covered plans and (2) removing those plans from the

---

[26]

*Badgerow,* 142 S. Ct. at 1321.

[27]

Dkt. 70, at 6.

[28]

*Aetna Life Ins. v. Borges*, 869 F.2d 142, 144; 29 U.S.C. §§ 1001, 1001a, 1001b.

traditional domain of state regulation.[29]  As the Second Circuit has recognized, the very "purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans."[30]  Accordingly, ERISA's "expansive preemption provisions . . . are intended to ensure that employee benefit plan regulation would be exclusively a federal concern."[31]

As a general matter, interpretation of instruments governing ERISA obligations is "governed by the federal common law of rights and obligations under ERISA-regulated plans."[32]  That federal courts are authorized to develop a federal common law for ERISA follows from Section 514 of the statute, which provides that ERISA shall "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."[33]  ERISA's express preemption clause thus is far-reaching and "virtually unique."[34]  A claim under state law is deemed to relate to an

---

[29]

    *See Plumbing Indus. Bd., Plumbing Loc. Union No. 1 v. E. W. Howell Co.*, 126 F.3d 61, 66 (2d Cir. 1997)*; see also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (noting ERISA's "unique pre-emptive force")The New York Court of Appeals itself has recognized that "ERISA's preemption provision," whose scope is "deliberately expansive," is "central to achievement of [the scheme's] statutory purposes."  *Nealy v. U.S. Healthcare HMO*, 93 N.Y.2d 209, 217, 711 N.E.2d 621, 624 (1999) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654–655 (1995)).

[30]

    *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).

[31]

    *Badgerow*, 142 S. Ct. at 1316.

[32]

    *Aramony v. United Way of Am.*, 254 F.3d 403, 411 (2d Cir. 2011).

[33]

    29 U.S.C. § 1144(a)

[34]

    *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 24 n.26 (1983); *Env't Encapsulating Corp. v. City of New York*, 855 F.2d 48, 56 (2d Cir. 1988).

employee benefit plan so long as that law has any "connection with or reference to such a plan."[35] A state law can relate to an ERISA plan "even if the law is not specifically designed to affect such plans, or the effect is only indirect."[36]  Thus, ERISA preempts more than "just state laws which purport to regulate an area expressly covered by ERISA."[37]

More specifically, questions of dispute resolution relating to an ERISA Plan including those concerning arbitration   are governed exclusively by the federal statutory and common law federal courts have developed for ERISA.[38]  This is entirely consistent with the FAA's general precept that federal courts generally "should apply ordinary state-law principles that govern the formation of contracts" when determining the validity of an agreement to arbitrate,[39] since the body of federal common law that Congress has licensed the federal courts to develop for ERISA is one that borrows from and reflects state-law contract principles.[40]  And as the Plan notes in its

---

[35]

*Sunwoo v. JPMorgan Chase & Co.*, No. 20-CV-5410 (VSB), 2021 WL 2443814, at *7 (S.D.N.Y. June 15, 2021) (quoting *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001)).

[36]

*Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1760 (2018) (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)).

[37]

*Neurological Surgery, P.C. v. Siemens Corp*., No. 17CV3477ADSAKT, 2017 WL 6397737, at *4 (E.D.N.Y. Dec. 12, 2017) (quoting *Howard v. Gleason Corp.*, 901 F.2d 1154, 1156 (2d Cir.1990)).

[38]

 *See, e.g., Smith v. Bd. of Dirs. Of Triad Mfg. Inc.*, 13 F.4th 613, 618 (7th Cir. 2021) (holding that interpretation of an arbitration clause in an ERISA plan is "controlled by federal common law").

[39]

*Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 n.5 (2d Cir. 2019).

[40]

*E.g., Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. Madison Hotel, Inc.*, 97 F.3d 1479, 1484 (D.C. Cir. 1996); *see Kelly v. Deutsche Bank Secs. Corp.*, No. 09-cv-5378, 2010 WL 2292388, at *1 (E.D.N.Y. June 3, 2010); *Huffer v. Herman*, 168 F. Supp. 2d 815, 823 (S.D. Ohio 2001); *John Boettcher Sewer & Excavating Co. v. Midwest Operating Eng'rs Welfare*

11

papers, courts widely have held that other nonarbitration "quarrels about legal settlement"[41] are governed exclusively by federal common law when they relate to an ERISA plan, as is the case here.[42]

Here, the petition clearly alleges that both the Plan Trustees and White Oak are ERISA fiduciaries, that the IMA containing the arbitration agreement gave rise to White Oak's ERISA fiduciary obligations, and that White Oak expressly warranted and agreed to serve as a fiduciary and investment manager under ERISA.[43] It is plain from the face of the Plan's petition that the narrow contractual rights before the court "relate to" an ERISA plan and are governed exclusively by federal law. Accordingly, the Plan's petition is not a state-law based Section 9 application as was at issue in *Badgerow*. Since it seeks recovery exclusively under the laws of the United States and does not implicate 28 U.S.C. § 1331's exceptions, the Court is obliged to hear the suit. White Oaks' motion must be denied.

*ERISA Section 502*

Although 28 U.S.C. § 1331 suffices as an independent jurisdictional basis for the Plan's petition, the Court notes that it has subject matter jurisdiction on at least one other theory not raised by the parties on this motion.

---

*Fund*, 803 F. Supp. 1420, 1425 (N.D. Ind. 1992).

[41]

*Badgerow v. Walters*, 142 S. Ct. 1310, 1317 (2022).

[42]

*See generally Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1501-02 (9th Cir.1985); *Cleveland v. Oracle Corp.*, No. C06-7826 MHP, 2007 WL 915414, at *2 (N.D. Cal. Mar. 23, 2007).

[43]

Petition to Confirm Arbitration Award, Dkt. 14-1.

ERISA Section 502(a)(3) authorizes any ERISA "participant, beneficiary or fiduciary" to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."[44] ERISA Section 502(e)(1) in turn provides that "the district courts of the United States shall have exclusive jurisdiction" over all such actions.  The Supreme Court has made clear that "trustees [are] given the authority to sue" under those parts of Section 502 that provide a civil enforcement mechanism for fiduciaries.[45]  Thus, whether the Court has jurisdiction under Section 502(a)(3) turns solely on whether it is here presented with either type of action enumerated in subparts (A) and (B). The Court concludes that it is.

As many decisions in this Circuit have recognized, Section 502(a)(3) is an independent jurisdictional basis for confirming an FAA Section 9 petition where the contractual right at issue is governed by the federal common law of ERISA.[46]  At a minimum, the statute

---

[44] 29 U.S.C. § 1132(a)(3).

[45] *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 578–79 (1985); *see Bd. of Trustees of Sheet Metal Workers Loc. Union No. 137 Ins. Annuity v. Vic Const. Corp.*, 825 F. Supp. 463, 466 (E.D.N.Y. 1993); *see also Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1212 (2d Cir. 1987) (noting that the Court had subject matter jurisdiction over action by trustees against investment manager for alleged prohibited transactions through ERISA Section 502(e)(1)). Although the Court and both parties have shorthanded the petitioning party as "the Plan," the application was in fact been brought by the "Trustees of the New York State Nurses Association Pension Plan" on the Plan's behalf. *See generally Pressroom Unions–Printers League Income Sec. Fund v. Cont'l Assur.* Co., 700 F.2d 889, 892 (2d Cir. 1983) (noting that pension fund itself is not one of the parties specifically authorized to file in 29 U.S.C. § 1132(a)).

[46] *E.g., Trustees of New York City Dist. Council of Carpenters Pension Fund v. A to E Inc.*, No. 16-CV-4455 (CM), 2018 WL 1737133, at *1 (S.D.N.Y. Mar. 20, 2018), *amended sub nom. Trustees of New York City Dist. Council v. A to E, Inc.*, No. 16 CIV. 4455 (CM), 2018 WL 4375125 (S.D.N.Y. Sept. 5, 2018); *Trustees of the New York City Dist. Council of*

authorizes the Plan bring this action through its "other appropriate equitable relief" clause, which is a "catchall" that allows an ERISA fiduciary to bring a civil action for any relief "typically available in equity" in the era when law and equity were divided.[47]  Here, confirmation of an arbitration award can be "viewed as 'appropriate equitable relief'" for redressing an ERISA violation.[48]  *Badgerow* itself reinforces this proposition, as it clarified that a petition to confirm an arbitration award is fundamentally a "quarrel[] about legal settlement[]," and it is "well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it."[49]  And, on closer inspection, there can be little question that an application to confirm an

---

*Carpenters Pension Fund v. Golden Dev. & Constr. Corp.*, No. 17CV1051VSBJLC, 2017 WL 2876644, at *2 (S.D.N.Y. July 6, 2017), *report and recommendation adopted sub nom. Trustees of New York City Dist. Council of Carpenters Pension Fund v. Golden Dev. & Constr. Corp.*, No. 17CV1051VSBJLC, 2017 WL 3309737 (S.D.N.Y. Aug. 2, 2017); *Trustees of New York City Dist. Council of Carpenters Pension Fund v. Allied Design & Constr., LLC, No.* 17-CV-1752 (LAK), 2017 WL 11570457, at *1 (S.D.N.Y. June 27, 2017); *Trustees of Int'l Union of Operating Engineers Loc. 30 Benefits Funds v. Nyack Hosp.*, 975 F. Supp. 2d 365, 368 (S.D.N.Y. 2013) (LMRA petition); *Trustees of New York City Dist. Council of Carpenters Pension Fund v. Dejil Sys., Inc.*, No. 12 CIV. 005 JMF, 2012 WL 3744802, at *1 (S.D.N.Y. Aug. 29, 2012).

[47]

*Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002); *see Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142-43 (2016).

[48]

*Trustees of Loc. Union No. 580 of Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers Emp. Ben. Funds v. Gen. Fence Corp.*, No. 13-CV-6006 SJF WDW, 2014 WL 1800428, at *8 (E.D.N.Y. May 5, 2014); *see also Katsaros v. Cody*, 744 F.2d 270, 281 (2d Cir. 1984) (noting that "it is well-settled that ERISA grants the court wide discretion in fashioning equitable relief" to protect benefit plan beneficiaries).

[49]

 *Callie v. Near*, 829 F.2d 888, 890 (9th Cir.1987); *see Badgerow v. Walters*, 142 S. Ct. 1310, 1317 (2022) (clarifying that a petition to confirm an arbitration award is fundamentally a "quarrel[] about legal settlement[]"); *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1025 (2d Cir. 1992) (holding that while "[t]ypically, settlement rests solely in the discretion of the parties, and the judicial system plays no role," that a court hearing an ERISA action "must review the terms of a settlement when it is asked to invoke its equitable powers to enforce a settlement agreement") *cf. Fednav, Ltd. v. Isoramar, S.A.*, 925 F.2d 599, 602 (2d Cir. 1991) (noting admiralty court's equitable power to enforce a "partially consummated settlement" where a plaintiff seeks entry of judgment in the amount

14

arbitral award rendered pursuant to an ERISA-governed contractual obligation is an action seeking one or more of the many categories of relief traditionally available in premerger courts of equity.[50] For instance, the relief the Plan seeks is plainly the nature of equity's traditional performance remedies on a special contract.[51]

        In this case, White Oak undertook a positive obligation under the IMA to settle disputes with the Plan through arbitration, *viz.* "by arbitration of the American Arbitration

---

of the unpaid balance due) (citing *Pedersen v. M/V Ocean Leader*, 578 F. Supp. 1534, 1535 (W.D. Wash.1984)).

[50]

*E.g.*, 1 JOHN NORTON POMEROY, A TREATISE ON EQUITY JURISPRUDENCE§ 116 (Symons 5th ed. 1941) (5th ed) ("POMEROY") ("The remedial system of equity as a whole, with its great variety of specific remedies which enforce the very primary rights and duties of persons rather than give pecuniary equivalents for their violation, with its power to enlarge the scope of these ordinary forms of relief, and even to contrive new ones adapted to the new circumstances . . . and with its unlimited control over the form and material of its judgments, possesses enormous advantage over the narrow, inflexible, and artificial methods of the common law.").

[51]

4 POMEROY § 1402 (explaining that an action for specific performance on a special contract "does not depend upon the nature of the contract nor of the subject matter, but it will be exercised wherever the legal remedy is inadequate" and thus falls within equity when, for example, there has been an agreement to insure, indemnify, or "compromise and discharge a judgment"); 2 JOSEPH STORY, COMMENTARIES ON EQUITY JURISPRUDENCE §§ 1000-1007 (4th ed.) (noting that specific performance is not reserved to "cases respecting the sale, transfer, or enjoyment of personal chattels" or other property, but those involving promises to undertake "personal acts" and "proceedings"); *see generally Cuquenan v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) (noting  that where parties disagreed as to the terms of a settlement, judicial enforcement could be effected through a "decree of specific performance"); *Good all-Sanford, Inc. v. United Textile Workers of Am., AFL Loc. 1802*, 353 U.S. 550, 551 (1957) (upholding district court's order compelling specific performance to comply with arbitration provision).  One possible exception is where a party seeks no more than the "specific performance of reimbursement" or other "money past due."  *Cent. States, Se. & Sw. Area Health, & Welfare Fund v. Gerber Life Ins. Co.*, 984 F. Supp. 2d 246, 250 (S.D.N.Y. 2013), *aff'd sub nom. Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150 (2d Cir. 2014).  The term "special contract" connotes any "contract with peculiar provisions or stipulations which, if omitted from the ordinary contract, the law will never supply." 17 CORPUS JURIS SECUNDUM, *Contracts* § 26.

Association in the City of New York."[52]   The Plan, having no adequate remedy at law, here sought equitable relief requiring White Oak to fulfill that contractual obligation.   It is a hallmark of equity jurisprudence that when one party to an agreement has definitively bound itself to perform a certain act in a specified manner and has failed to perform, the court may fashion an equitable remedy to "do complete justice to both the parties with respect to all the judicial relations growing out of the contract between them."[53]   Indeed, such remedies likely encompass more than simple confirmation. Other equitable relief    for example, an award of attorney's fees on the petition itself, which the Trustees also sought in their petition    may be appropriate in enforcing the contractual settlement rendered pursuant to the parties' arbitration agreement.[54]   While the historical contours of the "days of the divided bench" is a clouded subject,[55] the power to enforce contractual settlement rights is safely within the traditional bounds of equity jurisprudence.

---

[52]   Petition to Confirm Arbitration Award, Dkt. 14-1.

[53]   4 POMEROY § 1401.

[54]   See Trustees of the New York City Dist. Council of Carpenters Pension Fund v. Jessica Rose Enterprises Corp., No. 15-CV-9040 (RA), 2016 WL 6952345, at *4 n.4 (S.D.N.Y. Nov. 28, 2016); Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman, Retraining, Educ. & Indus. Fund v. Mountaintop Cabinet Mfr. Corp., No. 11 CIV. 8075 JMF, 2012 WL 3756279, at *4 (S.D.N.Y. Aug. 29, 2012) (observing that such a remedy is not necessarily available under the statute itself, since "[a]lthough section 502(g) of ERISA permits plaintiffs to recover their reasonable attorney's fees and costs in association with successful actions to recover delinquent contributions, see 29 U.S.C. § 1132(g)(2) (D), this does not necessarily mean that a successful party is also entitled to its costs and attorney's fees in bringing a petition to confirm an arbitration award, particularly one that does not direct a party to pay delinquent contributions").

[55]   See, e.g., John H. Langbein, What ERISA Means by "Equitable": The Supreme Court's Trail of Error in Russell, Mertens , and Great-West, 103 COLUM. L. REV. 1317, 1353-57 (2003); see also Samuel L. Bray, The Supreme Court and the New Equity, 68 VAND. L. REV. 997, 1018, 1044-53 (2015).

ERISA's grant of exclusive federal jurisdiction over all civil suits by plan fiduciaries "(A) to enjoin any act or practice which violates any provision of [subchapter I] or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of [subchapter I] or the terms of the plan" is an exceptional statutory device.[56]   Here, because the Plan Trustees are ERISA fiduciaries and the relief they seek is in the nature of remedies typically available in premerger courts of equity, the Court has jurisdiction to adjudicate their application regardless of whether they are ultimately entitled to the relief they seek.[57]   Thus, that subject matter jurisdiction is available under ERISA itself appears on the face of the Plan's petition even though the Trustees did not expressly invoke it.


*Conclusion*

Having determined that the Court has subject matter jurisdiction pursuant both to 28 U.S.C. § 1331 and 29 U.S.C. § 1132, it does not reach the Plan's argument that there is subject matter jurisdiction also by virtue of White Oak's cross-petition to vacate.[58]

---

[56]

29 U.S.C. §§ 1132(a)(3), 1132(e)(1).

[57]

Whether a federal court possesses federal-question subject matter jurisdiction and whether a plaintiff can state a claim for relief under a federal statute "are two questions that are easily, and often, confused." *Carlson v. Principal Fin. Grp.*, 320 F.3d 301, 305–06 (2d Cir. 2003).

[58]

ERISA is among the small number of federal statutes that give rise to complete preemption, which can be a basis for federal subject matter jurisdiction "where Congress has indicated that particular legislation is intended to make certain federal court remedies the exclusive remedies on the subjects dealt with in the legislation, leaving nothing by way of a concurrent state law cause of action or remedy." *New Jersey Carpenters Annuity Fund v. Meridian Diversified Fund Mgmt., LLC,* No. 10 CIV. 5738 TPG, 2011 WL 1842772, at *3 (S.D.N.Y.

17

For the foregoing reasons, White Oak's motion to vacate the March 17, 2022 judgment for lack of subject matter jurisdiction is denied in all respects.

SO ORDERED.

Dated:          June 20, 2022

_____
Lewis A. Kaplan
United States District Judge

---

May 11, 2011). The civil enforcement remedy provided by ERISA Section 502 carries "such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (internal quotation marks omitted). And when a federal law preempts a state cause of action, "any claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 8 (2003). Accordingly, any state causes of action within the scope of ERISA's civil enforcement provision are removable to federal court even if the basis of federal subject matter jurisdiction does not appear on the face of the original complaint. *See, e.g., Rubin v. Hodes*, No. 18CV7403SJFAKT, 2020 WL 132352, at *9 (E.D.N.Y. Jan. 13, 2020).