UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE TRUSTEES OF THE NEW YORK
STATE NURSES ASSOCIATION PENSION
PLAN,

                     Petitioners,

     v.

WHITE OAK GLOBAL ADVISORS, LLC,

                    Respondent.

Civil Action No. 21-cv-08330 (LAK)

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND DISBURSEMENTS

COVINGTON & BURLING LLP
C. William Phillips
Jonathan M. Sperling
Cléa P.M. Liquard
The New York Times Building
620 Eighth Avenue
New York, NY 10018
212-841-1000
cphillips@cov.com
jsperling@cov.com
cliquard@cov.com

Robert Newman
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
202-662-6000
rnewman@cov.com

*Attorneys for Petitioners Trustees of the New York State Nurses Association Pension Plan*

## PRELIMINARY STATEMENT

White Oak does not dispute this Court's authority to award the Plan attorneys' fees and costs under ERISA and this Court's inherent powers.  Instead, White Oak opposes an award primarily on two grounds: (1) White Oak denies engaging in bad faith conduct in this confirmation proceeding, and (2) White Oak claims that the Plan's fees are not reasonable because confirmation proceedings are "summary" in nature.

This proceeding has been anything but "summary," and that is so precisely because of White Oak's bad faith.  The typical confirmation proceeding involves a single motion to confirm. Here, after the arbitrator found that White Oak had engaged in self-dealing and other ERISA violations while investing the pensions of New York's nurses, White Oak filed at least five additional motions—often seeking to re-litigate issues it already had lost in the arbitration or in prior motions.  This Court repeatedly found White Oak's positions baseless—describing them as "borderline sanctionable," Dkt. 29 at 2, and "entirely without merit."  *See* Dkt. 59 at 15; Dkt. 103 at 1.  White Oak then frustrated the Plan's efforts to enforce the Final Award, including by directing its third-party administrator to defy the Plan's validly issued subpoena, which required further motion practice to remedy.

White Oak also cannot properly contest the reasonableness of the Plan's fees.  Having multiplied the proceedings necessary to address White Oak's bad-faith tactics, White Oak is in no position to complain about the number of hours spent by the Plan's attorneys.  Nor can White Oak complain about billing rates, when its own attorneys charge rates that exceed those of the Plan's attorneys.  In all events, the Plan has paid every single invoice that is the subject of the Plan's attorneys' fee motion.  That fact alone demonstrates the reasonability of the fees charged, and White Oak should be required to reimburse the Plan for those fees and costs.

## ARGUMENT

### I.      White Oak's Bad Faith Tactics Justify a Fee and Cost Award

White Oak does not dispute this Court's inherent authority and power under ERISA Section 502(a)(3) to award attorneys' fees, costs, and disbursements against litigants engaging in bad faith, vexatious, wanton, or oppressive conduct.  Dkt. 112 at 2, 8–10.  Instead, White Oak argues that such awards are available only "in very limited circumstances" like "where the defendant failed to appear in the arbitration, or failed to appear in the confirmation proceeding while refusing to pay the arbitration award."  Dkt. 112 at 2.

The law says otherwise, and provides that White Oak's conduct warrants a fee award. Courts in this district hold that a fee award is appropriate in arbitration-related proceedings against a party who "acted vexatiously in bringing a second, duplicative motion" that "unreasonably attempts to circumvent [a prior] ruling on the matter and take a second bite of the apple."  *Bancroft Owners, Inc. v. N.Y. Hotel & Motel Trades Council, AFL-CIO*, 2021 WL 6808292 at *2 (S.D.N.Y. Feb. 26, 2021).  An attorneys' fee award is "peculiarly appropriate in the context of a challenge to an arbitration award which appears to be a largely dilatory effort." *DigiTelCom, Ltd. v. Tele2 Sverige AB*, 2012 WL 3065345, at *7 (S.D.N.Y. July 25, 2012) (discussing sanctions similarly authorized under 28 U.S.C. § 1927, and quoting *Manning v. Smith Barney, Harris Upham & Co.*, 822 F. Supp. 1081, 1083–84 (S.D.N.Y. 1993)).  "[L]itigants must be discouraged from defeating the purpose of arbitration by bringing such petitions [challenging arbitration awards] based on nothing more than dissatisfaction with the tribunal's conclusions."  *Id*. (awarding attorneys' fees pursuant to 28 U.S.C. § 1927).

White Oak's conduct and arguments in this proceeding easily establish bad faith worthy of an attorneys' fee award.  *See Prospect Capital Corp. v. Enmon*, 2010 WL 907956, at *7

(S.D.N.Y. Mar. 9, 2010) ("The pursuit of frivolous claims has been found to establish bad faith"), *aff'd*, 675 F.3d 138, 146 (2d Cir. 2012).  At the outset of this action, White Oak moved to seal various confirmation-related documents based on arguments that this Court found were "at least borderline sanctionable," "weak," "vague, "entirely conclusory," and "entirely without merit."  Dkt. 29 at 2–3.

White Oak then moved to vacate the Final Award, and opposed confirmation, based on the absurd argument "that the Plan 'did not achieve any success on the merits,' and that '[i]f anything, White Oak should have been awarded its attorneys' fees as the prevailing party.'"  Dkt. 59 at 11 (quoting Dkts. 12 at 26, and 30).[1]  In the same filing, White Oak downplayed its unlawful self-dealing, including its pocketing of nearly $2 million in fees it was not entitled to, as mere "technical violations."  Dkt. 12 at 15–16.  This Court found exactly the contrary, and chastised White Oak for having "endeavor[ed] to twist" certain aspects of the Final Award "into a ruling that White Oak ultimately prevailed on all substantive issues in the arbitration," when in fact "the Plan plainly achieved far more than 'some degree of success' on the merits"—even "considerable success on the merits."  Dkt. 59 at 15, 24, 27.

Thereafter, White Oak filed a motion to vacate this Court's judgment—which this Court denied—and a separate motion for reconsideration, which this Court summarily denied in a single handwritten sentence:  "It is entirely without merit."  Dkt. 103.

White Oak's out-of-court activity is no different.  For example, purportedly to satisfy the obligation to disgorge the net asset value of the Plan's assets as of August 4, 2021, White Oak dumped about 1,600 documents on the Plan on September 3, 2021, claiming that these

---

[1] *See also, e.g.*, Dkt. 12 at 5 ("White Oak, not the Plan, prevailed in the arbitration."); *id*. at 7 ("White Oak prevailed in the arbitration"); *id*. at 9 ("[T]he Plan did not prevail at the arbitration"); *id*. at 30 (noting "the Plan's total failure to prevail on any of its claims").

documents effected the transfer of the Plan's fractional interest in the investments that the Plan held as of August 4, 2021.  *See* Dkt. 98 ¶ 7 (describing White Oak's purported transfer of the Plan's pro-rata share of White Oak subscription fund investments).  But White Oak has done nothing to substantiate that what it delivered on September 3 had a *value* equal to the net asset value of the Plans assets of August 4, which is what the court's judgment requires.  Instead, White Oak purported only to make precisely the in-kind transfer that the Arbitrator (and this Court) rejected as insufficient.  *See* Dkt. 59 at 19 ("The award establishes that White Oak cannot satisfy its obligation through an in-kind distribution of fractional interests in instruments that it controls and that flow from the prohibited ERISA transactions.").

Ironically, White Oak now claims that the September 3 transfer shows White Oak's good faith and compliance with the now-confirmed Final Award, because, White Oak says, it relinquished control of the purportedly transferred fractional interests.  Dkt. 112 at 14.  But that is not true.  For example, White Oak disclaims control over purportedly transferred investments (including equity investments) in White Oak Healthcare Finance ("WOHCF") because WOHCF "use[s] White Oak's name for marketing purposes" and is "*not* controlled by White Oak."  Dkt. 97 at 10–11.  But WOHCF's Chairman, CEO, CFO, and other executives are listed under the "Management" section of White Oak's own website.  Phillips Decl. Ex. A.  Likewise, White Oak's claim that Comvest Partners, the Plan's investment manager, now manages the September 3 investments is belied by the fact that Comvest's "decisions" are responses to White Oak's coercive requests for additional funding and other actions, often on little notice and with incomplete information.  *See* Phillips Decl. Exs. B, C, and D (White Oak emails requesting decisions within one or two days); Ex. E (White Oak email stating that if the Plan did not provide additional funding, the Plan's loan interests would be subordinated to those who

participate, including White Oak).  White Oak still very much controls whatever it claims to have transferred to the Plan on September 3, 2021.[2]

White Oak's opposition also engages in revisionist history.  For example, the written record definitively shows that, (i) on March 11, 2022, the Plan asked White Oak to produce the Net Asset Value ("NAV") of the Plan's assets as of August 4, 2021, Dkt. 85-2; (ii) on March 15, 2022, White Oak promised the NAV's production by March 18, 2022, Dkt. 85-1; (iii) in May 2022, the Plan, having not received the promised production, subpoenaed White Oak's administrator, SEI, for the August 4 NAV; (iv) White Oak directed SEI not to comply with the subpoena, Dkt. 85 ¶ 4; (v) the Plan successfully moved to compel SEI's compliance, Dkt. 88 ¶ 3; and (vi) SEI finally produced the August 4 NAV to the Plan on July 21, 2022, Dkt. 112 at n.2. White Oak, however, remarkably asserts that the Plan's subpoena was unnecessary because, after successfully moving to compel SEI's compliance with the subpoena, the Plan again demanded production of the August 4 NAV in a July 19, 2022 letter, and the information was produced two days later.  Dkt. 112 at 4 n.2.  White Oak's past improper tactics cannot be so easily erased.

In short, White Oak's conduct warrants an award of attorneys' fees and costs pursuant to ERISA Section 502(a)(3) and this Court's inherent authority.

## II.    A Fee Award Is Also Warranted Under ERISA Section 502(g)(1)

White Oak cannot seriously dispute that the Plan has satisfied Section 502(g)(1)'s requirement that the Plan achieve "some degree of success."  This Court's judgment confirming the Final Award awards the Plan injunctive relief, disgorgement of assets worth at least $86 million, plus at least another $31 million in cash.  *See* Dkt. 112 at 11 n.5, 13–14.

---

[2] White Oak's assertion that the Plan conceded receipt of each investment owed under the Final Award misquotes an email in which the Plan's counsel sought information about the investments purportedly transferred on September 3, 2021.  *See* Dkt. 98-8.

Instead, White Oak's primary argument against a Section 502(g)(1) fee award is to claim that the Plan's confirmation proceeding does not qualify as an action under ERISA. *See id.* at 7. But this Court has already held the Plan's confirmation petition to be "governed exclusively by federal law"—namely, ERISA and ERISA-based common law. Dkt. 87 at 11. The Court separately held that the Plan's petition "can be viewed as 'appropriate equitable relief' for redressing an ERISA violation" under Section 502(a)(3), and "an award of attorneys' fees on the petition itself . . . may be appropriate in enforcing the contractual settlement rendered pursuant to the parties' arbitration agreement." *Id*. at 12–13, 15.

White Oak also argues that Section 502(g)(1) does not authorize confirmation-related attorney's fees and costs. But that argument is predicated on conflating two distinct sections of the statute—502(g)**(1)** and 502(g)**(2)**. Section 502(g)(2)—which applies to certain plan-contribution-related claims not at issue here or in the underlying arbitration—"contemplates a formal adjudication" and does not apply to "[a]ctions to confirm arbitration awards." *See Ottley v. Schwartzberg*, 819 F.2d 373, 376–77 (2d Cir. 1987). By contrast, Section 502(g)(1) authorizes attorneys' fees and costs "[i]n *any* action" besides those brought under Section 502(g)(2). 29 U.S.C. § 1132(g)(1) (emphasis added).

The cases that White Oak cites (including one decided by this Court) do not address Section 502(g)(1). *See Trs. of the N.Y. Dist. Council of Carpenters Pension Fund v. Dejil Sys. Inc.*, 2012 WL 3744802, at *4 (S.D.N.Y. Aug. 29, 2012) (noting that Section 502(g)(2)(D) permits the recovery of fees and costs in "successful actions to recover delinquent contributions" but not necessarily for arbitration confirmation petitions); *see also Trs. of the N.Y.C. District Council of Carpenters Pension Fund v. Allied Design & Construction, LLC*, 2017 WL

11570457, at *1–2 (S.D.N.Y. June 27, 2017) (citing *Dejil*, in an action relating to "allegedly delinquent employer contributions") (Kaplan, J.).

By contrast, courts in this district have awarded fees under Section 502(g)(1) in connection with a confirmation action.  *See, e.g.*, *Trs. of the N.Y. Dist. Council of Carpenters Pension Fund v. Ameri-Can Concrete Sols., Inc.*, 2014 WL 7234596, at *5 (S.D.N.Y. Dec. 18, 2014) (awarding arbitration confirmation-related attorneys' fees because, *inter alia,* "ERISA provides that 'the court in its discretion may allow a reasonable attorney's fee and costs of action to either party'") (quoting Section 502(g)(1)); *Trs. of N.Y.C.  Dist. Council of Carpenters Pension Fund v. Dedicated Indus. LLC*, 2015 WL 4503695, at *5 (S.D.N.Y. July 23, 2015) (same).

Especially given the Second Circuit's directive that ERISA's attorney's fee provisions "must be liberally construed to protect the statutory purpose of vindicating retirement rights," *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 298 (2d Cir. 2004), the Plan is entitled to its attorneys' fees and costs under Section 502(g)(1) based on achieving "some degree of success."

## III.    The Plan's Attorneys' Fees and Costs Are Reasonable.

White Oak's challenges to the reasonableness of the Plan's fees and costs are unavailing.

*First*, White Oak concedes that "the payment of fees by clients has been recognized by courts as some evidence of their reasonableness," but asserts that the Plan's supporting declaration fails to establish that the Plan has paid any of the fees sought here.  Dkt. 112 at 15–16.  In fact, however, the Plan's supporting declaration states that "the Plan has been billed by Covington on a regular monthly basis and has paid fees, costs, and disbursements on an ongoing basis."  Dkt. 109 ¶ 25.  The invoices attached to the declaration reflect only $281,272.12 in "Outstanding Invoices" as of the filing date, and that amount is almost entirely attributable to an invoice issued just before the fee motion was filed.  Dkt. 109-2 at 159–60.  The Plan has now

paid all but $976.50 on each invoice reflecting the amounts that the Plan sought in its motion. Phillips Decl. ¶ 2.  And because the Plan paid Covington's fees with no guarantee of reimbursement, the fees are presumptively reasonable.  *See Diplomatic Man, Inc. v. Nike, Inc.*, 2009 WL 935674, at *6 (S.D.N.Y. Apr. 7, 2009) ("Indeed, the reasonableness of an hourly fee may be determined exclusively by 'the rate a paying client would be willing to pay.'") (*quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)).

*Second*, White Oak asserts that it should be allowed to reduce any fee award by a $262,988.21 credit that appears on one invoice that the Plan submitted.  Dkt. 112 at 16.  White Oak misunderstands the credit.  The "credit" represents the Plan's payment of $262,988.21 towards a July 2022 invoice.  Dkt. 109-2 at 159; Phillips Decl. ¶ 3.

*Third*, White Oak claims that Covington's hourly rates are unreasonable and not "in line with those prevailing in the community."  *See* Dkt 112 at 22.  In fact, Covington's rates ($500 to $1,500 after a 20% discount negotiated by the Plan[3]) are *lower* than the rates that Sidley Austin, the law firm representing White Oak, has asked other courts in this district to approve.  *See* Application to Employ Sidley Austin LLP as Counsel at 10, *In re Pareteum Corp.*, No. 22-10615, Dkt. 197 (S.D.N.Y. July 7, 2022) ("Sidley's current hourly billing rates, which are charged the same for both bankruptcy and non-bankruptcy clients, currently range from $660 per hour for new associates to $1,900 per hour for senior partners and senior counsel.").

*Fourth*, White Oak complains about the total amount of time billed, and the number of timekeepers utilized.  Dkt. 112 at 19–22.  As explained above, *supra* pp. 2–5, White Oak's

---

[3] The hourly rates appearing on Covington's invoices range from $625 to $1,875. Dkt. 109 ¶ 15. The 20% discount is applied to these rates. *Id.* ¶ 26.

frivolous, bad faith, and vexatious tactics—designed to frustrate the arbitration award—have rendered this proceeding anything but the "summary proceeding" that White Oak insists that it is.  The time the Plan's attorneys have spent in the year since the Final Award was issued has been reasonable under the circumstances of this case.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n  v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir 2008) (noting that courts should "bear in mind all of the case-specific variables" when assessing reasonableness).

White Oak likewise distorts the Plan's staffing levels and billing practices when it contends that Covington staffed more than 22 attorneys on this matter.  The Plan did not have 22 attorneys billing in any given month; instead, different timekeepers have been involved at different times over the more than 12 months during which White Oak engaged in its strategy of delay.  In fact, in several months, six or fewer attorneys appeared on Covington's invoices. Dkt. 109-2 at 9, 43, 49, 56 (timekeeper summaries for four months).  The size of the Covington team has also grown in a manner commensurate with the needs of the case.  *E.g.*, Dkt. 109 ¶ 17.

*Fifth*, White Oak contends that a few Covington attorneys billed too much time on certain days to be efficient.  Dkt 112 at 21.  But all but one of White Oak's examples falls on the day of a court filing, when long hours finalizing a filing are common.  *Compare id.* (identifying entries on 11/24/21, 5/6/22, and 8/8/22) *with* Dkts. 32, 70, and 94 (filings on those dates).

*Sixth*, with the exception of a few isolated billing entries that White Oak describes as "administrative,"[4] Dkt. 112 at 21, White Oak does not challenge the nature of the work that Covington did.  Instead, White Oak argues that the redactions to the Plan's invoices "make it

---

[4] White Oak criticizes two time entries as being unreasonably "administrative."  Dkt. 112 at 21. But it is not unreasonable for a junior associate to work with a paralegal for 18 minutes to "update case files," or to spend about 30 minutes "coordinating for documents to be couriered" as required by this Court's Individual Rules of Practice.  *See* Dkt. 109-2 at 35, 127.

impossible to consider the nature of the work Covington performed." Dkt. 112 at 17.  But White

Oak concedes that "NYSNA is entitled to redact invoices to protect attorney-client privilege," *id.*

at n.7, and does not challenge any of the Plan's redactions as unnecessary to protect privilege.

Should this Court decide that it cannot assess the nature of Covington's work due to the

redactions applied to the submitted invoices, the remedy is not denying the Plan an attorneys' fee

award, as White Oak argues, *see* Dkt. 112 at 17, but for this Court to request unredacted invoices

for *in camera* review.  *See Major League Baseball Props., Inc. v. Corporacion de Television y*

*Microonda Rafa*, 2020 WL 5518361, at *4 (S.D.N.Y Sept. 14, 2020) (collecting cases with *in*

*camera* review of billing records).

     *Finally*, White Oak argues that Rule 54(d) does not authorize the Plan's recovery of

$22,000 worth of various costs because they are not awardable under 28 U.S.C. §§ 1821 & 1920.

Dkt. 112 at 23-24.  Such costs are, of course, awardable under ERISA and the court's inherent

authority, and White Oak does not suggest otherwise.  *See Rhodes v. Davis*, 2015 WL 1413413

at *4 (S.D.N.Y. Mar. 23, 2015) ("It is clear that attorney's fees awards include those reasonable

out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." (cleaned

up)).  Courts in this district routinely award the "ordinary and necessary costs" like those that the

Plan seeks here.  *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010) (awarding

"computer-assisted document organization, travel and copying"); *Am. Dev. Grp., LLC v. Island*

*Robots of Fla.*, 2019 WL 5790265, at *13 (E.D.N.Y. Oct. 4, 2019), *report and recommendation*

*adopted*, 2019 WL 5788319 (E.D.N.Y. Nov. 6, 2019) (awarding "legal research database fees.").

## CONCLUSION

     For these and the reasons stated in the Plan's moving papers, this Court should grant the

Plan's motion for attorneys' fees in full.

Dated: New York, New York
      October 24, 2022

COVINGTON & BURLING LLP

  /s/ *C. William Phillips*
C. William Phillips

Jonathan M. Sperling
Cléa P.M. Liquard
The New York Times Building
620 Eighth Avenue
New York, NY 10018
212-841-1000
cphillips@cov.com
jsperling@cov.com
cliquard@cov.com

Robert Newman
David Leapheart
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
202-662-6000
rnewman@cov.com
dleapheart@cov.com

*Attorneys for Petitioners Trustees of the New York*
*State Nurses Association Pension Plan*