# EXHIBIT D



SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN STREET
CHICAGO, IL 60603
+1 312 853 7000
+1 312 853 7036 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 312 853 7076
TCAULEY@SIDLEY.COM


January 20, 2023


**By Email**

C. William Phillips
Jonathan M. Sperling
Anders Linderot
620 Eighth Avenue
New York, New York 10018
(212) 841-1000
cphillips@cov.com
jsperling@cov.com
alinderot.@cov.com


Re:   *The Trustees of the New York State Nurses Association Pension Plan v. White Oak Global Advisors, LLC*, Case No. 1:21-cv-08330

Dear Counsel:

We are writing in response to your January 10, 2023 email concerning (1) NYSNA's investments in White Oak Health Care Finance and White Oak Aviation Holdco L.P. (the "Financing Companies") and (2) NYSNA's request that White Oak provide a NAV calculation for NYSNA's investments as of September 3, 2021.

As an initial matter, your email correctly recognizes that White Oak produced over 100,000 pages of documents in response to NYSNA's post-judgment discovery requests. However, White Oak continues to disagree that any post-judgment discovery is appropriate, because White Oak has fully bonded the judgment pending its appeal and has fully complied with the non-monetary components of the judgment. In particular, White Oak's asset distribution to NYSNA in 2021 fully complied with the Arbitrator's final award and the judgment confirming that award. As the Court recognized in its March 17, 2022 order, the arbitrator's award ordered "White Oak's removal as fiduciary/investment manager **of the plan's assets**." Dkt. 59 at 20 n.72 (emphasis added). White Oak is *not* the fiduciary or the investment manager for any of NYSNA's assets. Comvest, at NYSNA's direction, is the fiduciary and investment manager for the assets that White Oak distributed to NYSNA in 2021. Nor does White Oak control NYSNA's assets. NYSNA, through Comvest, controls those assets. Such control is evidenced by the fact that Comvest has made, and continues to make, decisions with

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships.



Page 2

respect to loan investments that White Oak transferred to NYSNA, including decisions that are different from those White Oak has made on behalf of its investors with respect to loan investments in which both White Oak's investors and NYSNA have an interest. NYSNA's control over its investments is further illustrated by the fact that if NYSNA wanted to sell the investments that White Oak transferred to it, NYSNA would be free to do so. In fact, NYSNA (through Comvest) recently preliminarily agreed to sell its interests in one investment for over $1.5 million.

    Financing Companies

As you know, White Oak transferred to NYSNA its investments in the Financing Companies. White Oak has produced documents to NYSNA relating to its investments in the Financing Companies.[1] Your January 10 email requests that White Oak provide the identities of all investors in the Financing Companies. Your January 10 email states that "[b]ecause fiduciary duties under ERISA can arise based on the percentage of the equity interests in a fund that are held by ERISA investors, the identities of other holders of equity interest in those investment funds bear directly on whether White Oak continues to owe the Plan fiduciary duties under ERISA." Such a request is not relevant because the Financing Companies are "operating companies," which are expressly exempted from the ERISA provision you cited in your January 10 email.

In your January 10 email, you cite 29 C.F.R. § 2510.3-101(a)(2) for the proposition that "a private investment fund generally holds ERISA assets when 25% or more of the equity interests in the fund are held by ERISA investors." But contrary to the assertions in your email, the Financing Companies are not passive "investment funds" – they are "operating companies." Under 29 C.F.R. § 2510.3-101(c), an "operating company" is "an entity that is primarily engaged, directly or through a majority-owned subsidiary or subsidiaries, in the production or sale of a product or service other than the investment of capital." The commentary on this regulation from the time of its promulgation explains the purpose of the operating company exclusion, stating:

> [The operating company exclusion] was intended to distinguish between companies that carry on an *active trade or business*, and which thus are not likely vehicles for the indirect provision of investment management services, from *investment funds* which may well serve as conduits for the provision of such services.

51 Fed. Reg. 41270 (Nov. 13, 1986) (emphasis added). Here, the Financing Companies engage in an active trade or business. The Financing Companies have their own employees, and those employees actively seek out opportunities to provide regular and continuous financing to fund the

---

[1] For example, in response to Interrogatory No. 2, on November 23, 2022, White Oak produced an Excel spreadsheet Bates-stamped WO104078. That Excel spreadsheet identifies all of NYSNA's investments, NYSNA's investment ownership percentages in those investments, and the ownership percentages of other investors.

# SIDLEY

Page 3

current operations of companies in targeted sectors. For example, White Oak Healthcare Finance provides debt financing, including working capital financing and senior secured term financing, to small and middle market healthcare companies. As operating companies, the Financing Companies also pay their own expenses, which include all normal administrative and operating business expenses, such as salary and rent, as well as expenses relating to the Financing Companies' loans to their customers. The Financing Companies thus engage in an "active trade or business," and qualify as operating companies under 29 C.F.R. § 2510.3-101(c). Therefore, the Financing Companies are not subject to the ERISA provision cited in your January 10 email.

In fact, the IRS has recognized that companies performing functions similar to those provided by the Financing Companies are engaged in a "trade or business." Under IRS regulations, foreign companies that are engaged in a "trade or business" in the United States are generally subject to federal taxes. 26 U.S.C. § 882(a). According to legal guidance provided by the IRS, a corporation engaged in "lend[ing] money to customers on a considerable, regular and continuous basis with the intention of earning a profit" is engaged in "trade or business within the United States." *Office of Chief Counsel, Internal Revenue Service, General Legal Advice Memorandum 2009-2010* (Oct. 2, 2009). This guidance provides further confirmation that the Financing Companies – which lend money on a regular basis to earn a profit – are engaged in an active trade or business, and are therefore operating companies under 29 C.F.R. § 2510.3-101(c).

In short, pursuant to 29 C.F.R. § 2510.3-101(a), ERISA-regulated investors may invest in operating companies without causing that operating company to hold ERISA-regulated assets. Given this exemption, the managers of the Financing Companies do not owe ERISA fiduciary duties to the investors in the Financing Companies. Therefore, NYSNA's request for the identities of the investors in the Financing Companies is not relevant to the enforcement of the judgment. Please explain why NYSNA believes that the ERISA provision it cited applies to the Financing Companies.

In addition, even if the ERISA provision that you cited applied to the Financing Companies, which it does not, White Oak would *not* owe ERISA fiduciary duties to the Financing Companies. As we have previously explained, White Oak does not have any ownership interest in the Financing Companies, and White Oak does not receive fees or other compensation from the Financing Companies. White Oak does not receive fees and compensation from the Financing Companies because White Oak is *not* the investment manager of the Financing Companies. For example, Isaac Soleimani – who is not a White Oak employee – is the Chief Executive Officer of and manages White Oak Health Care Finance, its employees, and its business.

Your email states that the Financing Companies are managed by individuals listed as "Management" on White Oak's website. But as we have previously explained, the Financing Companies use White Oak's name for marketing and branding purposes. Likewise, the senior managers of the Financing Companies are identified on White Oak's website solely for marketing and branding purposes. But again, the senior managers of the Financing Companies are *not* White Oak employees. None of the employees of the Financing Companies are White



Page 4

Oak employees.  Because the Financing Companies are independent from White Oak, White Oak does not owe the Financing Companies any fiduciary duty – ERISA or otherwise.

<u>The September 3, 2021 NAV</u>

Your January 10, 2023 email also requests that White Oak provide the NAV calculation of NYSNA's investments as of September 3, 2021.  As we explained in our November 22, 2022 letter, the September 3, 2021 NAV of NYSNA's investments has never been calculated, and documents do not exist showing a September 3, 2021 NAV of NYSNA's investments.  Nor is the September 3, 2021 NAV of NYSNA's investments even calculable, because information does not exist from which to conduct such a calculation.  To calculate that NAV, a valuation of the entirety of the investments in which NYSNA has an interest would need to be performed as of September 3, 2021.  If such a valuation were to be conducted, then SEI, White Oak's independent administrator, would need to calculate NYSNA's NAV as of September 3, 2021.

As you know, White Oak has already produced valuation reports from its independent valuation firm, Stout Risius Ross, LLC ("Stout"), and White Oak has produced SEI's August 4, 2021 NAV calculations for NYSNA's investments.  However, White Oak does not have an obligation to commission new valuations or hire third parties to provide a separate NAV calculation of NYSNA's investments as of September 3, 2021 in response to NYSNA's interrogatory, because the information from which to perform such a calculation does not exist. *See Deng v. New York State Off. of Mental Health*, 2016 WL 11699675, at *1-2 (S.D.N.Y. Feb. 23, 2016) (denying motion to compel where interrogatory sought "information that does not exist"); *cf. id.* at *3 ("Rule 34 cannot be used to compel a party to create a 'document' solely for its production.") (citation omitted); *Red Rock Sourcing LLC v. JGX, LLC*, 2021 WL 5567398, at *2 (S.D.N.Y. Nov. 29, 2021) ("The Court cannot require a party to produce something that does not exist.") (quotation omitted).  Of course, NYSNA is free to engage its own valuation agent to value its interests in the entire portfolio as of September 3, 2021.[2]

---

[2] White Oak understands that Comvest has retained an independent third-party to value the investments that White Oak transferred to NYSNA.  That third-party valuation firm can thus value NYSNA's investments and calculate the NAV of NYSNA's investments as of September 3, 2021.

# SIDLEY

Page 5

In any event, the NAV of NYSNA's investments with White Oak as of September 3, 2021 is not relevant to the enforcement of the judgment. As the District Court recognized in confirming the Arbitrator's final award, the final award ordered White Oak "to disgorge the net asset value of Plan assets 'as of [the] date of the FA [final award]' - that is, August 4, 2021." Dkt. 59 at 16. Because NYSNA received its pro-rata share of its investments, NYSNA necessarily received its August 4, 2021 NAV.

Sincerely,

*/s/ Thomas K. Cauley, Jr.*

Thomas K. Cauley, Jr.
Partner