# EXHIBIT G



SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN STREET
CHICAGO, IL 60603
+1 312 853 7000
+1 312 853 7036 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 312 853 7076
TCAULEY@SIDLEY.COM

November 22, 2022

**By Email**

C. William Phillips
Jonathan M. Sperling
620 Eighth Avenue
New York, New York 10018
(212) 841-1000
cphillips@cov.com
jsperling@cov.com

      Re:    *The Trustees of the New York State Nurses Association Pension Plan v. White Oak Global Advisors, LLC*, Case No. 1:21-cv-08330

Dear Counsel:

      I write on behalf of White Oak Global Advisors LLC ("White Oak") in response to your email of November 15, 2022. Your November 15 email raised several questions concerning White Oak's written responses to the discovery requests of The Trustees of the New York State Nurses Association Pension Plan (the "NYSNA" or the "Plan"). We have addressed each of your questions below in the order that you raised them. In separate correspondence of today's date, White Oak has also produced documents in response to NYSNA's discovery requests to White Oak.

      1.    <u>White Oak Has Produced Documents About NYSNA's August 4, 2021 NAV.</u>

      Your November 15 email demands that White Oak produce documents and information concerning the September 3, 2021 net asset value ("NAV") of NYSNA's investments. Your email claims that "information concerning the value, as of September 3, 2021, of certain assets that White Oak purported to transfer to the Plan on that date to satisfy the Judgment" is necessary "to ascertain whether the Plan received that value mandated by the Judgment." NYSNA's assertion is wrong and makes no sense. As the District Court recognized in confirming the Arbitrator's final award, the final award ordered White Oak "to disgorge the net asset value of Plan assets 'as of [the] date of the FA [final award]' - that is, *August 4, 2021*." Dkt. 59 at 16 (emphasis added). The District Court further recognized that the Arbitrator found that White Oak could effect the disgorgement of the August 4, 2021 NAV by transferring "all books, records, accounts, cash, securities (and other evidences of ownership) and all other property of" to NYSNA. Dkt. 59 at 18. White Oak disgorged NYSNA's August 4, 2021 NAV

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships.

4878-3519-2639v.1

# SIDLEY

Page 2

by transferring to NYSNA all of NYSNA's investments with White Oak. In short, because the District Court confirmed the Arbitrator's order requiring White Oak to disgorge the August 4, 2021 NAV – which White Oak did – NYSNA's request for information concerning the September 3, 2021 NAV makes no sense and has no relevance at all to collecting on the judgment. In any event, the value of NYSNA's investments as of September 3, 2021 has never been calculated, and documents do not exist showing a September 3, 2021 NAV of NYSNA's investments.

White Oak has previously provided documents from an independent third party, SEI, showing the August 4, 2021 NAV of NYSNA's investments. In response to NYSNA's discovery requests, White Oak also agreed to produce additional documents concerning that August 4, 2021 NAV, which documents White Oak has produced to NYSNA today under a separate cover letter. In particular, White Oak is producing valuation reports from its independent valuation firm, Stout Risius Ross, LLC ("Stout"). Stout valued the entirety of the investments in which NYSNA has an interest, not solely NYSNA's pro-rata interests in those investments. NYSNA can simply multiply its pro-rata percentage interest against the total valuation to determine the value of NYSNA's pro-rata interests in those investments.

2. <u>Neither White Oak Nor Any White Oak Affiliate Controls NYSNA's Investments</u>.

Your November 15 email complains that White Oak "largely ignores the Plan's definition of 'Affiliate.'" However, White Oak has not withheld any documents on the basis of its objection to NYSNA's definitions of "Affiliate" and "White Oak Affiliate." For example, NYSNA requested agreements between any "Loan Party" and any "White Oak Affiliate." Req. 1(k). To the extent that White Oak located any such agreements using NYSNA's definition of "White Oak Affiliate," they are being produced to you. With respect to NYSNA's interrogatories, Interrogatory 2 asked whether any White Oak Affiliate owns equity or warrants in a "Transferred Plan Investment Entity." White Oak confirms that no "White Oak Affiliate," using NYSNA's definition, is an equity or warrant holder in a "Transferred Plan Investment Entity."

Your November 15 email also (incorrectly) asserts that "White Oak can continue to exercise control over the Plan's investments (including those that White Oak purportedly transferred to the Plan on September 3, 2021) through affiliates[.]" Neither White Oak nor any affiliate of White Oak has the power to control NYSNA's investments. NYSNA's investments were transferred to NYSNA, and NYSNA, through its new investment manager, Comvest Partners, has the exclusive ability to control those investments. Comvest Partners' ability to control NYSNA's investments is illustrated by the fact that Comvest Partners has been making decisions with respect to NYSNA's loan investments, including decisions that are different from those White Oak has made on behalf of its investors with respect to loan investments in which both White Oak's investors and NYSNA have an interest. Indeed, White Oak understands that Comvest Partners has retained an independent third-party to value the investments that White Oak transferred to NYSNA. NYSNA's control over its investments is further illustrated by the fact that if NYSNA wanted to sell the investments White Oak transferred to it, NYSNA would

# SIDLEY

Page 3

be free to do so. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 (1980) (where trustees possess "certain customary powers to hold, manage, and dispose of assets," their control over the assets is "real and substantial"); *cf. Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 726 (2d Cir. 2017) (same).

NYSNA has baselessly asserted that White Oak has made "coercive requests for additional funding" to NYSNA and complains that if NYSNA declines to contribute new money to fund protective advances that "the Plan's loan interests would be subordinated to those who participate, including White Oak." Dkt. 121 at 5-6. However, there is nothing "coercive" about White Oak's outreach to see if NYSNA would like to participate in protective advances to struggling companies in which NYSNA already has loan investments. The protective advances are designed to provide those struggling companies with additional capital to continue to fund its operations. NYSNA is free to decline to provide additional money for protective advances, which NYSNA has done. But, consistent with industry practice, the loan agreements clearly provide that if a protective advance is made, the investors making that new protective advance will receive repayment of the protective advance before principal or interest is paid on older loans. *See, e.g.*, WO101708 at WO101785 (providing that "payments, prepayments, and proceeds or collateral…and any other amounts received" shall be applied to "any Lender which has made a Protective Advance, to pay all Protective Advances" prior to being used to pay the interest or principal of the original loans). Once the protective advance is repaid, all investors, whether they participated in the advance or not, are treated equally for purposes of principal and interest payments on the original loans. In other words, lenders who participate in the protective advance do not have their *entire* position prioritized, only the portion that constitutes the protective advance. Further, your assertion that "White Oak" is participating in protective advances is simply wrong. White Oak's investors participate in making new protective advances – not White Oak.

NYSNA has also repeatedly argued that White Oak controls NYSNA's investments in the Financing Vehicles, such as in White Oak Health Care Finance. NYSNA claims that White Oak controls the Financing Vehicles because the Financing Vehicles include the "White Oak" name and because senior managers of the Financing Vehicles are identified on White Oak's website. Dkt. 121 at 5. As we have previously explained, the Financing Vehicles use White Oak's name for marketing and branding purposes. Likewise, the senior managers of the Financing Vehicles are identified on White Oak's website solely for marketing and branding purposes. However, White Oak does *not* have any ownership interest in the Financing Vehicles, and White Oak does *not* receive fees or other compensation from the Financing Vehicles. And the senior managers of the Financing Vehicles are *not* White Oak employees. They are employees of the Financing Vehicles and are paid by the Financing Vehicles. In fact, none of the Financing Vehicles' employees are White Oak employees, and White Oak has no involvement in managing the day-to-day operations of the Financing Vehicles.[1] Simply put,

---

[1] As we have previously explained, White Oak principals are members of a series of Approval Committees, each of which supervises a specific Financing Vehicle. The Approval Committees do not make investment decisions. Nor can the Approval Committee direct the respective Financing Vehicle to take particular actions. Rather, the Approval Committee has limited authority to veto certain actions proposed by the manager of such Financing Vehicle. The

# SIDLEY

Page 4

White Oak does *not* control the Financing Vehicles.  A table showing the Financing Vehicle investments that were transferred to NYSNA as of August 4, 2021 is included in Exhibit A to this letter.  That table also shows the managers that controlled the Financing Vehicles – none of whom are White Oak employees.  In addition, the table shows that certain of the Financing Vehicles have their own California Lender's License, and do not rely on White Oak's California Lender's License to do business – which is further evidence that the Financing Vehicles operate separately from White Oak.  Other Financing Vehicles do not require a California Lender's License to do business.  But even if they required such a license, they would not be able to rely on White Oak's license because, as previously stated, the Financing Vehicles operate separately from White Oak.

3. <u>The Money Judgment Is Fully Secured By a Bond, and White Oak's Bank Account Information is Therefore Irrelevant to Enforcing the Judgment.</u>

Third, you request that White Oak provide bank account information in order to assist NYSNA with collecting on the $1.6 million attorneys' fees judgment.  As you know, White Oak has obtained a bond to secure the $1.6 million October 27, 2022 judgment.  Because the monetary components of the judgment are fully secured, the bank account information NYSNA requested has no relevance to enforcing the judgment.

4. <u>White Oak Has Not Withheld Documents on the Basis of Its Objections.</u>

Next, your November 15 email asked whether, with respect to Request for Production Nos. 1(a-k), 2(a-e), 3, 8, 9, 12, and 14, and Interrogatory Nos. 1(a-c), 2, and 3, White Oak is "withholding any responsive documents or information based on any asserted objections other than privilege."  White Oak's objections are proper, because NYSNA's numerous requests for "all documents" concerning various topics are overbroad, unduly burdensome, and not proportional to the needs of the case.  Nevertheless, White Oak conducted a reasonable and good faith search, and did *not* withhold any documents it located on the basis of its objections.  That said, as stated in its responses, White Oak redacted certain confidential information from the documents it produced, such as the identities of White Oak's investors and lenders.  That confidential information has no relevance to enforcing the judgment.

5. <u>White Oak Has Not Withheld Documents on the Basis of Privilege</u>

Finally, contrary to your assertion, White Oak did not "object to providing a privilege log."  Rather, White Oak objected to the types of information NYSNA demanded be included on

---

Approval Committee's veto authority is expressly set forth in the Financing Vehicle's operating agreements, which have been produced to NYSNA, and includes a veto right over the annual operating budget; the appointment of any executive officer who is not identified in the annual operating budget; the purchase, redemption, or creation of LLC interests; entry into new lines of business; the incurrence of debt in excess of $1 million; and asset transfers, mergers, and acquisitions in excess of $1 million.  Since August 4, 2021, the Approval Committees have not exercised veto authority with respect to the Financing Vehicles in which NYSNA has an investment.  Regardless, these matters do not involve managing investments – which are handled by employees of the Financing Vehicles who are not employed by White Oak.



Page 5

a privilege log as exceeding the requirements of the Federal Rules of Civil Procedure and the Local Rules.[2]  In any event, White Oak is *not* withholding on the basis of privilege any document it located as a result of its search.

          Sincerely,

          */s/ Thomas K. Cauley, Jr.*

          Thomas K. Cauley, Jr.
          Partner

---

[2] For example, White Oak objected to NYSNA's instruction that White Oak provide a privilege log identifying all factual bases for the claim of privilege and the page count of the privileged document.

**Exhibit A**

| Loan Interest Held by NYSNA | Borrower | Manager of Borrower as of 8/4/2021 | Manager's Employer | Borrower Address | Holder of Borrower's CA Lender License |
|---|---|---|---|---|---|
| WHITE OAK ABL - E&A | White Oak ABL Blocker, LLC | Thomas Otte | White Oak ABL, LLC | 4777 Sharon Road, Suite 510, Charlotte, NC 28210 | N/A |
| WHITE OAK ABL - HILCO | White Oak ABL Blocker, LLC | Thomas Otte | White Oak ABL, LLC | 4777 Sharon Road, Suite 510, Charlotte, NC 28210 | N/A |
| WO ABL DOMESTIC | White Oak ABL Blocker, LLC | Thomas Otte | White Oak ABL, LLC | 4777 Sharon Road, Suite 510, Charlotte, NC 28210 | N/A |
| WOAF - PCS | White Oak Asset Finance, LLC — Series PCS | Thomas Otte | White Oak ABL, LLC | 4777 Sharon Road, Suite 510, Charlotte, NC 28210 | N/A |
| WOCA | White Oak Aviation, LLC | Robert Genise | White Oak Aviation, LLC | 10900 NE 4th Street, Suite 2300, Bellevue, WA 98004 | N/A |
| WOCF | White Oak Commercial Finance, LLC | Robert Grbic | White Oak Commercial Finance, LLC | 225 NE Mizner Blvd, Suite 301, Boca Raton, FL 33432 | White Oak Commercial Finance (California), LLC |
| WOHC RE DEBT | White Oak Healthcare Finance, LLC | Isaac Soleimani | White Oak Healthcare Finance, LLC | 1155 Avenue of the Americas, 15th Floor, New York, NY 10036 | White Oak Healthcare Finance, LLC |
| WOHCF | White Oak Healthcare Finance, LLC | Isaac Soleimani | White Oak Healthcare Finance, LLC | 1155 Avenue of the Americas, 15th Floor, New York, NY 10036 | White Oak Healthcare Finance, LLC |
| WOTF | White Oak Trade Finance, LLC | James Chan | White Oak Trade Finance, LLC | 555 West 5th Street, Suite 3380, Los Angeles, CA 90013 | N/A |

4878-3519-2639v.1